COOLEY LLP
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone: +1 858 550 6000
Facsimile: +1 858 550 6420

AUDREY J. MOTT-SMITH (300550)
(amottsmith@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
LG Electronics, U.S.A., Inc.

COOLEY LLP
MARC SUSKIN*
*(Admitted pro hac vice)*
(msuskin@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: +1 212 479 6000
Facsimile: +1 212 479 6275

ROBBY L.R. SALDAÑA (356226)
(rsaldana@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, D.C. 20004-2400
Telephone: +1 202 842 7800
Facsimile: +1 202 842 7899

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONA CAZARES, MICHAEL WALSH, and LAURA WILLIS-ALBRIGO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC. and ALPHONSO INC.,<br><br>Defendants. | Case No. 5:26-cv-03840-EKL<br><br>**DEFENDANT L.G. ELECTRONICS U.S.A. INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY CASE**<br><br>Hearing Date: November 4, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Eumi K. Lee<br>Courtroom: 7 |

## TABLE OF CONTENTS

Page


I. INTRODUCTION .... 1
II. RELEVANT BACKGROUND .... 2
  A. The Parties.... 2
  B. Plaintiffs Had to Accept LG's TV Terms to Use the Smart TV Functionality. .... 3
  C. The TV Terms' Broad Arbitration Provision Governs Plaintiffs' Claims..... 3
  D. Materials On and Inside Each Smart TV Box Additionally Include Binding Arbitration Provisions Governing Plaintiffs' Claims..... 4
  E. The TV AA and Product AA are Consumer Friendly and Cost Effective..... 6
  F. Plaintiffs Ignored Their Agreements to Arbitrate and Filed Suit..... 7
III. LEGAL STANDARD .... 7
IV. ARGUMENT .... 8
  A. The TV and Product Arbitration Agreements are Valid and Bind Plaintiffs..... 8
    1. Plaintiffs Affirmatively Clicked to Accept the TV Terms and the Arbitration Agreement Therein..... 8
    2. Plaintiffs Additionally Agreed to the Product AA By Using their TVs, Providing Another Basis to Compel Arbitration..... 11
  B. The Arbitration Agreements are Enforceable and Cover Plaintiffs' Claims. .... 13
    1. The TV AA and Product AA are Enforceable. .... 14
      a. The Agreements are Not Procedurally Unconscionable. .... 14
      b. The Agreements are Not Substantively Unconscionable..... 15
    2. Plaintiffs' Claims Are Arbitrable under Both Arbitration Agreements. .... 16
  C. This Action Should be Stayed Pending Arbitration..... 17
    1. To the Extent They are Not Arbitrable, Plaintiffs' Requests for Injunctive Relief Should Be Stayed. .... 17
    2. The Remaining Claims against Alphonso Should Also Be Stayed..... 18
V. CONCLUSION .... 18

## TABLE OF AUTHORITIES

**Cases**

*A.A. v. Roku, Inc.*, No. 25-cv-06284, 2026 WL 1349064 (N.D. Cal. May 14, 2026) .......... 10

*Adibzadeh v. Best Buy Co. Inc.*, No. 20-cv-06257, 2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) .......... 9

*Ambercroft Trading Ltd. v. Biddy*, No. 19-cv-06810, 2020 WL 1820599 (N.D. Cal. Apr. 10, 2020) .......... 18

*Arellano v. T-Mobile, USA, Inc.*, No. C 10-05663, 2011 WL 1362165 (N.D. Cal. Apr. 11, 2011) .......... 15

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83 (2000) .......... 14

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) .......... 8

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) .......... 8

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022) .......... 8

*Carwile v. Samsung Telecomms. Am., LLC*, No. CV 12-05660, 2013 WL 11030374 (C.D. Cal. July 9, 2013) .......... 13

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013) .......... 14, 15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) .......... 8, 17

*Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002) .......... 14

*Cnty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*, 47 Cal.App.4th 237 (1996) .......... 10

*Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal.App.4th 677 (2000) .......... 16

*Cordas v. Uber Techs., Inc.*, 228 F.Supp.3d 985 (N.D. Cal. 2017) .......... 14

*Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*, 158 Cal.App.4th 1061 (2008) .......... 10

*Han v. Samsung Telecomms. Am., LLC*,
No. CV 13-3823, 2014 WL 505999 (C.D. Cal. Jan. 30, 2014)........ 11

*Herron v. Best Buy Stores, L.P.*,
No. 12-cv-02103, 2014 WL 2462973 (E.D. Cal. June 2, 2014)........ 11

*Hoekman v. Tamko Bldg. Prods., Inc.*,
No. 14-cv-01581,2015 WL 9591471 (E.D. Cal. Aug. 26, 2015)........ 11, 12

*Houtchens v. Google LLC*,
649 F.Supp.3d 933 (N.D. Cal. 2023)........ 14

*Jackson v. S.A.W. Ent. Ltd.*,
629 F.Supp.2d 1018 (N.D. Cal. 2009)........ 15

*Lee v. Tesla, Inc.*,
No. SACV 20-00570, 2020 WL 10573281 (C.D. Cal. Oct. 1, 2020)........ 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)........ 16

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016)........ 14

*Montes v. Thorntons LLC*,
831 F.Supp.3d 860 (N.D. Cal. 2026)........ 14

*Morris v. Redwood Empire Bancorp*,
128 Cal.App.4th 1305 (2005)........ 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)........ 8, 17

*Navarro v. SmileDirectClub, Inc.*,
No. 22-cv-00095, 2022 WL 1786582 (N.D. Cal. June 1, 2022)........ 9

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)........ 9

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal.4th 223 (2012)........ 15

*Ramirez v. Elec. Arts Inc.*,
No. 20-cv-05672, 2021 WL 843184 (N.D. Cal. Mar. 5, 2021)........ 14

*Reigelsperger v. Siller*,
40 Cal.4th 574 (2007)........ 13

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
298 F.Supp.3d 1285 (N.D. Cal. 2018)........ 12, 13

*Sellers v. JustAnswer LLC*,
73 Cal.App.5th 444 (2021) ..... 9

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987) ..... 8

*Sheffer v. Samsung Telecomms. Am., LLC*,
No. CV 13-3466, 2014 WL 506556 (C.D. Cal. Jan. 30, 2014) ..... 11, 12

*Sherman v. RMH, LLC*,
No. 13-cv-1986, 2014 WL 30318 (S.D. Cal. Jan. 2, 2014) ..... 16

*Shroyer v. New Cingular Wireless Servs., Inc.*,
498 F.3d 976 (9th Cir. 2007) ..... 14

*Shugars v. Walmart Inc.*,
No. 24-cv-02765, 2025 WL 786348 (N.D. Cal. Mar. 12, 2025) ..... 15

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ..... 16

*Singh v. Adobe, Inc.*,
797 F.Supp.3d 1038 (N.D. Cal. 2025) ..... 17

*Smith v. Inflection Risk Sols., LLC*,
No. 25-cv-07620, 2026 WL 622116 (N.D. Cal. Mar. 5, 2026) ..... 8

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ..... 17

*Synopsys, Inc. v. Siemens Indus. Software Inc.*,
No. 20-cv-04151, 2021 WL 11679003 (N.D. Cal. Sep. 9, 2021) ..... 17

*Tice v. Amazon.com, Inc.*,
No. 19-cv-1311, 2020 WL 1625782 (C.D. Cal. Mar. 25, 2020) ..... 10

*Tice v. Amazon.com, Inc.*,
845 F.App'x 535 (9th Cir. 2021) ..... 10

*Turing Video Tech., Inc. v. AGI7 Inc.*,
No. 24-cv-04606, 2025 WL 579190 (N.D. Cal. Feb. 21, 2025) ..... 17, 18

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960) ..... 16

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
187 Cal.App.4th 634 (2010) ..... 15

*Warner Bros. Ent. Inc. v. Starline Tours of Hollywood, Inc.*,
No. CV 16-02001, 2016 WL 10771309 (C.D. Cal. June 20, 2016) ..... 18

*Weinstat v. Dentsply Int'l, Inc.*,
180 Cal.App.4th 1213 (2010) .......... 11

*Wheeler v. LG Elecs. USA, Inc.*,
No. 22-cv-00459, 2024 WL 51353 (E.D. Cal. Jan. 4, 2024) .......... 13, 17

**Statutes**

9 U.S.C.
§ 2 .......... 7
§ 3 .......... 1, 8, 17
§ 4 .......... 1

Cal. Civ. Code § 1589 .......... 13

Cal. Com. Code § 1201 .......... 11

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

PLEASE TAKE NOTICE that on November 4, 2026, at 10:00 a.m., or as soon thereafter as this motion ("Motion") may be heard by the Court, Defendant LG Electronics USA, Inc. ("LG") will move for an order compelling arbitration pursuant to section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and Federal Rule of Civil Procedure 12(b)(1), of all claims asserted against LG in the Complaint filed by Plaintiffs Leona Cazares, Michael Walsh, and Laura Willis-Albrigo ("Plaintiffs"). LG also requests a stay of all proceedings pending arbitration pursuant to section 3 of the FAA, 9 U.S.C. § 3. This Motion is based on this Notice of Motion and Motion, the arguments below and at any hearing on this Motion, the Declaration of Matthew Durgin ("Durgin Decl."), and the Request for Judicial Notice ("RFJN"). Pursuant to § VIII(a) of the Court's Standing Order, counsel certifies that all parties conferred on this Motion on August 14, 2024 by videoconference.

## STATEMENT OF RELIEF SOUGHT

LG seeks an order compelling Plaintiffs to individual arbitration as to all claims asserted against LG and staying the entire case pending arbitration.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case does not belong in this Court because Plaintiffs agreed to arbitrate all disputes concerning their LG Smart TVs. Plaintiffs concede in their Complaint that they had to accept LG's Smart TV Terms of Use ("TV Terms") to use Smart TV functionality. Plaintiffs certainly used that functionality—their claims center on it. The TV Terms include an arbitration agreement ("TV AA") that broadly requires arbitration of "any and all disputes." In addition to agreeing to the TV Terms, the TVs Plaintiffs purchased contained a product warranty card with a mandatory arbitration agreement ("Product AA"), which also requires arbitration of "all disputes" that "aris[e] out of or relat[e] in any way to ... the [Smart TV] product." Plaintiffs had notice of both the TV AA, which was displayed on their TVs in scrollable form, and the Product AA, which was prominently placed in a short, in-the-box warranty and referenced in additional on- and in-the-box notices. Plaintiffs assented to the TV Terms by checking a bubble next to it and clicking "Agree" on their TV; they assented to the Product AA by using their TVs. They never elected to opt out of arbitration. As a

result, Plaintiffs entered into two valid agreements to arbitrate their claims. While Plaintiffs are free to contest the enforceability or scope of their agreements, those challenges must be resolved by the arbitrator in the first instance under the TV AA's delegation provisions. Regardless, any such challenges would fail. Thus, the Court should resolve this straightforward Motion by compelling Plaintiffs to arbitrate their claims and staying this case pending arbitration. As to Plaintiffs' claims against Defendant Alphonso Inc. ("Alphonso"), a majority-owned subsidiary of LG, the Court should exercise its discretion to stay those as well to prevent inefficiency and the risk of conflicting decisions.

## II. Relevant Background

### A. The Parties.

Defendant LG is the United States subsidiary of LG Electronics, Inc., a global leader and technology innovator in consumer electronics, including Smart TVs. Durgin Decl. ¶5.[1] A Smart TV is any television that can connect to the internet without needing a separate device, like a set-top box or streaming device. *Id.* ¶6. Users with LG Smart TVs can elect to enable on their TVs automatic content recognition ("ACR") software, which identifies and analyzes content viewed on the device to provide personalized content recommendations and enhance the user's experience. *Id.* ¶7. Plaintiffs allege that Alphonso is an advertising and data analytics company that provides ACR technology, content identification services, and advertising analytics services to Smart TV manufacturers such as LG. Dkt. 1, Complaint ("Compl."), ¶64.

Plaintiff Cazares allegedly purchased an LG Smart TV in 2018 and another in 2025. *Id.* ¶19. Plaintiff Walsh allegedly purchased an LG Smart TV in 2024. *Id.* ¶34. Plaintiff Willis-Albrigo allegedly purchased an LG Smart TV in 2023; her spouse allegedly performed the initial TV setup. *Id.* ¶¶49, 53. All Plaintiffs reside in California and allegedly regularly use their TV to view content, including on streaming services. *Id.* ¶¶18-20, 33-35, 48-50. Plaintiffs claim that ACR technology was incorporated into and enabled on their TVs, and ACR data derived from content they viewed was collected and transmitted to Alphonso without their consent. *Id.* ¶¶22-32, 37-47, 54-62.

[1] All exhibits are to the Durgin Declaration, unless otherwise noted. Also, unless otherwise noted, all emphasis in this brief is added and all internal citations and quotations in cited cases are omitted.

**B. Plaintiffs Had to Accept LG's TV Terms to Use the Smart TV Functionality.**

Before they could use Smart TV functionality on their TVs (*i.e.*, use streaming services, like Netflix or Amazon Prime), all Plaintiffs were required to accept the TV Terms and Privacy Policy. Durgin Decl. ¶8. Plaintiffs would have accepted these agreements during the initial TV setup, a process that was substantially the same during the years Plaintiffs purchased their TVs and remains the same today. *Id.* ¶10. The flow includes a screen titled "Terms and Conditions," displaying a short list of TV-related agreements that users could accept or reject based on their preferences. *Id.* ¶14. By default, all agreements presented on the screen are unchecked; users must affirmatively check the bubble next to each agreement they wish to accept and then click the "Agree" button at the bottom of the screen. *Id.* ¶¶14-15, 21. Users decide which agreements to accept. *Id*. ¶¶17-18, 21. Users ***must*** accept the TV Terms and the Privacy Policy to use the Smart TV functionality, which allows them to stream content on their TV. *Id.* ¶¶8, 15-16. If a user does not accept both agreements, they will not have this functionality. *Id.* ¶¶8, 23. The full text of each user agreement is available in scrollable form on the righthand side of the screen. *Id.* ¶¶14-16, 19. A user may take as much time as they want to review any agreement before deciding whether to accept. *Id.* ¶¶15-16, 19. Users may also change their selections at any time after initial setup. *Id.* ¶24. All Plaintiffs allege they "regularly use[] the[ir] LG Smart TVs to access video-viewing content, including through streaming services such as Netflix [and] Amazon Prime," among others. Compl. ¶¶20, 35, 50. Thus, all Plaintiffs must have agreed to the TV Terms and Privacy Policy.

LG's records confirm that Plaintiffs agreed to the TV Terms. LG maintains records capturing each time a user consents to any TV-related agreement, including the TV Terms. Durgin Decl. ¶25. Using serial numbers provided by Plaintiffs' counsel, LG located consent records confirming that each Plaintiff agreed to the TV Terms. *Id.* ¶¶27-30, 32.

**C. The TV Terms' Broad Arbitration Provision Governs Plaintiffs' Claims.**

At all relevant times, the TV Terms (also referred to therein as an End User License Agreement, or "EULA") included a "Dispute Resolution for United States Residents" provision with an agreement to arbitrate "***all disputes***" arising in connection with the TV Terms, which broadly "govern your use of Smart Media Product (including but not limited to Smart TV, monitors,

or any other internet-based Media Products) Services." Ex. 15 at 1. The TV AA did not change substantively between June 2018 and August 2026, and thus the provisions applicable to each Plaintiff are substantively identical. *Id.* ¶¶52, 56. The TV AA specifies that the "agreement to arbitrate disputes includes, but is not limited to all claims arising out of or relating to any aspect of this EULA, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory, and regardless of whether the claims arise during or after the termination of this EULA," subject to several exceptions (including for injunctive relief). Ex. 15 at 16.

The TV AA further advises in all caps that: "YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THIS EULA, YOU AND LGE ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION." *Id.*, § 21(a); *see also id.*, § 21(f). The TV AA explains that "[a]ny arbitration between you and LGE will be governed by the Consumer Arbitration Rules ('AAA Rules') of the American Arbitration Association ('AAA'), as modified by this EULA." *Id.*, § 21(c). Finally, the TV AA notifies users that, if they do not wish to arbitrate, they can opt out by sending "notice to LG no later than 30 calendar days from the date of the first consumer purchaser's purchase of the product by either: (i) sending an e-mail to [optout@lge.com], with the subject line: 'Arbitration Opt Out' or (ii) calling 1-800-980-2973." *Id.* The user must include their name and address, the date of purchase of the product, the product model name or model number, and the product serial number in the opt-out notice. *Id.*, § 21(g).

LG records all opt-out requests. It has no such record for any Plaintiff. Durgin Decl. ¶59.

### D. Materials On and Inside Each Smart TV Box Additionally Include Binding Arbitration Provisions Governing Plaintiffs' Claims.

At all relevant times, every box distributed in the United States containing the Smart TVs at issue included an "Arbitration Advisal" on the outside of the box as well as an owner's manual and warranty card ("Warranty") inside the box. Durgin Decl. ¶34. As described below, the text in all three was substantially similar for the duration of the relevant period at issue.

***Arbitration Advisal.*** The Advisal on the outside of each box states, at a minimum:

> By using this product, you agree that all disputes between you and LG arising out of or relating in any way to this product (including but not limited to warranty disputes) shall be resolved exclusively through binding arbitration on an individual

basis

Durgin Decl. ¶¶37, 39, 41; Exs. 4-7. The Advisal notifies users that they can find the full "terms of the arbitration agreement (including details on the procedure for resolving disputes) [ ] at www.lg.com/us/arbitration (USA) or www.lg.com/ca_en/arbitration (Canada)," URLs which direct to online versions of the Product AA. Durgin Decl. ¶¶37, 39, 41 (substantially similar language for Cazares' 2019 TV). During the relevant period, the online versions of the Product AA available at the provided URLs were substantially similar to the printed version in the Warranty placed in the product box, as discussed below. *Id.* ¶56; *see also* Ex. 16. The Advisal on Cazares (2025), Walsh, and Willis-Albrigo's TV boxes in fact notified them that the arbitration agreement available at the URLs was also included in "your owner's manual and/or warranty" (i.e., that they could find the Product AA both online and printed in the box with their TV). Durgin Decl. ¶¶39, 41.

***Owner's manual.*** Each Plaintiff would have also received an owner's manual inside their TV box. Durgin Decl. ¶34. On page 2, the manual advises:

> By using this product, you agree that all disputes between you and LG arising out of or relating in any way to this product (including but not limited to warranty disputes) shall be resolved exclusively through binding arbitration on an individual basis. The terms of the arbitration agreement (including details on the procedure for resolving disputes) is available at www.lg.com/us/arbitration (USA) or www.lg.com/ca_en/arbitration (Canada).

Exs. 8-11. As with the Arbitration Advisal, the URLs in the owner's manual direct users to the online version of the Product AA discussed above.

***Warranty.*** Plaintiffs additionally received a simple, two-page Warranty in their product box(es). The language in the Warranty each Plaintiff received was nearly identical. Durgin Decl. ¶¶48-49; Exs. 12, 13. At the top of the first page, the Warranty has an "ARBITRATION NOTICE" that conspicuously advises that "THIS LIMITED WARRANTY CONTAINS AN ARBITRATION PROVISION THAT REQUIRES YOU AND LG TO RESOLVE DISPUTES BY BINDING ARBITRATION INSTEAD OF IN COURT, UNLESS YOU CHOOSE TO OPT OUT." Exs. 12 at 1, 13 at 1. It further advises "PLEASE SEE THE SECTION TITLED 'PROCEDURE FOR RESOLVING DISPUTES' BELOW." Exs. 12 at 1, 13 at 1.

The full text of the Product AA then appears under the capitalized, bolded heading

"**PROCEDURE FOR RESOLVING DISPUTES**[,]" at the top of the second page. Exs. 12 at 2, 13 at 2. Directly below the heading, the Product AA advises users in all caps, that:

> ALL DISPUTES BETWEEN YOU AND LG ARISING OUT OF OR RELATING IN ANY WAY TO THIS LIMITED WARRANTY OR THE PRODUCT SHALL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION, AND NOT IN A COURT OF GENERAL JURISDICTION. BINDING ARBITRATION MEANS THAT YOU AND LG ARE EACH WAIVING THE RIGHT TO A JURY TRIAL AND TO BRING OR PARTICIPATE IN A CLASS ACTION.

Exs. 12 at 2, 13 at 2. Like the TV AA, the Product AA explains that "dispute" "include[s] any dispute, claim or controversy of any kind whatsoever (whether based in contract, tort, statute, regulation, ordinance, fraud, misrepresentation or any other legal or equitable theory) arising out of or relating in any way to the sale, condition or performance of the product or this Limited Warranty." Exs. 12 at 2, 13 at 2. The Product AA also makes clear that: "you and LG agree to resolve any claims between us ***only by binding arbitration on an individual basis***, unless you opt out as provided below," any arbitrations will be administered by the AAA under its Consumer Arbitration Rules, and "any dispute between you and LG ***shall not under any circumstances proceed as part of a class or representative action***." Exs. 12 at 2, 13 at 2.

Under the bolded heading "Opt Out", the Product AA advises users that they "may opt out of this dispute resolution procedure," which means "neither you nor LG can require the other to participate in an arbitration proceeding." Exs. 12 at 2, 13 at 2. Users are informed that they may opt out by email or phone (using the same procedures specified in the TV AA), and that "opting out of this dispute resolution procedure will not affect the coverage of the Limited Warranty in any way." Exs. 12 at 2, 13 at 2. LG records all opt-out requests it receives, and its records reveal that no Plaintiff opted out. Durgin Decl. ¶59.

### E. The TV AA and Product AA are Consumer Friendly and Cost Effective.

Both the TV AA and Product AA provide users with a simple and efficient means to resolve disputes, through several provisions, including:

- **Small claims court option**: Either party may bring a claim in small claims court in lieu of arbitration, *e.g.*, Exs. 15 at 16, 12 at 2;
- **Consumer-friendly procedures**: Any arbitration will be conducted under the AAA's

streamlined Consumer Arbitration Rules. Additionally, for claims of $25,000 or less, users have sole discretion to determine if the arbitration proceeds solely on documents, as a telephonic hearing, or as an in-person hearing, *e.g.*, Exs. 15 at 17, 12 at 2. Moreover, before any arbitration begins, LG and users agree to first "engage in good faith discussions in an attempt to amicably resolve your claim[,]" which may obviate the need for arbitration. *E.g.*, Exs. 15 at 17, 12 at 2. And under the Product AA specifically, the law of the user's state of residence governs. Exs. 15 at 2, 12 at 2;

- **Conveniently located hearing**: Any arbitration that proceeds must occur within the federal judicial district where a user lives, absent party agreement. *E.g.*, Exs. 15 at 17, 12 at 2; and
- **Costs**: For claims up to $25,000, LG will pay all arbitration fees and, if a user prevails, will pay reasonable attorneys' fees and expenses. *E.g.*, Exs. 15 at 16, 12 at 2. Under the Product AA, LG additionally waives any right to seek attorneys' fees and expenses if it prevails. Exs. 12 at 2, 13 at 2.

Further, as discussed above, exercising the right to opt out, which all users are free to do, will not affect the Limited Warranty's coverage in any way. Exs. 15 at 18, 14 at 2, 12 at 2.

### F. Plaintiffs Ignored Their Agreements to Arbitrate and Filed Suit.

Notwithstanding their agreements to arbitrate, Plaintiffs filed this putative class action on April 30, 2026, asserting claims against LG and Alphonso for: invasion of privacy (intrusion upon seclusion, public disclosure of private facts); violations of California's constitutional right to privacy, the California Invasion of Privacy Act §§ 631, 632, 638.50–638.51, the California Comprehensive Computer Data Access and Fraud Act (Cal. Penal Code § 502), the Electronic Communications Protection Act (18 U.S.C. § 2510), the Video Privacy Protection Act (18 U.S.C. § 2710) (LG only), and California Unfair Competition Law ("UCL"); negligence; breach of implied contract (LG only); unjust enrichment; and for injunctive relief. Compl. ¶¶258–669.

## III. Legal Standard

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a "federal policy favoring arbitration" and requires courts to "rigorously enforce

agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

On a motion to compel arbitration, a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000). Certain "gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (emphasis in original). The Ninth Circuit has set out a simple framework for resolving challenges to arbitration when a delegation clause is in play: the court must first decide whether an arbitration agreement exists; if it does, the court must next decide whether the delegation clause is enforceable; and, if both questions are resolved in favor of arbitration, the delegation clause sends the remaining scope-and-enforceability issues to the arbitrator. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). If a court considers scope itself, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "'[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability.'" *Bielski v. Coinbase, Inc*., 87 F.4th 1003, 1013 (9th Cir. 2023). On a motion to compel arbitration, a court treats the facts as it would on a motion for summary judgment and may consider evidence outside the pleadings. *Smith v. Inflection Risk Sols., LLC*, 2026 WL 622116, at *4 (N.D. Cal. Mar. 5, 2026).

Once a court determines that a plaintiff's claims are subject to arbitration, it must stay the case pending completion of arbitration. 9 U.S.C. § 3.

## IV. ARGUMENT

### A. The TV and Product Arbitration Agreements are Valid and Bind Plaintiffs.

There can be no dispute that Plaintiffs agreed to arbitrate their claims. They agreed to both the TV AA and Product AA; either is sufficient to compel arbitration here.

#### 1. Plaintiffs Affirmatively Clicked to Accept the TV Terms and the Arbitration Agreement Therein.

As Plaintiffs acknowledge, they had to accept, at a minimum, the TV Terms and Privacy Policy to enable basic Smart TV functionality. Compl. ¶179; *see supra* Part II.B. To be bound by

terms presented in a set-up or sign-up flow, a user must receive "actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023). The TV AA readily meet these requirements because Plaintiffs had to check the bubble next to the TV Terms, which were displayed in scrollable form on the righthand side of the TV screen. Durgin Decl. ¶¶14-17. After checking the bubble, Plaintiffs also had to click the "Agree" button on their TV screen. *Id.* ¶17.

Courts routinely enforce scrollwrap agreements like the TV Terms because they satisfy both the notice and assent requirements. They provide sufficient notice by "plac[ing] the contractual terms directly in front of the user," and obtain assent by requiring the user to "check[] a box or click[] on a button." *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 461, 470-71 (2021) ("[T]here should be little doubt scrollwrap agreements are enforceable under California law because the consumer is given the contract, a sufficient circumstance to place the consumer on inquiry notice of the contractual terms."). Courts also routinely enforce clickwrap agreements, where users click to agree to terms that are available to them (often via hyperlink), but that they do not have to review before accepting. *See Adibzadeh v. Best Buy Co. Inc.*, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) ("[M]utual assent manifests when internet users accept 'clickwrap' agreements.") (collecting cases); *see also Navarro v. SmileDirectClub, Inc.*, 2022 WL 1786582, at *4 (N.D. Cal. June 1, 2022) (plaintiff "assented to [the terms] when he clicked the 'I agree' box, as required before he could complete his account. By assenting to the [terms], [plaintiff] also assented to the arbitration provision"). LG's records confirm that Plaintiffs accepted the TV Terms close-in-time to their purchases and, to the extent they subsequently withdrew consent, *re-accepted* the TV Terms thereafter. Durgin Decl. ¶¶29-33; *see also* Ex. 15 at 16 (the TV AA applies to all disputes "regardless of whether the claims arise during or after the termination of this EULA"). Plaintiffs were free to opt out if they did not want to arbitrate their claims; none did. *Id.* ¶58. Because they had notice of the TV AA and affirmatively assented to them, they created a binding obligation to arbitrate "all disputes" between them and LG.[2]

[2] While the TV AA excludes Plaintiffs' requests for injunctive relief, those requests must be stayed pending the arbitration of Plaintiffs' claims, as discussed below. *See infra* Part IV.C.1.

The allegation that Ms. Willis-Albrigo's spouse set up her TV does not change the analysis. Compl. ¶53. Even taking that allegation at face value, LG has multiple consent records for the TV Terms for Ms. Willis-Albrigo's TV *after* the first consent record, suggesting acceptance by her. Durgin Decl. ¶29. Moreover, under California law, it is well-settled that a nonsignatory to an arbitration agreement can be compelled to arbitrate when "a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim." *Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*, 158 Cal.App.4th 1061, 1069-70 (2008). A spousal relationship is a "preexisting relationship that can make 'it equitable to compel the nonsignatory to also be bound to arbitrate ... her claim." *Tice v. Amazon.com, Inc.*, 2020 WL 1625782, at *3 (C.D. Cal. Mar. 25, 2020), *rev'd on other grounds and remanded*, 845 F. App'x 535 (9th Cir. 2021); *see also Cnty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*, 47 Cal.App.4th 237, 245 (1996).

Here, Ms. Willis-Albrigo's spousal relationship prevents her from disclaiming the TV Terms or the TV AA. *Tice v. Amazon.com, Inc.* is instructive. 2020 WL 1625782 (C.D. Cal. Mar. 25, 2020). There, the plaintiff's husband (who was not a plaintiff) agreed to the Alexa Terms of Use, which had an arbitration clause. The plaintiff then voluntarily used the Alexa device. The court held "the preexisting spousal relationship in this case prevents Plaintiff from avoiding the terms of the Alexa TOU" for claims arising from her voluntary use of the device. *Id.* at *3. The same is true here. Even if Ms. Willis-Albrigo's spouse initially accepted the TV Terms—enabling use of the Smart TV functionality—Ms. Willis-Albrigo "regularly uses the LG Smart TV to access video-viewing content, including through streaming services such as Netflix, Paramount, HBO Max, Hulu," and others. Compl. ¶50. Thus, she received a direct and voluntary benefit from the TV Terms, and her pre-existing spousal relationship with the alleged signatory prevents her from avoiding her obligation to arbitrate under those terms. *E.g.*, *A.A. v. Roku, Inc.*, 2026 WL 1349064, at *4 (N.D. Cal. May 14, 2026) (equitable estoppel prevents a party from circumventing terms "simply by having third parties create accounts and then using" the device).

**2. Plaintiffs Additionally Agreed to the Product AA By Using their TVs, Providing Another Basis to Compel Arbitration.**

Plaintiffs also agreed to arbitrate by using their Smart TVs, which were packaged with clear physical notice of arbitration. As in the context of set-up and sign-up flows, courts applying California law rely on two key principles to determine whether written materials provided with a product purchase bind a purchaser to arbitration: (1) whether the party to be compelled to arbitration had adequate notice of the agreement and (2) whether the party assented to the agreement. *E.g.*, *Hoekman v. Tamko Bldg. Prods., Inc.*, 2015 WL 9591471, at * 3-4 (E.D. Cal. Aug. 26, 2015) (applying California law and granting motion to compel arbitration where plaintiffs received notice of the arbitration agreement with their product purchase and assented to that agreement through their conduct). Each Plaintiff allegedly purchased the Smart TVs at issue. Compl. ¶¶19, 34, 49. In doing so, they all received adequate notice of the Product AA and manifested their assent to it.

*First*, Plaintiffs had notice of the Product AA via the Warranty they received in the box with their TVs. "Under California law, receipt of a physical document containing contract terms or notice thereof is frequently deemed . . . a sufficient circumstance to place the offeree on inquiry notice of those terms." *Sheffer v. Samsung Telecomms. Am., LLC*, 2014 WL 506556, at *3 (C.D. Cal. Jan. 30, 2014). Courts routinely find that arbitration agreements in materials placed in a product box—like the Warranty—provide adequate notice. *See e.g.*, *Sheffer*, 2014 WL 506556, at *3 (compelling arbitration where arbitration provision was included in warranty booklets packaged with plaintiffs' smart phones); *Han v. Samsung Telecomms. Am., LLC*, 2014 WL 505999, at *3 (C.D. Cal. Jan. 30, 2014) (same); *Herron v. Best Buy Stores, L.P.*, 2014 WL 2462973, at *1 (E.D. Cal. June 2, 2014) (collecting cases and enforcing warranty arbitration provision because "contracts contained in boxes are no less enforceable than any other type of contract" (citation modified)). This is true even when a plaintiff receives the warranty with the arbitration provisions "*after* … purchase." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal.App.4th 1213, 1230 (2010).

The Warranty provided a reasonable person with sufficiently conspicuous notice of the Product AA. *See e.g.*, *Herron,* 2014 WL 2462973, at *1 (compelling arbitration after assessing whether the arbitration provision in the in-the-box warranty was "prominently disclosed"); Cal.

Com. Code § 1201 (defining a "conspicuous" contract term as one "so written, displayed, or presented that a ***reasonable person*** against whom it is to operate ought to have noticed it."). The Warranty's first page begins with the capitalized and prominently placed "ARBITRATION NOTICE[,]" advising users that "THIS LIMITED WARRANTY CONTAINS AN ARBITRATION PROVISION THAT REQUIRES YOU AND LG TO RESOLVE DISPUTES BY BINDING ARBITRATION INSTEAD OF IN COURT." The Warranty then directs users to that binding arbitration agreement below. Exs. 12 at 1, 13 at 1. The Product AA appears in full on the second page; it clearly advises that "ALL DISPUTES BETWEEN YOU AND LG ARISING OUT OF OR RELATING IN ANY WAY TO THIS LIMITED WARRANTY ***OR THE PRODUCT*** SHALL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION . . . " Exs. 12 at 2, 13 at 2. The Product AA also includes bolded headers to alert users to key provisions, including the "**Opt Out**" provision, which allows a user to "opt out of this dispute resolution procedure" within 30 days by either sending an email or making a call. Exs. 12 at 2, 13 at 2. These features gave Plaintiffs sufficient notice of their obligations to arbitrate. *Cf. Sheffer*, 2014 WL 506556, at *3 (arbitration agreement in two product booklets was sufficiently conspicuous because the table of contents directed users to the agreement and the agreement "appear[ed] underneath a bold heading entitled, 'What is the procedure for resolving disputes?'"). It is irrelevant whether Plaintiffs actually read the Product AA. *E.g.*, *Hoekman*, 2015 WL 9591471, at *4.

In addition to the Warranty, which alone provided adequate notice of the Product AA, Plaintiffs received two more notices: (1) an Arbitration Advisal on the outside of the TV box and (2) the second page of the Owner's Manual in the box. *See supra* Part II.D. Both alert users that "By using this product, you agree that ***all disputes between you and LG arising out of or relating in any way to this product*** (including but not limited to warranty disputes) shall be resolved exclusively through binding arbitration on an individual basis" and provide the URL where the user can view the online version of the Product AA (which is substantively identical to the one in the Warranty). Exs. 8-11; Durgin Decl. ¶56. These notices are sufficient. *E.g.*, *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F.Supp.3d 1285, 1294 (N.D. Cal. 2018) (notice on outside of box alerted users to additional terms and conditions and guidebook inside the box that

included arbitration provisions); *Wheeler v. LG Elecs. USA, Inc.,* 2024 WL 51353, at *9 (E.D. Cal. Jan. 4, 2024) (similar).

*Second*, Plaintiffs manifested their assent to the Product AA. In California, a party may demonstrate assent to an arbitration agreement through his conduct. *See Reigelsperger v. Siller*, 40 Cal.4th 574, 579-80 (2007) ("mutual consent is gathered from the reasonable meaning of the words and acts of the parties"); *see also* Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting"). All Plaintiffs admit they used their Smart TVs. Compl. ¶¶20, 35, 50. By using their TVs, they manifested assent to the Product AA, as they were advised in the Arbitration Advisal and Owner's Manual. Exs 4-11. Plaintiffs never opted out of arbitration, Durgin Decl. ¶59, which would "not affect the coverage of the Limited Warranty in any way," Exs. 12, 14-15. Their failure to opt out further confirms that they agreed to and are bound by the Product AA. *E.g.*, *Carwile v. Samsung Telecomms. Am., LLC*, 2013 WL 11030374, at *4 (C.D. Cal. July 9, 2013) (plaintiff "remain[ed] bound by" arbitration agreement when there was "no evidence [she] opted out" and the warranty provided that "a purchaser may opt out within 30 days of purchase by simply sending an email or calling a phone number"); *In re Samsung*, 298 F.Supp.3d at 1296 ("That added ability to avoid arbitration without penalty … further confirms that Plaintiffs … agreed to arbitrate under California law.").

### B. The Arbitration Agreements are Enforceable and Cover Plaintiffs' Claims.

Given the valid arbitration agreements, the only remaining questions are whether (1) the agreements are enforceable and (2) they cover the parties' dispute. The TV AA delegates both questions to the arbitrator, so the Court need not reach these issues. Should the Court consider these questions, the answer to both—under either the TV AA or the Product AA—is yes.

As a threshold issue, the TV AA delegates questions of arbitrability and enforceability to the arbitrator. It explicitly incorporates the AAA Consumer Arbitration Rules. Exs. 14 at 1, 15 at 16. Those rules provide that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including ***any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim***." RFJN, Ex. A (AAA Consumer

Rules, R-7). "[P]arties to an arbitration agreement delegate issues regarding the validity of the agreement to the arbitrator when the agreement incorporates the AAA Rules." *Houtchens v. Google LLC*, 649 F.Supp.3d 933, 944 (N.D. Cal. 2023); *see also, e.g.*, *Montes v. Thorntons LLC*, 831 F.Supp.3d 860, 870 (N.D. Cal. 2026) (Lee, J.) ("[C]ourts routinely find that enforceability issues are delegated even when the delegation clause is incorporated by reference."). The same is true for arbitrability. *E.g.*, *Cordas v. Uber Techs., Inc.*, 228 F.Supp.3d 985, 992 (N.D. Cal. 2017) (the "clear weight of authority supports the conclusion [that incorporation of the AAA Rules] provide clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to an arbitrator"). "When the parties' contract delegates [these] question[s] to an arbitrator, a court may not override the contract[,]" and any objections Plaintiffs may assert regarding the TV AA's enforceability or the arbitrability of their claims are for the arbitrator to decide. *Ramirez v. Elec. Arts Inc.*, 2021 WL 843184, at *3 (N.D. Cal. Mar. 5, 2021).

In any event, the TV AA and Product AA are enforceable and cover Plaintiffs' claims.

**1. The TV AA and Product AA are Enforceable.**

Plaintiffs cannot avoid the TV AA or Product AA by claiming they are unconscionable. Under California law, a party seeking to avoid arbitration must show both procedural and substantive unconscionability to avoid enforcement. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007). Plaintiffs cannot show either.

**a. The Agreements are Not Procedurally Unconscionable.**

Neither the TV AA nor the Product AA are procedurally unconscionable. "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). As to oppression, courts have repeatedly held that, even in the context of an adhesion contract, "the existence of a meaningful right to opt-out of [arbitration] necessarily renders the [arbitration clause] . . . procedurally conscionable as a matter of law." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016); *see also, e.g.*, *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th

Cir. 2002); *Lee v. Tesla, Inc.*, 2020 WL 10573281, at *5 (C.D. Cal. Oct. 1, 2020). At all relevant times, the TV AA and Product AA provided a meaningful opportunity to opt out of arbitration. Durgin Decl. ¶58; Exs. 12 at 3, 13 at 2, 14 at 4, 15 at 18. If Plaintiffs wanted to resolve their disputes in court, they could have—but did not—opt out of arbitration. They cannot now complain that the agreements are unconscionable because they failed to exercise that right.

Nor can Plaintiffs demonstrate any unfair surprise. "Surprise involves the extent to which the contract clearly discloses its terms." *Chavarria*, 733 F.3d at 922. Where terms at issue are capitalized, bolded, or otherwise not "buried in fine print[,]" courts decline to find surprise. *Jackson v. S.A.W. Ent. Ltd.*, 629 F.Supp.2d 1018, 1023 (N.D. Cal. 2009); *see also, e.g.*, *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1321 (2005) ("[A] clear heading in a contract may refute a claim of surprise"). In the TV Terms, the TV AA appears under the clear all-caps heading, "DISPUTE RESOLUTION FOR UNITED STATES RESIDENTS." Exs. 14 at 1, 15 at 16. Immediately below, users are advised that "all disputes . . . shall be resolved by binding arbitration." Exs. 14 at 1, 15 at 16. As to the Product AA, both the Arbitration Advisal on the outside of the TV box and the Owner's Manual inside alerted Plaintiffs to the Product AA and clearly instructed how to find it online. Exs.4-11. The Warranty presented the Product AA in a simple, two-page document with clear headings and capitalized and bolded font. Exs. 12, 13. Because the Product AA was "readily available" both "in the box with the [Product]" and online, there was no procedural unconscionability. *Arellano v. T-Mobile, USA, Inc.*, 2011 WL 1362165, at *3, 5 (N.D. Cal. Apr. 11, 2011) (no procedural unconscionability where the arbitration agreement was included in product packaging and was also available online). "Because no degree of procedural unconscionability is present, the Court [need] not reach [any] arguments regarding substantive unconscionability." *Shugars v. Walmart Inc.*, 2025 WL 786348, at *7 (N.D. Cal. Mar. 12, 2025).

**b. The Agreements are Not Substantively Unconscionable.**

The TV AA and Product AA are not substantively unconscionable, either. A contract term is substantively unconscionable only if it is "so one-sided as to 'shock the conscience,' or … 'impose[s] harsh or oppressive terms.'" *Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal.App.4th 634, 647-48 (2010); *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,

55 Cal.4th 223, 246 (2012) ("A contract term is not substantively unconscionable when it merely gives one side a greater benefit"). Both agreements apply equally to both parties and do not come close to "shocking the conscience." *E.g.*, *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal.App.4th 677, 689 (2000) (arbitration clause not unconscionable where "[i]ts terms and burdens applied equally to both parties"); *see supra* Part II.C, D (noting that provisions apply to disputes brought by either LG or user). Moreover, neither the TV AA nor Product AA deprive Plaintiffs of any right to pursue their claims, and the agreements' terms uniquely ***benefit*** consumers like Plaintiffs, thereby defeating any argument of substantive unconscionability. *See supra* Part II.E (discussing pro-consumer terms of the TV AA and Product AA); *see also Sherman v. RMH, LLC*, 2014 WL 30318, at *7 (S.D. Cal. Jan. 2, 2014) (arbitration agreement not substantively unconscionable given its fee-shifting provisions and "lack of evidence demonstrating that the arbitration clause will preclude Plaintiff from vindicating his rights").

**2. Plaintiffs' Claims Are Arbitrable under Both Arbitration Agreements.**

Because the arbitration agreements are binding and enforceable, the next question is whether they cover the parties' dispute. "To require arbitration, [Plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). "[U]nless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[,]" the court should order arbitration. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Courts must resolve doubt about whether a plaintiff's claims are subject to arbitration in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Plaintiffs' claims fall squarely within scope of the TV AA and Product AA. The TV AA applies to "all disputes" arising "in connection with" the TV Terms—which govern the use of all services LG provides in connection with its Smart TVs (among other products), Exs. 14 at 1, 15 at 16; the Product AA applies to "all disputes" "arising out of or relating in any way to . . . the product," Exs. 12 at 2, 13 at 2. Plaintiffs allege that this dispute concerns the ACR technology "incorporated" and "embedded" in their TVs, Compl. ¶¶67-68, 105, 262, which is a part of the

Smart TV "functionality," *id.* ¶¶106, 108. Thus, Plaintiffs' claims arise out services offered under the TV Terms and relate to the product they purchased. *See, e.g.*, *Chiron Corp.*, 207 F.3d at 1131 (there is "little doubt that [a] dispute is subject to arbitration" where the parties' arbitration agreement covers "[a]ny dispute, controversy or claim arising out of or relating to" the subject matter of an agreement); *Wheeler*, 2024 WL 51353, at *13 (claims covered by the LG Product AA at issue here because they were based "on the alleged defect in the dishwasher, the product covered by the arbitration provision."). Thus, Plaintiffs' claims are subject to arbitration.

**C. This Action Should be Stayed Pending Arbitration.**

When a court concludes claims should be compelled to arbitration, it must stay the case "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) (a stay is mandatory when a federal court finds a dispute is subject to arbitration and a party requests a stay); *Singh v. Adobe, Inc.*, 797 F.Supp.3d 1038, 1051 (N.D. Cal. 2025) (staying case pending arbitration).

**1. To the Extent They are Not Arbitrable, Plaintiffs' Requests for Injunctive Relief Should Be Stayed.**

As noted above, the TV AA—but not the Product AA—excepts requests for "injunctive relief" from the agreement to arbitrate. *See supra* Part II.C. Plaintiffs include requests for injunctive relief in connection with many of their claims. Compl. ¶¶295, 327, 363, 396, 430, 465, 494, 526, 552, 574, 631. If the Court determines that Plaintiffs' claims against LG should be compelled ***only*** under the TV AA and not also under the Product AA (which the Court should not do, given that the Product AA provides another ground to compel), it should nonetheless stay Plaintiffs' requests for injunctive relief under "its discretion to control its docket." *Moses*, 460 U.S. at 21 n.23. "[I]t is well-established and undisputed that courts have discretion to stay non-arbitrable issues." *Synopsys, Inc. v. Siemens Indus. Software Inc.*, 2021 WL 11679003, at *4 (N.D. Cal. Sep. 9, 2021). This Court has previously addressed this very issue and recognized that "a stay of ***this action*** is appropriate" to prevent duplicative parallel tracks in litigation and arbitration. *Turing Video Tech., Inc. v. AGI7 Inc.*, 2025 WL 579190, at *6 (N.D. Cal. Feb. 21, 2025) (Lee, J.) (staying entire action where request for injunctive relief was not arbitrable). The Court reasoned that where related merits issues and

requests for damages are arbitrable, merits rulings by the arbitrator "will streamline this Court's resolution of injunctive relief issues" and "protect [the defendant] from the hardship and inequity of being required to proceed with litigation on substantially the same issues in two forums." *Id.* That reasoning applies equally here because Plaintiffs' requests for injunctive relief are tethered to the merits of their claims.

### 2. The Remaining Claims against Alphonso Should Also Be Stayed.

The Court should stay Plaintiffs' claims against Alphonso pending arbitration. Courts routinely stay claims asserted against a non-arbitrating defendant when those claims substantially overlap with the claims asserted against the arbitrating defendant. *See Ambercroft Trading Ltd. v. Biddy*, 2020 WL 1820599, at *7 (N.D. Cal. Apr. 10, 2020) ("[A] stay of the lawsuit is appropriate because all of Plaintiffs' claims against the remaining Defendants substantially overlap with Plaintiffs' claims against the [arbitrating] Defendants."); *Warner Bros. Ent. Inc. v. Starline Tours of Hollywood, Inc.*, 2016 WL 10771309, at *8 (C.D. Cal. June 20, 2016) (same). ***All*** claims asserted against Alphonso are also asserted against LG. Those claims depend on the same ACR technology allegedly deployed in Plaintiffs' Smart TVs. Plaintiffs contend that LG and Alphonso worked in concert to use this technology. Compl. ¶140; *see also id.* ¶¶3-4, 7, 10, 67-68, 71-72. Thus, the operation and use of that ACR technology—and whether that can create liability under any of the purported claims at issue (it does not)—would be just as central to any litigation of Plaintiffs' claims against Alphonso as it would be in any arbitration with LG. Consideration of the same or substantially similar claims by both the arbitrator and the Court "would needlessly complicate the issues and questions of law in this case." *Ambercroft Trading*, 2020 WL 1820599, at *7. Such parallel proceedings create a risk of inconsistent decisions by the Court and the arbitrator on the same issues. Staying the entire case "will avoid the hardship and inefficiency of dual-track litigation and arbitration[,]" *Turing Video*, 2025 WL 579190, at *7, and the Court should exercise its discretion to stay the action in its entirety.

## V. CONCLUSION

For the foregoing reasons, LG requests that the Court enter an order compelling arbitration of Plaintiffs' claims against LG and staying this action pending the completion of arbitration.

Dated: August 21, 2026

Respectfully submitted,

COOLEY LLP
MICHAEL ATTANASIO (151529)
AUDREY MOTT-SMITH (300550)
MARC SUSKIN*
ROBBY L.R. SALDAÑA (356226)

*/s/ Audrey Mott-Smith*
Audrey Mott-Smith
Attorneys for Defendant
L.G. Electronics U.S.A., Inc.