UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEONA CAZARES, MICHAEL WALSH, and LAURA WILLIS-ALBRIGO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LG ELECTRONICS U.S.A., INC. and ALPHONSO INC.,

Defendants.

Case No. 5:26-cv-03840-EKL

**DECLARATION OF MATTHEW DURGIN IN SUPPORT OF DEFENDANT LG ELECTRONICS USA, INC.'S MOTION TO COMPEL ARBITRATION & STAY THE CASE**

I, Matthew Durgin, hereby declare as follows:

1. I am Vice President of Content and Services at LG Electronics U.S.A., Inc. ("LG"). My duties and responsibilities include overseeing LG's Smart TV business team covering the North American market.

2. I submit this declaration in support of the Motion to Compel Arbitration and Stay the Case ("Motion") filed by LG.

3. I am of legal age and am competent to make this declaration. My statements in this declaration are based on my personal knowledge of the facts set forth below, my review of records maintained in the ordinary course of business, and/or through consultation with individuals who are personally knowledgeable.

4. If called to testify regarding the facts set forth in this declaration, I could and would testify competently thereto.

## I. LG Smart TVs, Smart TV Functionality, and User Agreements.

5. LG is the United States subsidiary of LG Electronics, Inc., a global leader and technology innovator in consumer electronics, including Smart TVs.

6. A Smart TV is any television that can connect to the internet without needing a set-top box or streaming device. Smart TVs can be used to access a wide range of apps and streaming services, including free and premium streaming apps. The descriptions below pertain to LG Smart TVs.

7. Automatic Content Recognition ("ACR") software on a Smart TV is software that identifies and analyzes content viewed on the TV to provide personalized recommendations and enhance user experience.

8. To enable basic Smart TV functionality (*e.g.*, use apps like Netflix or Amazon Prime), a user must accept LG's TV Terms of Use ("TV Terms") and Privacy Policy, which a user can do either during the initial TV setup or thereafter. Smart TV functionality will not be available on the TV unless and until a user accepts the TV Terms and Privacy Policy. To enable ACR software on a Smart TV, a user must accept the Viewing Information Agreement. This also can be done during the initial setup of the Smart TV or later.

9. Because of my duties, I am familiar with the process a user goes through when first setting up their Smart TV, including the steps they must take to enable basic Smart TV functionality and to enable ACR software.

10. I understand that the initial setup flow for an LG Smart TV has been substantially similar between 2018 and the present. This means that each Plaintiff (or the person setting up their Smart TV) would have followed substantially the same steps laid out below to set up their TV.

11. Below, I describe steps performed to set up an LG Smart TV as an example of an initial setup. True and correct copies of screenshots of the setup from videos taken in June 2026 (Ex. 1) and August 2026 (Exs. 2-3) are attached as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3**. These screenshots are examples intended to provide a visual guide of the steps described below.

12. **Step 1:** To begin the setup flow, the user is asked to perform a few preliminary actions to set up the TV, including: (a) choose their language (English, Spanish, etc.), (b) enter their country, (c) enter their time zone, (d) set up optional accessibility services, (e) decide how to set up the TV (mobile device or with a remote control for the TV), and (f) connect the Smart TV to the internet by entering a Wi-Fi password or connect through an ethernet cable. Ex. 1 at 2-10.

13. **Step 2**: After completing these preliminary actions, the user is taken to a screen titled "Terms & Conditions." The screen states: "Welcome to the Smart Media Product Services!" and contains an introductory message relating to the user agreements that will be presented in the setup flow. Ex. 1 at 11. The screen also includes a "LEGAL NOTICE," which states: "PLEASE READ THIS LEGAL NOTICE CAREFULLY BEFORE ACCESSING OR USING YOUR SMART MEDIA PRODUCT. YOUR USE OF YOUR SMART MEDIA PRODUCT IS SUBJECT TO THE TERMS SET OUT BELOW. BY USING YOUR SMART MEDIA PRODUCT, YOU AGREE TO ALL OF THESE TERMS." *Id.* at 11-12.

14. **Step 3**: After clicking "Next," the consumer is shown another screen titled "Terms and Conditions," which displays a set of six separate user agreements ("User Agreements"). Ex. 1 at 13. The lefthand side of the screen displays the six separate User Agreements, each of which has a bubble next to it that is unchecked by default. The text referring to the TV Terms (which are titled "Terms of Use" on this screen) and Privacy Policy are displayed in a bright white font; the font for

all other User Agreements at this stage is a dim grey, and those other User Agreements are not viewable to the user. On the righthand side of the screen, the following instruction is provided to the user by default: "You can agree to all the specific consent agreements at once. Please read each specific consent agreement and the Privacy Policy carefully before you agree." *Id.* at 13.

15. To accept the TV Terms, the user must affirmatively check the bubble next to "Terms of Use" on the lefthand side of the screen. If the user clicks the bubble, a green checkmark will replace that bubble. *Id.* at 15. Prior to clicking the bubble, the user can review the full text of the TV Terms by either hovering over or clicking on the "Terms of Use" text on the lefthand side of the screen, which results in the text of the agreement appearing in a scrollable form on the righthand side of the screen. *Id.* at 14. A user may take as much time as they want to scroll through the full TV Terms before agreeing to them.

16. To accept the Privacy Policy, the user must affirmatively check the bubble next to the Privacy Policy on the lefthand side of the screen. If the user clicks the bubble, a green checkmark will replace that bubble. *Id.* at 16. As with the TV Terms, the user can review the full text of the Privacy Policy by either hovering over or clicking on the "Privacy Policy" text on the lefthand side of the screen, which results in the text of the agreement appearing in a scrollable form on the righthand side of the screen. *Id.* at 15. A user may take as much time as they want to scroll through the full Privacy Policy before agreeing to it.

17. If the user has agreed to both the TV Terms and Privacy Policy by checking the individual bubbles next to each, the text of the remaining User Agreements, including the Viewing Information Agreement, will turn to a white font on the lefthand side of the screen. Ex. 1 at 17. The user may then proceed to decide whether to agree to any of those additional User Agreements.

18. **Step 4:** Next, a user decides whether to agree to any, each, or none of the remaining User Agreements.

19. When a user hovers over or clicks on the title of the other User Agreements on the lefthand side of the screen, the full text of the corresponding agreement appears in scrollable form on the righthand side of the screen. The user can accept each User Agreement by clicking the bubble next to each one at a time, replacing each bubble with a green checkmark. Alternatively, the user

may click "Select All," which replaces all remaining bubbles on the lefthand side of the screen with green checkmarks, as further described in Paragraph 22 below.

20. To enable ACR functionality, the user must click the bubble next to the Viewing Information Agreement. Even if the user has accepted the Privacy Policy and the Viewing Information Agreement, they will not receive personalized advertising on their Smart TVs or other devices unless they also agree to the Interest-Based & Cross-Device Advertising Agreement. This agreement allows users to decide if they want to receive advertisements tailored to their interests according to the information available based on their Smart TV usage and, if enabled, ACR.

21. **Step 5:** Once the user has decided on the User Agreement(s) to which the user agrees, the user must click the "Agree" button at the bottom of the Terms & Conditions screen to complete the User Agreements portion of the TV setup. Ex. 1 at 17. The user will then proceed to the next phase of the TV setup.

22. During the above-described process, a user may also check the bubble next to the "Select All" option at the bottom of the screen and agree to all six User Agreements at once, including the TV Terms, Privacy Policy, and Viewing Information Agreement. Checking the bubble next to "Select All" replaces all bubbles on the lefthand side of the screen with green checkmarks. Ex. 2 at 2. If a user elects to "Select All," they may still view the full text of each agreement by hovering or clicking on the title of any User Agreement on the lefthand side of the screen and scrolling through the text of the corresponding agreement on the righthand side of the screen. *E.g.*, *id*. at 3-5. The user must then click the "Agree" button to move to the next phase of the TV setup. *Id*. at 6.

23. Throughout the initial set up, the user has the option to "Skip" a given step in the setup flow. If the user skips Steps 3 and 4 above (and therefore does not agree to any of User Agreements, including the TV Terms and the Privacy Policy), the user will not have basic Smart TV functionality or the ACR functionality enabled on their Smart TV. If the user has agreed to the TV Terms and Privacy Policy but not the Viewing Information Agreement, the TV will have Smart TV functionality but not ACR functionality.

24. After completing the initial setup of their Smart TV, a user may go to the TV Terms

at any time by navigating to the User Agreements on their Smart TV from the TV's Settings menu. To withdraw from the TV Terms, the user must uncheck the bubble next to the phrase "Terms of Use" or uncheck the bubble next to "Select All" (if the user previously checked the bubble), and then click "Agree" to withdraw consent to the TV Terms. Ex. 3 at 3-4, 7-9. If a user withdraws consent to the TV Terms, Smart TV functionality will no longer be available on their TV. Following a withdrawal, to agree to the TV Terms, the user must check the bubble next to the phrase "Terms of Use" or check the bubble next to "Select All," and then click "Agree."

25. LG maintains records of acceptance to each and any User Agreement, which capture each time a user has agreed to (or withdrawn their consent from) that particular User Agreement.

## II. PLAINTIFFS' LG SMART TVS AND ACCEPTANCE OF THE TV TERMS.

26. I understand that each Plaintiff alleges in the Complaint filed in this case that he or she purchased one or more LG Smart TVs.

27. I understand that LG's counsel in this case requested the model number and serial number for each Plaintiff's Smart TV, and that Plaintiffs' counsel provided this information.

28. I have reviewed the LG account information and records corresponding to the information provided by each Plaintiff. These LG records are maintained in the ordinary course of business (the "Records").

29. Using the serial number information provided by Plaintiffs' counsel, LG located the Records of Plaintiffs' acceptance to all User Agreements, including the TV Terms, via their Smart TVs. The Records show the following consent records for the TV Terms for Plaintiffs' Smart TVs.

| Plaintiff | Smart TV (Alleged year of purchase according to Plaintiff) | TV Terms Consent Records |
|---|---|---|
| Cazares | 2018 | Agree 08/11/2019 02:26:54<br>Agree 08/14/2019 02:09:57<br>Agree 08/15/2020 19:30:20<br>Agree 02/07/2022 15:58:12<br>Agree 02/07/2022 15:58:18<br>Agree 05/22/2023 16:54:54<br>Agree 06/20/2025 10:05:57<br>Withdraw 06/22/2025 08:18:15<br>Agree 06/22/2025 09:17:04<br>Agree 10/28/2025 07:54:14 |
| Cazares | 2025 | Agree 06/09/2025 23:24:04<br>Withdraw 6/10/2025 19:11:39<br>Agree 06/10/2025 19:12:54<br>Agree 07/07/2025 01:04:40 |
| Walsh | 2024 | Agree 10/3/2019 2:56<br>Select All Withdraw 10/3/2019 2:56:00<br>Agree 10/3/2019 2:56<br>Select All Withdraw 10/5/2019 14:14<br>Agree 10/5/2019 14:14<br>Select All Withdraw 10/5/2019 14:17<br>Agree 10/5/2019 14:17<br>Select All Withdraw 6/3/2020 13:14<br>Agree 6/3/2020 13:14<br>Select All Withdraw 7/29/2020 4:00<br>Withdraw 7/29/2020 4:00<br>Select All Withdraw 7/29/2020 4:01<br>Agree 7/29/2020 4:01<br>Select All Withdraw 7/29/2020 4:02<br>Agree 7/29/2020 4:02<br>Agree 3/11/2024 2:11<br>Agree 4/4/2024 0:53<br>Agree 4/4/2024 0:53<br>Withdraw 5/28/2025 2:18<br>Agree 6/16/2025 21:03<br>Agree 6/16/2025 21:03<br>Agree 11/27/2025 3:51<br>Agree 5/9/2026 3:18<br>Agree 5/9/2026 3:55<br>Agree 5/11/2026 3:49<br>Agree 5/14/2026 2:58 |
| Willis-Albrigo | 2023 | Agree 12/11/2023 22:12<br>Agree 1/9/2024 23:41<br>Agree 9/10/2024 23:35<br>Agree 10/23/2024 0:45<br>Agree 10/23/2024 0:45<br>Agree 10/23/2024 0:45<br>Agree 7/21/2025 1:11<br>Agree 11/13/2025 0:42<br>Agree 11/13/2025 0:42 |

30. LG's records show that each Plaintiff affirmatively agreed to the TV Terms at the initial setup of the TV given the first consent record for each TV.

31. There are various reasons why there are multiple consent records for Plaintiffs' Smart TVs after the initial consent record. For one, a Smart TV will reboot when there are major updates to the TV Terms, and this reboot requires the user to again choose whether to agree to the updated TV Terms. Second, any time that a user consents to or withdraws from one of the User Agreements, the status of the user's agreement to all User Agreements is recorded at that time. For example, if a user withdraws from the Viewing Information Agreement on August 7, 2026, the user's prior acceptance or non-acceptance of all other User Agreements (including the TV Terms) is also recorded on that date. Third, if a user previously withdrew from the TV Terms (which withdrawal would disable Smart TV functionality), there will be a consent record if the user subsequently decides to agree to the TV Terms again (as Cazares did for her 2019 TV and Walsh did for his TV; agreeing will re-enable Smart TV functionality).

32. LG's records show that Cazares purchased a Smart TV in 2019, despite her allegation that she purchased the TV in 2018.

33. The Records suggest that Walsh may have purchased his Smart TV in 2019 despite his allegation that he purchased it in 2024, given that the earliest consent record for his TV is in 2019. Even if Walsh did not purchase his TV until 2024, as he alleges, LG's consent records show that, after he withdrew from the TV Terms on May 28, 2025, he agreed to them on June 16, 2025, after his alleged 2024 purchase. The only way Walsh could have agreed to TV Terms on June 16, 2025 was by going through the consent flow on his LG Smart TV, checking the bubble next to the TV Terms or checking "Select All" and then clicking "Agree."

## III. PLAINTIFFS' SMART TV PRODUCT BOXES.

34. LG Smart TVs are sold in a product box. During the relevant period when Plaintiffs purchased their LG Smart TVs, the product box typically would have included the following: (a) a notice on the outside of the box, which advises the user of the binding arbitration provisions applicable to any use of the product ("Arbitration Advisal"), (b) a warranty card ("Warranty Card") inside the box, and (c) an owner's manual inside the box.

35. LG used the model information provided by Plaintiffs' counsel to locate the specifications for the product boxes of the Smart TVs that Plaintiffs allegedly purchased as well as the applicable Warranty Card and owner's manual for Plaintiffs' TVs.

**A. Arbitration Advisals**

36. I have reviewed the product box specifications for the LG Smart TVs that Plaintiffs purchased. The actual size of the box is much larger than depicted in the size of the document on which the specifications appear.

37. The Arbitration Advisal included in the product box specification for the LG Smart TV with a model number of 55UK6090PUA that Cazares purchased in 2019 is:

> By using this product, you agree that all disputes between you and LG arising out of or relating in any way to this product (including but not limited to warranty disputes) shall be resolved exclusively through binding arbitration on an individual basis. The terms of the arbitration agreement (including details on the procedure for resolving disputes) is available at www.lg.com/us/arbitration (USA) or www.lg.ca/arbitration (Canada).

38. A true and correct copy of the product box specification is attached as **Exhibit 4**.

39. The Arbitration Advisal included in the product box specification for the LG Smart TV with a model number of 75UQ7070ZUD that Cazares purchased in 2025 is:

> ARBITRATION NOTICE (USA) / Etats-Unis seulement
> By using this product, you agree that all disputes between you and LG arising out of or relating in any way to this product (including but not limited to warranty disputes) shall be resolved exclusively through binding arbitration on an individual basis, unless the laws of your state or territory do not permit that, or, in other jurisdictions, if you choose to opt out. Additional information regarding the terms of the arbitration agreement (including details on the procedure for resolving disputes) is available at www.lg.com/us/arbitration (USA) and/or your owner's manual or warranty.

40. A true and correct copy of the product box specification is attached as **Exhibit 5**.

41. The Arbitration Advisal included in the product box specifications for the LG Smart TVs with model numbers 50UM7300AUE and OLED77G3PUA that Walsh and Willis-Albrigo purchased is:

> By using this product, you agree that all disputes between you and LG arising out of or relating in any way to this product (including but not limited to warranty disputes) shall be resolved exclusively through binding arbitration on an individual

> basis. The terms of the arbitration agreement (including details on the procedure for resolving disputes) is available at www.lg.com/us/arbitration (USA) or www.lg.ca/arbitration (Canada) and/or your owner's manual or warranty.

42. A true and correct copy of the product box specification for Walsh's TV is attached as **Exhibit 6**.

43. A true and correct copy of the product box specification for Willis-Albrigo's TV is attached as **Exhibit 7**.

**B. Owner's Manuals**

44. A true and correct copy of the owner's manual applicable to the LG Smart TV with a model number of 55UK6090PUA that Cazares purchased in 2019 is attached as **Exhibit 8**.

45. A true and correct copy of the owner's manual applicable to the LG Smart TV with a model number of 75UQ7070ZUD that Cazares purchased in 2025 is attached as **Exhibit 9**.

46. A true and correct copy of the owner's manual applicable to the LG Smart TV with a model number of 50UM7300AUE that Walsh purchased is attached as **Exhibit 10**.

47. A true and correct copy of the owner's manual applicable to the LG Smart TV with a model number of OLED77G3PUA that Willis-Albrigo purchased is attached as **Exhibit 11**.

**C. Warranty**

48. The general version of LG's Warranty applies to both Smart TVs that Cazares purchased and the Smart TV Walsh purchased. A true and correct copy of the Warranty is attached as **Exhibit 12**.

49. The OLED version of LG's Warranty applies to the Smart TV that Willis-Albrigo purchased. A true and correct copy of the Warranty is attached as **Exhibit 13**.

**IV. THE ARBITRATION AGREEMENTS.**

50. I understand that the relevant arbitration agreements at issue in LG's Motion are set forth in the (a) TV Terms and (b) the Warranty (which is also available online at https://www.lg.com/us/arbitration).

**A. TV Terms Arbitration Agreement ("TV AA")**

51. At all relevant times, the TV Terms, including their arbitration agreement (*i.e.*, the

TV AA), were accessible via Plaintiffs' Smart TVs as well as at the following URL: https://us.lgappstv.com/main/terms.

52. Prior to July 2026, the TV AA was last amended substantively in June 2018. Setting aside formatting differences, the TV AA that became operative in January 2026 is substantively identical to the TV AA that became operative in June 2018.

53. A true and correct copy of the June 2018 TV AA is attached as **Exhibit 14**.

54. A true and correct copy of the TV Terms that became operative in January 2026 is attached as **Exhibit 15**.

**B. Product Arbitration Agreement ("Product AA")**

55. At all relevant times, the Product AA was accessible in hardcopy print via the Warranty provided in the product box for each Plaintiff's Smart TV. *See* Exs. 12 at 2, 13 at 2.

56. At all relevant times, an online version of the Product AA was also accessible at the following URL: https://www.lg.com/us/arbitration. The substantive provisions of the online version of the Product AA have been substantially identical at all relevant times. The substantive provisions of the online version of the Product AA were also substantially similar to the substantive provisions of the Product AA as set forth in the Warranty included in the product box.

57. A true and correct copy of the online version of the Product AA that was accessible online as of August 12, 2026 is attached as **Exhibit 16**.

**C. No Arbitration Opt-Out Records for Any Plaintiff**

58. The TV AA and the Product AA each advise users that they may opt out of arbitration with LG pursuant to the opt-out procedures therein.

59. LG maintains records of all arbitration opt-out requests it receives. LG has no record of Plaintiffs Cazares, Walsh, or Willis-Albrigo ever opting out of either the TV AA or the Product AA.

* * *

I declare that the foregoing is true and correct under penalty of perjury.

Executed on August 21, 2026 in Englewood Cliffs, New Jersey.

By: ______________________
Matthew Durgin

## ATTORNEY ATTESTATION

I, Robby L.R. Saldaña, am the ECF User whose ID and password are being used to file this document. In compliance with Local Rule 5-1(i)(3), I hereby attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing

*/s/ Robby L.R. Saldaña*
Robby L.R. Saldaña