Rob Yang (SBN 312964)
Andrew Chase (*Pro Hac Vice* forthcoming)
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
601 Montgomery Street, Suite 350
San Francisco, CA 94111
Tel.: 415.918.3000
Fax: 424.465.6630
ryang@constangy.com
achase@constangy.com

*Attorneys for Defendant Alphonso Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LEONA CAZARES, MICHAEL WALSH, and LAURA WILLIS-ALBRIGO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LG ELECTRONICS U.S.A., INC. and ALPHONSO INC.,

Defendants.

Case No.: 5:26-cv-03840-EKL

**REPLY IN SUPPORT OF DEFENDANT ALPHONSO INC.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Date: November 4, 2026
Time: 10:00 a.m.
Courtroom: 7
Judge: Hon. Eumi K. Lee

Complaint Filed: April 30, 2026
Trial Date: TBD

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 2
A. The Complaint's Specific Allegations Control over Its Conclusory Ones ........ 2
B. Allegations against "Defendants" as a Group Do Not State a Claim Against Alphonso ........ 3
C. Plaintiffs Lack Article III Standing for the IdentiTy Graph Theories and Count Vi ........ 4
D. The Nationwide CIPA and CDAFA Claims Are ExtrA-territorial ........ 5
E. Counts I and III Fail to State Intrusion or CONSTITUTIONAL Privacy Claims ........ 6
F. Count II Fails Because Commercial Sharing is Not "Publicity" ........ 6
G. Count IV Fails Because Nothing Is ALLEGED to Have Been in Transit ........ 7
H. Count V Fails On the Communication Pleaded ........ 8
I. Count VI Fails For Lack of an Alphonso-Controlled Process ........ 9
J. Count VII Fails For Lack of Damages ........ 10
K. Count VIII Fails on Timing, the Party Exception, and the Crime-Tort Exception ........ 11
L. Count X Fails For Lack of Duty and Cognizable Harm ........ 12
M. Count XII Fails For Lack of Lost Money or Property ........ 13
N. Count XIII Fails For Lack of a Traceable Benefit ........ 13
III. LEAVE TO AMEND SHOULD BE DENIED ........ 14
IV. CONCLUSION ........ 15

TABLE OF AUTHORITIES

**Cases**

*Accord Torres v. SeatGeek, Inc.*
2026 WL 1495202 (N.D. Cal. May 28, 2026) .......... 6, 11

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 3

*Astiana v. Hain Celestial Grp., Inc.*
783 F.3d 753 (9th Cir. 2015) .......... 14

*Blantz v. California Department of Corrections & Rehabilitation*
727 F.3d 917 (9th Cir. 2013). .......... 5, 15

*Boulton v. Community.com, Inc.*
2025 WL 314813 (9th Cir. Jan. 28, 2025) .......... 8, 12

*Brown v. Google LLC*
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .......... 14

*Campbell v. Facebook Inc.*
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 10, 15

*Cf. Gutierrez v. Converse Inc.*
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 5

*DellaSala v. Samba TV, Inc.*
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .......... 6, 7, 15

*DellaSala v. Samba TV, Inc.*
2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... passim

*Doe v. Eating Recovery Ctr., LLC*
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 8, 9

*Folgelstrom v. Lamps Plus, Inc.*
195 Cal. App. 4th 986 (2011) .......... 7

*Gibson v. City of Portland*
165 F.4th 1265 (9th Cir. 2026) .......... 4, 5

*Harris v. iHeartMedia, Inc.*
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) .......... 5, 6

*In re Facebook, Inc. Internet Tracking Litigation*
956 F.3d 589 (9th Cir. 2020) .......... 4, 12

*In re Google RTB Consumer Privacy Litigation*
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 8

*Katz-Lacabe v. Oracle Am., Inc.*
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 14

*Konop v. Hawaiian Airlines, Inc.*
302 F.3d 868 (9th Cir. 2002) .......... 12

*Korea Supply Co. v. Lockheed Martin Corp.*
29 Cal. 4th 1134 (2003) .......... 14

*Kwikset Corp. v. Superior Court*
51 Cal. 4th 310 (2011) .......... 14

*Low v. LinkedIn Corp.*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 7

*Planned Parenthood Fed'n of Am. v. Newman*
51 F.4th 1125 (9th Cir. 2022) .......... 13

*Popa v. Microsoft Corp.*
153 F.4th 784 (9th Cir. 2025) .......... 5

*S. Cal. Gas Leak Cases*
7 Cal. 5th 391 (2019) .......... 13

*Schneider v. Cal. Dep't of Corr.*
151 F.3d 1194 (9th Cir. 1998) .......... 2, 9, 10

*Shah v. MyFitnessPal, Inc.*
824 F. Supp. 3d 906 (N.D. Cal. 2026) .......... 11

*Sheen v. Wells Fargo Bank, N.A.*
12 Cal. 5th 905 (2022) .......... 13

*Shulman v. Group W Prods., Inc.*
18 Cal. 4th 200 (1998) .......... 7

*Sonner v. Premier Nutrition Corp.*
971 F.3d 834 (9th Cir. 2020) .......... 15

**Statutes**

Cal. Penal Code § 502 .......... 11

Cal. Penal Code § 631 .......... 8

Cal. Penal Code § 632 .......... 9, 10

Cal. Penal Code § 638.50 .......... 11

## I. INTRODUCTION

Plaintiffs' opposition characterizes Alphonso Inc.'s Motion to Dismiss ("Motion") as a response "to a complaint Plaintiffs did not file," pointing to paragraphs alleging that Alphonso intercepted their viewing data in real time, profiled them, and disseminated the results. *See* Plaintiffs' Opposition to Alphonso's Motion ("Opposition" or "Opp'n") at 1, 12. Those paragraphs exist, and Alphonso has never contended otherwise. But the Complaint also states what the Opposition does not: "LG transmitted this ACR-derived data and associated identifiers to Defendant Alphonso." Compl. ¶¶ 25, 40, 55. The question is whether Plaintiffs allege facts or recite elements in conclusory terms. They recite elements, and it is the Complaint's own account of the technology that shows it.

Where the Complaint alleges how the ACR system works, it is detailed and consistent: LG's televisions capture what is "displayed on the screen," "process that data into digital fingerprints," and "transmit those fingerprints along with metadata to Alphonso," which then "receiv[es], process[es], and analyz[es]" them. Compl. ¶¶ 4–5, 141, 155, 372. Plaintiffs' own description of the arrangement is "LG's device-level capture and Alphonso's data processing." *Id*. at ¶ 153.

Where the Complaint instead asserts that Alphonso "intercepted" communications "in transit," caused the capture, or directed it, the allegations carry every mark of conclusion rather than fact. They are pleaded on information and belief, in the alternative, against Defendants as a group, in the words of the statute, and, as to each named Plaintiff, in text repeated word for word with only the name and pronoun changed. *See* Compl. ¶¶ 24–31, 39–46, 54–61.

When a complaint's account of how a technology functions points one way and its legal characterizations point another, the account governs. Judge Corley dismissed the § 631 claim on that basis in *DellaSala v. Samba TV, Inc.*, 2026 WL 1138358, at *6 (N.D. Cal. Apr. 21, 2026) ("*DellaSala II*"), over similar "real time" allegations. The Opposition replaces those allegations with a description of Alphonso's role the Complaint does not contain, and new allegations in an opposition "are irrelevant for Rule 12(b)(6) purposes." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). The embedded-software allegation Plaintiffs lean on changes nothing about the sequence, but it supplies the premise of the Wiretap Act party exception. *DellaSala II*, 2026 WL 1138358, at *9. That allegation cannot be drafted around. To place the acquisition in transit, Alphonso must be the software

that reads the programming on the television; to escape the party exception, it must be a stranger to the communication it receives. Both cannot be true of the same embedded software.

The Opposition also concedes more than it defends. Plaintiffs agree that Count XIV pleads a remedy, not a cause of action. Opp'n at 23. They confine Count VI to routing data and disclaim the fingerprints, *id.* at 15, leaving a pen register claim the Complaint assigns to "LG's systems." Compl. ¶¶ 440–41. They do not dispute that *DellaSala II* treated the embedded-chip defendant as a party, and answering that the crime-tort exception applies regardless, Opp'n at 18. They concede that LG authored the Viewing Information Agreement and the setup disclosures. *Id.* at 21. They recast the Section 632 "confidential communication" as a viewer's program selections rather than the audiovisual transmissions the Complaint identifies. *Id.* at 13. And the only allegation of inadequate legal remedies Plaintiffs can cite is in Compl. ¶ 665, which sits in Count XIV and concerns prospective injunctive relief. The remaining counts rest on characterizations rather than facts, and several of them fail for reasons no amendment can cure.

## II. ARGUMENT

### A. THE COMPLAINT'S SPECIFIC ALLEGATIONS CONTROL OVER ITS CONCLUSORY ONES

A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not survive Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory characterizations receive no presumption of truth, and where a complaint's specific allegations compel a contrary inference, those allegations control.

The Complaint states the ACR sequence in its opening summary, Compl. ¶¶ 4–5; in its technical background, *id.* at ¶¶ 141–42; in the academic study it relies on, *id.* at ¶ 155; and in its own account of the division of labor between the two Defendants, *id.* at ¶ 153. It states it again inside the counts themselves, where Alphonso "received, decoded, and analyzed the signaling and identifier data generated by LG Smart TVs" and "LG's systems" "enabled and caused Alphonso to intercept." *Id.* at ¶¶ 446, 508. Against all of that stand three paragraphs tracking the statutory language. The data was "transmitted to Alphonso contemporaneously with capture," and the "interception occurred while the communications were in transit and before they reached a completed and static form[.]" *Id.* at ¶¶ 371,

373. At the same time, Plaintiffs allege that Alphonso "participated directly in the interception process" by "receiving, processing, and analyzing these data streams in near real time." *Id.* at ¶ 372.

The *DellaSala II* pleading was materially the same. Those plaintiffs alleged interception "in real time" as to each of them, and that the defendant "intercepts and processes the content in real time, often in just a few seconds." 2026 WL 1138358, at *6. The court dismissed the § 631 claim regardless, holding those allegations "merely parrot the statute's language," while the complaint's "more specific allegations regarding how [the] technology works compels an inference [the defendant] does not learn the contents while they are in transit." *Id.* The allegation that drove that inference was that the defendant "processes and stores this data on its own systems." *Id.*

This Complaint alleges the same. *See* Compl. ¶¶ 26, 141, 155, 372, 446. The Complaint places Alphonso's participation at step four of a six-step sequence, *after transmission*, *id.* at ¶ 148, and fixes the moment of matching in terms: "[u]pon receipt, Alphonso matches these fingerprints to identify viewed content." *Id.* at ¶ 143. Each time the Complaint names Alphonso's act, the act is receipt: it "acquired the contents" "[b]y receiving and processing these data streams." *Id.* at ¶ 504. This case warrants the same treatment. Plaintiffs' reliance on *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), does not change the analysis. There, the defendant's own code caused users' browsers to duplicate and send to the defendant the communications those users exchanged with other websites. *Id.* at 596, 601–02. By contrast, the communications the Complaint identifies as intercepted run between Plaintiffs and the content providers, Compl. ¶¶ 368, 375, and its specific allegations place Alphonso outside that exchange: capture occurs on the television, *id.* ¶ 370, and Alphonso's alleged act is "receiving, processing, and analyzing" what the television transmits, *id.* ¶¶ 371–72.

### B. ALLEGATIONS AGAINST "DEFENDANTS" AS A GROUP DO NOT STATE A CLAIM AGAINST ALPHONSO

Allegations directed at "Defendants" collectively, or hedged with "and/or," do not state a claim against Alphonso. *Gibson v. City of Portland* recognized under Rule 8(a)(2) the category of "a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." 165 F.4th 1265, 1288 (9th Cir. 2026).

Pleading that way "invite[s] Defendants, the district court, and this court to fill in the blanks." *Id.* at 1292. Similarly, in *Blantz v. California Department of Corrections & Rehabilitation*, the only allegations against one defendant there were that, "on information and belief," he "direct[ed]" the other defendants to take the actions complained of. 727 F.3d 917, 926 (9th Cir. 2013). "Conclusory allegations such as these are insufficient to state a claim." *Id.* at 927.

For example, the pen register count alleges that "Defendants installed and used these devices and processes," Compl. ¶ 451, but just a few paragraphs earlier the same count alleged that *LG* "installed and operated" them, *id.* at ¶¶ 440–41. By contrast, the CDAFA count alleges that Alphonso "designed, supplied, operated, and/or directed" the systems. *Id.* at ¶ 477. The pen register count does the same: Alphonso "likewise knowingly installed, operated, and/or used" such processes, *id.* at ¶ 445; in the statute's words, in the disjunctive, and without identifying any process.

The paragraphs Plaintiffs call their strongest share the defect. Enrichment and disclosure are alleged on information and belief, *id.* at ¶¶ 27, 31, and disclosure is framed in the alternative, *id.* at ¶ 309. The Complaint never identifies a program any Plaintiff watched, an inference drawn about any Plaintiff, a segment any Plaintiff was placed in, or anyone who received anything about any Plaintiff. *Cf. Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming summary judgment where evidence that a vendor "could read messages" did not establish that it did).

### C. PLAINTIFFS LACK ARTICLE III STANDING FOR THE IDENTITY GRAPH THEORIES AND COUNT VI

Plaintiffs plead no concrete injury traceable to Alphonso, and those claims should be dismissed under Rule 12(b)(1). Article III calls for an injury "particularized to a plaintiff's circumstances and benchmarked to a specific tort." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). *Harris v. iHeartMedia, Inc.*, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026), and *DellaSala II* both turned on allegations this Complaint lacks. *Harris* did not hold that reciting profiling and sale confers standing. Instead, it credited a complaint that pleaded the machinery step by step: trackers the defendant itself installed, the identifiers and device metadata those trackers caused users' browsers to transmit, syncing with data brokers, and real-time bidding auctions in which "de-anonymized user profiles" were sold to advertisers — allegations on which "the degree of dissemination of Plaintiff's information is broad."

2026 WL 247875, at *1–2. In *DellaSala II*, the complaint named the segments sold. 2026 WL 1138358, at *3–4.

The Opposition presses two analogs, but neither is pleaded in the Complaint. First, the intrusion analog is not traceable to Alphonso, because the Complaint's specific allegations assign the capture to LG and its televisions. Compl. ¶¶ 262, 370, 440–41. Second, the disclosure analog fails because no disclosed fact is pleaded. The allegation that Alphonso allegedly "was able to infer" interests, does not say that it did. *Id.* at ¶ 278. The cross-device paragraphs describe device linkage without identifying a program watched, an inference drawn, a segment assigned, or a recipient, *id.* at ¶¶ 28–29; and disclosure to "multiple entities" is alleged on information and belief, *id.* at ¶¶ 31, 310. The pleaded mechanism ends at content matching. *Id.* at ¶¶ 4–5, 141, 155. Every step, *Harris* pleaded past that point and went beyond the recitals of elements here. Also, *Harris's* statutory-injury holding followed from its Article III analysis and the pen register count draws nothing more from it. 2026 WL 247875, at *2 n.4.

Further, the Identity Graph classes are defined by the association of a television with other devices and identifiers, Compl. at ¶¶ 233–34, which describes how data is organized rather than harm to anyone. *Accord Torres v. SeatGeek, Inc.*, 2026 WL 1495202, at *4 (N.D. Cal. May 28, 2026). Accordingly, these theories and Count VI should be dismissed for lack of subject-matter jurisdiction.

**D. THE NATIONWIDE CIPA AND CDAFA CLAIMS ARE EXTRA-TERRITORIAL**

California penal statutes are presumed not to reach conduct outside the state, and for CIPA and CDAFA "the interception of the data is the critical element." *DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *4 (N.D. Cal. Oct. 30, 2025) ("*DellaSala I*").

Putative nationwide class members purchased, configured, and watched their televisions outside California, so the alleged capture occurred wherever the television sat. Plaintiffs' California allegations concern Alphonso's headquarters and its later receipt, processing, and monetization of the data. Compl. ¶¶ 64, 82, 85, 115. Under *DellaSala I*, the interception is the critical element, and the situs of downstream processing does not relocate it. Whether a non-resident states a claim under a California penal statute is a merits question, not a Rule 23 question. Nor does *DellaSala II* hold

otherwise. The motion to strike there was directed at nationwide allegations supporting the common-law intrusion, unjust enrichment, and injunctive relief claims, and the court declined to strike them at this stage. 2026 WL 1138358, at *11. It did not hold that CIPA or CDAFA reach out-of-state interceptions; *DellaSala I* had already dismissed non-residents' claims under those statutes. 2025 WL 3034069, at *4. At a minimum, Counts IV through VII should be confined to the California subclasses.

### E. COUNTS I AND III FAIL TO STATE INTRUSION OR CONSTITUTIONAL PRIVACY CLAIMS

Plaintiffs plead no affirmative act of intrusion by Alphonso and no invasion serious enough to be actionable. Intrusion requires an intentional intrusion into a private place or matter, and both the common-law and constitutional claims require conduct "highly offensive" to a reasonable person; "[r]outine commercial behavior" is not "an egregious breach of social norms." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (quoting *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011)).

The Complaint attributes the intrusion itself to "LG, through its Smart TVs and embedded ACR technology." Compl. ¶ 262. For the reasons in Sections II.A and II.B, the allegations that Alphonso caused or directed the capture are conclusory. As to offensiveness, *DellaSala II* found a serious invasion only on allegations that the defendant sorted individuals by political leaning and sold the results. 2026 WL 1138358, at *4–5. The stipulated FTC order against a different manufacturer, which Plaintiffs did not plead and which contains no findings, does not supply what the Complaint omits. As such, Counts I and III should be dismissed.

### F. COUNT II FAILS BECAUSE COMMERCIAL SHARING IS NOT "PUBLICITY"

Count II fails because Plaintiffs plead disclosure to commercial counterparties, not publicity. Publicity means communication "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 214 (1998).

Alphonso does not dispute that the Complaint alleges sharing with advertisers and data brokers, but the tort requires more. Plaintiffs' own authority demonstrates this. *See In re Google RTB Consumer*

*Privacy Litigation*, 606 F. Supp. 3d 935, 947 (N.D. Cal. 2022) (publicity element satisfied where "over 1 million publishers" participated in the defendant's auction). By contrast, the Complaint alleges disclosure to "multiple entities," Compl. ¶ 310, in the alternative and on information and belief, *id.* at ¶¶ 31, 309. The Complaint names no recipient, describes no disclosure, and identifies no private fact about any named Plaintiff. The "broad, networked ecosystem" Plaintiffs invoke, *id.* at ¶ 311, is itself a characterization rather than a pleaded fact about the scale of any dissemination.

### G. COUNT IV FAILS BECAUSE NOTHING IS ALLEGED TO HAVE BEEN IN TRANSIT

Count IV fails because the Complaint alleges capture of content already displayed on the television, not reading communication in transit. Section 631(a)'s second clause reaches a defendant who reads or attempts to read a communication "while the same is in transit," and "the only commonsense meaning of transit, at least in the context of this statute, is the transit from the person sending the communication to its intended recipient." *Doe v. Eating Recovery Ctr., LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025) (granting summary judgment). Where "the only logical conclusion from the facts alleged" is that the communication was reached at the address to which it was sent, "repeated assertions that [the defendant] 'intercepted'" it is "simply conclusory." *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (unpublished).

Here, content "displayed on the screen" has completed that journey. Compl. ¶¶ 4–5, 112, 127, 370, 507. Plaintiffs answer that a streaming transmission remains in transit so long as later packets are still arriving, so that capturing a frame already on the screen amounts to capturing a communication mid-delivery. Opp'n at 11. No paragraph of the Complaint describes the technology in those terms. It pleads no mechanism by which any fingerprint is acquired *before* the programming reaches and is displayed on the television, and no timing for any particular acquisition. The Opposition supplies that mechanism for the first time, asserting that "the reading occurs on the television, at capture, by Alphonso's own embedded software, before and during rendering." *Id.* at 12. The 10-millisecond capture Plaintiffs attribute to Alphonso's software is, in the Complaint, LG's. Compl. ¶ 159. However, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion

to dismiss." *Schneider*, 151 F.3d at 1197 n.1.

Nor can the argument be squared with what Plaintiffs did plead. ACR "monitors all content displayed on the screen" and captures it "regardless of source—including ... external devices connected via HDMI." Compl. ¶ 112. The researchers Plaintiffs cite found ACR traffic "even when the LG Smart TV was used as a 'dumb' external display through HDMI, such as when a laptop or gaming console was connected to the TV." *Id.* at ¶ 157. Where the source is a local file or a game console, nothing is arriving from a content provider and no packets are in flight from anyone; and where the source is a stream, the capture Plaintiffs plead still occurs at the display, after the frame has been received and rendered. That identifies what is being captured: the image on the screen.

Even assuming a matched fingerprint ultimately conveys contents, deriving one is not reading. Learning the contents of a communication requires "some effort at understanding the substantive meaning" of it, *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1117, and meaning is extracted later, at the server, Compl. ¶ 155. Plaintiffs' fallback, that Section 631(a) reaches a later attempt to learn what was captured, was rejected in *Eating Recovery Ctr.* A defendant "must do something more than just intercept the communication while it is in transit to be held liable," both because the contrary reading would make § 632 superfluous and because CIPA is a criminal statute subject to the rule of lenity. *Id.* at 1115. Their remaining argument, that Section 631(a) reaches a communication "being sent from, or received at any place within this state," Opp'n at 11, was rejected as a reading of "extraordinary breadth." *Boulton*, 2025 WL 314813, at *1. Finally, liability under the third and fourth clauses depends on the same predicate interception, *DellaSala II*, 2026 WL 1138358, at *7.

### H. COUNT V FAILS ON THE COMMUNICATION PLEADED

Count V fails because mass-distributed programming is not a confidential communication, and Plaintiffs may not substitute a different communication in briefing. Section 632 reaches a "confidential communication" carried on "among the parties," in circumstances reasonably indicating that a party "desires it to be confined to the parties thereto." Cal. Penal Code § 632(a), (c). Electronic communications that can be easily shared by their recipients cannot support a plausible inference of confidentiality, and courts in this district have dismissed Section 632 claims with prejudice on that element. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848–49 (N.D. Cal. 2014).

Plaintiffs now identify the confidential communication not as the audiovisual content, but as "which programs they select, when, for how long." Opp'n at 13. The Complaint defines the communications at issue as "audiovisual transmissions delivered through streaming applications, broadcast signals, and external devices connected via HDMI," and as communications "between Plaintiffs and the content providers, applications, broadcasters, or external devices delivering audiovisual content to Plaintiffs' Smart TV." Compl. ¶¶ 375, 399–401. Plaintiffs cannot substitute a different subject in an opposition brief. *Schneider*, 151 F.3d at 1197 n.1.

Even on its own terms, the reframed theory does not fit the statute. A viewer's choice of program is a fact about the viewer, not a communication between parties, and the Complaint does not allege that ACR captures search terms, spoken words, credentials, or any other input from the viewer. That theory belongs to the Video Privacy Protection Act, which Plaintiffs have not asserted against Alphonso. Plaintiffs' answer that encoding is recording does not close the gap. Opp'n at 14.

As to the communications actually pleaded, commercial programming distributed to millions of households is not content any party desires to confine to the parties. *DellaSala II* did not hold otherwise because the defendant there challenged only the reasonable expectation of privacy. 2026 WL 1138358, at *7. The HDMI and casting allegations discussed above, Compl. ¶¶ 112, 157, defeat the "parties" element for the further reason that a viewer sending their own laptop's output to their own television is communicating with no one. And receiving what a device transmits to you is not eavesdropping. *Id.* at ¶ 404.

## I. COUNT VI FAILS FOR LACK OF AN ALPHONSO-CONTROLLED PROCESS

Count VI fails because Plaintiffs identify no Alphonso-controlled device or process that recorded qualifying routing information. A plaintiff must "identify not only their communications with [the defendant] but also the specific 'dialing, routing, addressing, or signaling information' for outgoing communications that was tracked." *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 921 (N.D. Cal. 2026).

Here, Plaintiffs have narrowed the claim to routing data and disclaimed reliance on the fingerprints. Opp'n at 15. On that theory, the Complaint places the recording with LG. "LG, through

its Smart TVs and embedded ACR and telemetry systems, knowingly installed and operated processes that functioned as pen registers," and "LG's systems captured, recorded, and transmitted" the routing information. Compl. ¶¶ 440–41. Alphonso is alleged to have "received, decoded, and analyzed" what LG's systems generated, *id*. at ¶ 446, and, in the statute's own words, to have "likewise knowingly installed, operated, and/or used" such processes, *id*. at ¶ 445.

Plaintiffs answer that the statute reaches whoever "records or decodes." Opp'n at 15. But that phrase defines the qualifying process; it does not sweep in everyone who later decodes what the process recorded. The statute places that process at the instrument "from which" the communication "is transmitted" (i.e., the television). Cal. Penal Code § 638.50(b). And the "receiving infrastructure" Plaintiffs now fold into that process is the facility to which the communication is sent, not the one from which it is transmitted. Opp'n at 15. The Complaint identifies what did the recording there: "LG's systems." Compl. ¶¶ 440–41. Paragraph 445 adds nothing, reciting in the statute's own words and in the disjunctive that Alphonso "installed, operated, and/or used" such processes, without identifying one. Nor does *DellaSala II* close the gap. Its pen register ruling held only that the statute is not confined to telephone surveillance; it did not decide which defendant installed or used the process at issue. 2026 WL 1138358, at *7–*8.

**J. COUNT VII FAILS FOR LACK OF DAMAGES**

Count VII fails because Plaintiffs plead no cognizable damage or loss. Section 502(e)(1) permits suit only by an owner "who suffers damage or loss by reason of a violation" of the CDAFA, and a defendant's gain is not the plaintiff's loss. *DellaSala II*, 2026 WL 1138358, at *8; *accord Torres*, 2026 WL 1495202, at *4.

Here, Plaintiffs allege loss of control, unauthorized use of their devices, and the lost ability to license or be compensated for their information. Compl. ¶¶ 209, 492. However, *DellaSala II* rejected that theory on the same allegations, where plaintiffs alleged deprivation of "control over their valuable property (namely, their sensitive personal data), the ability to receive compensation for that data, and the ability to withhold their data for sale." 2026 WL 1138358, at *8. The court held a disgorgement theory "might be availing if they alleged they intended to profit from their data and [the defendant's] collection ... diminished its value to Plaintiffs. But Plaintiffs do not make such allegations. And,

indeed, it would be inconsistent for them to do so in light of their privacy claims." *Id*. at *9.

Plaintiffs respond that they pleaded market value, but what they pleaded are industry figures. This includes Facebook's average advertising revenue per user, and companies that pay consumers for browsing history. Compl. ¶¶ 204–10. Neither says that any Plaintiff's data had value to that Plaintiff, that any Plaintiff intended to sell it, or that its value was diminished. Plaintiffs' remaining theory, unauthorized use of their televisions, Opp'n at 16–17, restates the alleged violation rather than the injury. Section 502(e)(1) requires "damage or loss" distinct from the § 502(c) act, and the Complaint pleads no impairment of any television, no remedial expenditure, and no diminution in anything belonging to a named Plaintiff. Compl. ¶ 492.

### K. COUNT VIII FAILS ON TIMING, THE PARTY EXCEPTION, AND THE CRIME-TORT EXCEPTION

Count VIII fails for the same reason as Count IV: the Complaint alleges no acquisition of the underlying audiovisual communication during its transmission. Interception under the Wiretap Act requires acquisition "during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

For the reasons in Section II.G, what the Complaint pleads is the acquisition of a fingerprint transmitted from the television after content appeared on it. Specifically, the televisions capture, fingerprint, and transmit, and Alphonso receives, decodes, and analyzes. Compl. ¶¶ 4–5, 141, 153, 155, 446. *Boulton* affirmed dismissal of a Wiretap Act claim on precisely this ground. 2025 WL 314813, at *1. Plaintiffs' reliance on *In re Facebook, Inc.* is misplaced. As to the wiretap claims, that decision resolved only the party exception and expressly declined to "opine whether the Plaintiffs adequately pleaded the other requisite elements of the statutes." 956 F.3d at 609. Count VIII does contain an in-transit allegation, and Plaintiffs drafted it for LG. Compl. ¶ 509. The parallel paragraph for Alphonso alleges acquisition "contemporaneously with the transmission and display of the communications." *Id.* at ¶ 503.

The party exception independently bars the claim. The Act does not reach a party to the communication, and Alphonso is a party to the one it actually receives. Plaintiffs allege that Alphonso's software is "embedded in LG webOS TV products," Compl. ¶ 154, that the televisions transmit

fingerprints "to remote servers, including those operated by Alphonso," *id*. at ¶ 142, and that a tested television "contacted a single Alphonso domain," *id*. at ¶ 156. On materially the same allegation, *DellaSala II* held the embedded-chip defendant a party. 2026 WL 1138358, at *9.

Plaintiffs' only answer is the crime-tort exception, which requires a purpose "separate and independent from the act of the recording." *Planned Parenthood Fed'n of Am. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). It applied in *DellaSala II* because those plaintiffs were "not simply bootstrapping their Wiretap Act claim to their CIPA claims." 2026 WL 1138358, at *10.

Here the bootstrap is all there is. Compl. ¶ 519 identifies seven predicates, three of them torts: intrusion upon seclusion, public disclosure of private facts, and the constitutional privacy claims. Each fails for the reasons given in Sections II.E and II.F. The CIPA counts restate the interception itself. The VPPA count is not asserted against Alphonso, and the UCL and unjust enrichment are not torts. What remains is the commercial purpose the Complaint actually pleads, Compl. ¶ 518, and commercial monetization alone does not defeat the party exception.

### L. COUNT X FAILS FOR LACK OF DUTY AND COGNIZABLE HARM

A negligence claim requires a duty, and purely economic losses are not recoverable in tort absent, among other things, a special relationship. *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922–23 (2022); *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019). No Plaintiff alleges having paid, transacted with, communicated with, or known of Alphonso before this lawsuit. Plaintiffs cite no California decision imposing a duty on a downstream data recipient in favor of consumers with whom it has no relationship, and Civil Code § 1714 does not supply one. Plaintiffs answer that Section 1714 makes duty the default and that they plead misfeasance rather than nonfeasance. Opp'n at 19–20. The premise fails because the Complaint assigns the affirmative capture to LG and its televisions, Compl. ¶¶ 370, 507, and the contrary allegation that Alphonso "designed, supplied, operated, and/or directed" the systems is collective and disjunctive, *id*. at ¶ 477.

The damages this count pleads are economic – benefit of the bargain and diminution in value. Compl. ¶¶ 568–73. Relabeling the same alleged privacy invasion as negligence damage does not convert it into injury to person or property. *Id*. at ¶ 569. And negligence *per se* rises no higher than its predicates.

**M. COUNT XII FAILS FOR LACK OF LOST MONEY OR PROPERTY**

UCL standing requires economic injury caused by the challenged conduct. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–23 (2011). Restitution reaches only money or property in which the plaintiff has an ownership interest. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144–49 (2003).

Here, the purchase and disclosure theory runs to LG. Plaintiffs concede LG authored the Viewing Information Agreement and the setup disclosures, and any overpayment went to LG. Opp'n at 21. Alphonso made no representation to Plaintiffs in connection with the purchase or configuration of their LG televisions, and a would-not-have-purchased theory requires a misrepresentation by the defendant. *DellaSala II*, 2026 WL 1138358, at *11. The unlawful prong does not avoid the problem, because it requires the same lost money or property caused by Alphonso.

Nor does data value supply the missing loss. *DellaSala II* distinguished *Brown v. Google LLC*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021), because the plaintiff there alleged a specific cash value for the data and identified a market for it, while the allegations before the court did "not plausibly support an inference the misappropriated data likewise had an economic value in an identified market." 2026 WL 1138358, at *10. Plaintiffs' paragraphs are the industry figures addressed in Section II.J and a recital that they "lost the value" of their information, Compl. ¶ 628. In any event, "[t]he weight of the authority in the district and the state ... point in the opposite direction [from cases like *Brown*]." Id. (quoting *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023)). Finally, advertising revenue paid by third parties is non-restitutionary disgorgement.

**N. COUNT XIII FAILS FOR LACK OF A TRACEABLE BENEFIT**

A claim for unjust enrichment is construed as a quasi-contract claim seeking restitution, which requires the receipt and unjust retention of a benefit at the plaintiff's expense. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). A plaintiff seeking equitable restitution must plead that legal remedies are inadequate. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Here, Plaintiffs purchased televisions from LG. On the Complaint's own allegations, the data at issue was generated by and transmitted from LG's televisions, not conferred directly on Alphonso by Plaintiffs. *DellaSala I* dismissed an unjust enrichment claim for failure to plead the benefit retained

with specificity. 2025 WL 3034069, at *6. Then, *DellaSala II* sustained the amended claim only on allegations that the defendant retained gains from profiling and selling the plaintiffs' own viewing information. 2026 WL 1138358, at *11. Enrichment here is pleaded collectively, without a gain traceable to any Plaintiff's data. Compl. ¶¶ 633–40. Plaintiffs' reliance on that order's statement that disgorgement is a remedy distinct from damages, Opp'n at 22, does not dispense with the antecedent requirement that the benefit be conferred by these Plaintiffs. Nothing explains why the damages sought elsewhere cannot redress the same past conduct. The only inadequacy of remedy allegation sits in Count XIV and concerns prospective relief. Compl. ¶ 665.

## III. LEAVE TO AMEND SHOULD BE DENIED

Plaintiffs ask for leave to amend without identifying a fact they would add. Opp'n at 23–24. Where proposed amendments "would merely be additional conclusory allegations of the sort that are insufficient under *Iqbal* and *Twombly*", leave is properly denied. *Blantz*, 727 F.3d at 927. The amendment Plaintiffs would need is one they cannot make. To reach acquisition in transit they would have to allege that Alphonso's software reads the programming before the television displays it. That contradicts the Complaint at every level: LG transmitted the data to Alphonso, Compl. ¶¶ 25, 40, 55; the televisions capture, fingerprint, and transmit, *id.* at ¶ 141; Alphonso matches upon receipt, *id.* at ¶ 143; and the in-transit acquisition was LG's, *id.* at ¶ 509. A pleading may be amended to add facts, not to replace the account of the technology on which it was built.

Counts V, VII, X, and XIV fail for reasons amendment cannot reach. Commercial programming distributed to millions is not a confidential communication. See *Campbell*, 77 F. Supp. 3d at 848–49. A lost-ability-to-sell theory is, as *DellaSala II* put it, *inconsistent* with the privacy claims Plaintiffs have chosen to plead. 2026 WL 1138358, at *9. No duty runs from Alphonso to Plaintiffs, which precludes Count X. And Plaintiffs concede that Count XIV states no cause of action, asking only that it be construed as a prayer for relief. Opp'n at 23. That count should be dismissed, without prejudice to any remedy otherwise available under a surviving claim. As to Counts IV and VIII, any amendment must be consistent with the technical allegations already pleaded. Capture of content already displayed on the receiving device is not acquisition in transit, and Plaintiffs cannot plead around their own description of the technology.

## IV. CONCLUSION

For the foregoing reasons, Alphonso respectfully requests dismissal of all claims against it. Counts V, VII, X, and XIV should be dismissed with prejudice, because their defects are ones no allegation can cure. Counts IV and VIII should be dismissed with prejudice as well, because the acquisition Plaintiffs must allege cannot be reconciled with the technical account their Complaint pleads.

Respectfully submitted,

DATED: September 4, 2026

By:________________________________

Rob Yang (SBN 312964)
Andrew Chase (*Pro Hac Vice* forthcoming)
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*Counsel for Defendant Alphonso Inc.*

## CERTIFICATION OF GENERATIVE AI USE

Pursuant to the Court's Civil Standing Order § VIII.H, the undersigned certifies that generative artificial intelligence tools were used in the preparation of portions of this filing, and that lead trial counsel has personally reviewed and verified the accuracy of all representations of fact and procedural history, all citations of legal authority, and all quotations contained herein, including that each cited authority stands for the proposition for which it is cited and remains good law. Counsel has retained a record of all prompts and inquiries submitted to such tools.

DATED: September 4, 2026

By:________________________________

Rob Yang