COOLEY LLP
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone: +1 858 550 6000
Facsimile: +1 858 550 6420

AUDREY J. MOTT-SMITH (300550)
(amottsmith@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
LG Electronics, U.S.A., Inc.

COOLEY LLP
MARC SUSKIN*
*(Admitted pro hac vice)*
(msuskin@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: +1 212 479 6000
Facsimile: +1 212 479 6275

ROBBY L.R. SALDAÑA (356226)
(rsaldana@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, D.C. 20004-2400
Telephone: +1 202 842 7800
Facsimile: +1 202 842 7899

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEONA CAZARES, MICHAEL WALSH, and LAURA WILLIS-ALBRIGO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LG ELECTRONICS U.S.A., INC. and ALPHONSO INC.,

Defendants.

Case No. 5:26-cv-03840-EKL

**DEFENDANT LG ELECTRONICS U.S.A. INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY THE CASE**

Hearing Date: November 4, 2026
Time: 10:00 a.m.
Judge: Hon. Eumi K. Lee
Courtroom: 7

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 1
  A. Plaintiffs Agreed to Arbitrate under The TV Terms. ..... 1
  B. Plaintiffs Additionally Agreed To Arbitrate under The Product AA. ..... 5
  C. The TV AA and Product AA are Enforceable and Cover Plaintiffs' Claims. ..... 7
    1. The TV AA Delegates Questions of Enforceability and Scope. ..... 7
    2. The TV AA and Product AA are Enforceable. ..... 7
    3. Plaintiffs' Claims are Arbitrable under The TV AA and Product AA. ..... 9
  D. The Entire Action Should Be Stayed. ..... 10
III. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Cases**

*Adibzadeh v. Best Buy, Co. Inc.*, No. 20-cv-06257, 2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) .... 2

*Ambercroft Trading Ltd. v. Biddy*, No. 19-cv-06810, 2020 WL 1820599 (N.D. Cal. Apr. 10, 2020) .... 10

*Assi v. Citibank Nat'l Ass'n*, No. 14-cv-03241, 2015 WL 166919 (N.D. Cal. Jan. 13, 2015) .... 8

*Baird v. Charter Commc'ns, Inc.*, No. CV 19-10621, 2020 WL 11626081 (C.D. Cal. June 1, 2020) .... 6

*Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019) .... 8

*California Crane Sch., Inc. v. Google LLC*, 621 F.Supp.3d 1024 (N.D. Cal. 2022) .... 10

*Chabolla v. ClassPass, Inc.*, 129 F.4th 1147 (9th Cir. 2025) .... 2

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) .... 1

*Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) .... 5

*Cordas v. Uber Techs., Inc.*, 228 F.Supp.3d 985 (N.D. Cal. 2017) .... 3

*Dornaus v. Best Buy Co.*, No. 18-cv-04085, 2019 WL 632957 (N.D. Cal. Feb. 14, 2019) .... 10

*Ellis v. Wallet Buddha LLC*, No. EDCV 25-1533, 2025 WL 4061562 (C.D. Cal. Dec. 29, 2025) .... 3

*Goldman v. KPMG LLP*, 173 Cal.App.4th 209 (2009) .... 10

*Guaschino v. Hyundai Motor Am.*, No. CV 23-04354, 2023 WL 8126846 (C.D. Cal. Sep. 27, 2023) .... 8

*Herzog v. Superior Court*, 101 Cal.App.5th 1280 (2024) .... 1, 2

*In re Holl*, 925 F.3d 1076 (9th Cir. 2019) .... 2

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024)........ 2

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014), Opp. 11........ 5

*Lee v. Tesla, Inc.*,
No. SACV 20-00570, 2020 WL 10573281 (C.D. Cal. Oct. 1, 2020)........ 10

*Lee v. Ticketmaster L.L.C.*,
817 Fed. App'x 393 (9th Cir. 2020)........ 3

*Lhotka v. Geographic Expeditions, Inc.*,
181 Cal.App.4th 816 (2010)........ 8

*MacClelland v. Cellco P'ship*,
609 F.Supp.3d 1024 (N.D. Cal. 2022)........ 8

*McGill v. Citibank, N.A.*,
2 Cal.5th 945 (2017)........ 8, 10

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016)........ 7

*Namisnak v. Uber Techs., Inc.*,
971 F.3d 1088 (9th Cir. 2020)........ 5

*Needleman v. Golden 1 Credit Union*,
474 F.Supp.3d 1097 (N.D. Cal. 2020)........ 3

*Norcia v. Samsung Telecommunications America, LLC*,
845 F.3d 1279 (9th Cir. 2017)........ 5, 6, 9

*Pandolfi v. Aviagames, Inc.*,
No. 23-cv-05971, 2024 WL 4951258 (N.D. Cal. Dec. 3, 2024)........ 10

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024)........ 7, 8

*Rendon v. T-Mobile USA, Inc.*,
747 F.Supp.3d 1314 (C.D. Cal. 2024)........ 7

*In re Ring LLC Priv. Litig.*,
No. CV 19-10899, 2021 WL 2621197 (C.D. Cal. June 24, 2021)........ 5

*Saeedy v. Microsoft Corp.*,
757 F.Supp.3d 1172 (W.D. Wash. 2024)........ 3

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
298 F.Supp.3d 1285 (N.D. Cal. 2018)........ 6

*Sellers v. JustAnswer LLC*,
73 Cal.App.5th 444 (2021) .................... 3, 4

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) .................... 9

*Smith v. Inflection Risk Sols., LLC*,
No. 25-cv-07620, 2026 WL 622116 (N.D. Cal. Mar. 5, 2026) .................... 3

*Snow v. Eventbrite, Inc.*,
No. 20-cv-03698, 2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) .................... 3

*Tice v. Amazon.com, Inc.*,
No. 19-cv-1311, 2020 WL 1625782 (C.D. Cal. Mar. 25, 2020), *rev'd and remanded on other grounds*, 845 F. App'x 535 (9th Cir. 2021) .................... 5

*Turing Video Tech., Inc. v. AGI7 Inc.*,
No. 24-cv-04606, 2025 WL 579190 (N.D. Cal. Feb. 21, 2025) .................... 10

*Wheeler v. LG Elecs. USA, Inc.*,
No. 22-cv-00459, 2024 WL 51353 (E.D. Cal. Jan. 4, 2024) .................... 6

*Wilkins v. Cruise LLC*,
121 Cal.App.5th 927 (2026) .................... 2

**Statutes**

Cal. Civ. Code § 1633.9(a) .................... 4

## I. INTRODUCTION

Plaintiffs' opposition to LG's motion to compel arbitration relies on misdirection, conclusory assertions, and leaps of logic to try to avoid their agreements to arbitrate.[1] Despite Plaintiffs' attempts to muddy the record, they do not rebut the key facts that resolve this Motion: (1) they had to accept the TV AA to enable the Smart TV functionality they admittedly used, as confirmed by LG's consent records, (2) they were advised both on their product boxes and inside, in multiple places, that by using their TVs they agreed to the separate Product AA, (3) both the TV AA and Product AA have broad arbitration clauses encompassing Plaintiffs' claims and (4) ***no*** Plaintiff opted out of arbitration. The Court should grant LG's Motion.

## II. ARGUMENT

### A. Plaintiffs Agreed to Arbitrate under The TV Terms.

Plaintiffs concede they used Smart TV functionality—streaming services—on their TVs. That functionality is ***only*** available if a user agrees to the TV Terms and Privacy Policy. Mot. 3. Thus, the only question is whether Plaintiffs' assent to the TV Terms, which mandate arbitration, created a valid agreement to arbitrate. *E.g.*, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Established notice and assent principles confirm they did.

***Notice of the TV Terms.*** *First*, Plaintiffs argue that, under *Herzog v. Superior Court*, 101 Cal.App.5th 1280 (2024), the setup flow purportedly fails to provide notice of the TV Terms because the "Terms & Conditions" pages did not advise them they were agreeing to "terms" (as opposed to "privacy consents") or expressly call out the dispute procedures contained therein. Opp. 7-8. Plaintiffs misapply *Herzog*. There, the court declined to enforce a clickwrap agreement on a legal notice screen that "undid whatever notice it might have provided of the contractual terms by explicitly telling the user that clicking the box constituted authorization for [the defendant] to collect and store the user's sensitive, personal health information." 101 Cal.App.5th at 1286. The

---

[1] LG incorporates the defined terms from its Motion. Unless otherwise noted, in this brief all internal citations in case citations are omitted and all emphasis is added. All references to "D.D." are to the Durgin Declaration, Dkt. 34. All exhibits are to the Durgin Declaration, unless otherwise noted. Additional declaration references are "A.M.S." for the concurrently filed Declaration of Audrey Mott-Smith, "L.C." for Leona Cazares, Dkt. 37-1, "M.W." for Michael Walsh, Dkt. 37-2, "L.W.A." for Laura Willis-Albrigo, Dkt. 37-3, and "T.A." for Todd Albrigo, Dkt. 37-4.

TV set-up does ***no*** such thing. Rather, LG provides a "LEGAL NOTICE" expressly advising: "READ THIS LEGAL NOTICE CAREFULLY" because "YOUR USE OF YOUR SMART MEDIA PRODUCT IS SUBJECT TO THE TERMS SET OUT BELOW." Ex. 1 at 12; D.D. ¶13. LG further notes that "you'll be presented with our Privacy Policy, Terms of Use, and a few other documents that seek your agreement to use specific features and services." *Id.* LG then provides a short list of user agreements, including the TV Terms, allowing users to scroll through the full content of each before selecting those to which they want to "Agree." D.D. ¶14-21, Ex. 1 at 13, 14. The flow does not "describ[e] the terms as privacy consents," Opp. 8, as Plaintiffs argue. Plaintiffs' further argument that this clear notice of the TV Terms is defective because it does not expressly call out the arbitration provision, Opp. 7, lacks legal support. *See Keebaugh v. Warner Bros. Ent. Inc*., 100 F.4th 1005, 1013-14 (9th Cir. 2024) (hyperlinking terms without specifying they include an arbitration agreement is sufficient); *In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019) (a user is on inquiry notice of the content of provided terms; "[t]here is no special rule" to "specifically highlight or otherwise bring an arbitration clause to the attention of the consumer").

*Second,* there is no merit to Plaintiffs' challenge to "bundl[ing]" the TV Terms with other agreements. Opp. 8. The TV Terms are the ***first agreement*** on the screen, Ex. 1 at 13, and, along with the Privacy Policy, appear in bright white font while the font for all other user agreements is dimmed. D.D. ¶14. In any event, courts routinely find notice sufficient where a user is asked to review and accept multiple agreements on the same screen. *See Adibzadeh v. Best Buy, Co. Inc.*, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021). *Herzog* did not hold otherwise. *See Wilkins v. Cruise LLC*, 121 Cal.App.5th 927, 943 (2026) ("[T]he problem the majority [in *Herzog*] identified was created by the language of the paragraph that appeared just above the two [check] boxes"). Neither do Plaintiffs' other cases. *See* Opp. 8; *see also, e.g.*, *Chabolla v. ClassPass, Inc*., 129 F.4th 1147, 1157 (9th Cir. 2025) (notice not sufficiently conspicuous where hyperlinked terms were below the action button and "outside of the user's natural flow").

*Third*, Plaintiffs' argument that they are "not satisfied" that the images of the setup screens presented with LG's Motion capture what they saw, Opp. 8, fails. At all relevant times, the setup flow was substantially similar. D.D. ¶¶10-11. Plaintiffs' contention that Mr. Durgin lacks "personal

knowledge" of these facts, Opp. 8, is incorrect. His declaration is based on his duties, review of records, and consultation with other knowledgeable individuals. D.D. ¶¶1, 9. "This is sufficient to establish personal knowledge." *Needleman v. Golden 1 Credit Union*, 474 F.Supp.3d 1097, 1101 n.1 (N.D. Cal. 2020). Plaintiffs' cited cases are inapposite. *See Ellis v. Wallet Buddha LLC*, 2025 WL 4061562, at *5 (C.D. Cal. Dec. 29, 2025) (declarant lacked personal knowledge of whether plaintiff entered an arbitration agreement ***on a third-party website***); *Snow v. Eventbrite, Inc.*, 2020 WL 6135990, at *5-6 (N.D. Cal. Oct. 19, 2020) (defendant failed to identify when website first adopted appearance, whether images were the "only ways" the website appeared, and submitted contradictory and potentially misleading evidence).

Moreover, LG's evidence is unrebutted. Although Plaintiffs try to manufacture a dispute by arguing they cannot recall agreeing to the TV Terms, Opp. 9, they ***admit*** that "[d]uring setup," they were "presented with multiple agreements, including LG's Terms of Use [the "TV Terms"], Privacy Policy, and a separate 'Viewing Information Agreement[.]'" Compl. ¶173. It is enough where, as here, a defendant "provides substantively consistent and uncontradicted testimonial and exemplar evidence showing what the [] process would have looked like during the periods of time in which Plaintiffs" would have agreed to the Terms. *See Saeedy v. Microsoft Corp.*, 757 F.Supp.3d 1172, 1195 (W.D. Wash. 2024); *see also Cordas v. Uber Techs., Inc.*, 228 F.Supp.3d 985, 989-90 (N.D. Cal. 2017) (rejecting conclusory objections to evidence of agreement flow and compelling arbitration). The fact that Plaintiffs cannot recall agreeing to the TV Terms, Opp. 9, or may not have read them, is insufficient. *E.g.*, *Lee v. Ticketmaster L.L.C.*, 817 Fed. App'x 393, 395 (9th Cir. 2020) (plaintiffs "cannot avoid the terms of [their] contract on the ground that [they] … failed to read it before signing" when they "had a legitimate opportunity to review it."); *Smith v. Inflection Risk Sols., LLC*, 2026 WL 622116, at *6 (N.D. Cal. Mar. 5, 2026) (statements "such as 'I don't recall'" "do not create genuine dispute regarding whether [plaintiff] contracted with [defendant]").

***Acceptance of the TV Terms.*** Plaintiffs cannot show they did not assent to the TV Terms. Initially, they argue the flow constitutes "assent by use[,]" and is thus an unenforceable browsewrap. Opp. 7-8. That is specious. A browsewrap purports to bind a user who merely browses a site. *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 463 (2021). Here, Plaintiffs assented by

***affirmatively checking*** the bubble next to the TV Terms or the "Select All" option (to agree to all agreements). D.D. ¶¶14-17, 22, Ex. 1 at 11-17. Once checked, Plaintiffs then had to ***affirmatively click*** the "Agree" button at the bottom of the screen. D.D. ¶21. All agreements (including the TV Terms) were available in full, on the same screen in scrollable format. D.D. ¶15. LG's assent flow is a scrollwrap or clickwrap, "necessitat[ing] an active role by the user," and is "enforceable." *Sellers*, 73 Cal.App.5th at 470 (describing a clickwrap agreement); Mot. 9 (collecting cases).

Plaintiffs next take issue with the consent records. But their arguments fail for two reasons. First, Plaintiffs undisputedly had to accept the TV Terms to enable Smart TV functionality, which they admittedly used. Compl. ¶¶20, 35, 50, 179; D.D. ¶8; L.C. ¶10, M.W. ¶9, L.W.A. ¶9. This alone is dispositive. LG did not need to submit consent records at all. Second, Plaintiffs argue the consent records are "keyed to device serial numbers, not people," Opp. 9, and so do not show "who set up each [TV]" or "whose act the screen records," *id.* 10. But under California law, "[a]n electronic record … is attributable to a person if it was the act of the person[,]" and "[t]he act of the person may be shown in ***any manner***." Cal. Civ. Code. § 1633.9(a). Cazares and Walsh admit ***they set up their TVs***, L.C. ¶5; M.W. ¶4, and thus, at minimum, the initial acceptance records for their TVs ***are*** attributable to them. Plaintiffs' argument now contradicts their allegations, and the Court should disregard it. In fact, Cazares has affirmatively ***invoked*** her agreement to arbitrate in the TV Terms, threatening arbitration of similar claims through other counsel days after filing this lawsuit. A.M.S. Decl. ¶3. As to Willis-Albrigo, her spouse admits he set up her TV, T.A. ¶3, and she is bound, as discussed below. *See also* Mot. 10. Plaintiffs' arguments concerning ***re-acceptance***, Opp. 10, additionally distort the record. When users withdraw consent (as Walsh did on May 28, 2025), a later "Agree" (as appears in Walsh's records, D.D. ¶29) only occurs "by going through the consent flow" and accepting the TV Terms anew. D.D. ¶33. Regardless, the TV AA applies to claims arising after termination of the TV Terms, and Plaintiffs' first acceptances bind them. Ex. 15 at 16.

***Willis-Albrigo is Equitably Bound.*** Plaintiffs contend that Willis-Albrigo should not be bound to arbitrate because (1) she "did not know that [s]he was entering into a contractual relationship" and (2) the TV Terms at issue concern use of a product rather than "a service account." Opp. 11. Both arguments miss the point. First, under well-accepted equitable principles, a signatory

(Willis-Albrigo's spouse) can bind a non-signatory (Willis-Albrigo) when there is a "preexisting relationship," like a spousal relationship. *See* Mot. 10. Plaintiffs do not meaningfully engage with this point, relying only on *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014), Opp. 11, which does not address equitable estoppel principles. Nor does it matter that the TV Terms concern a product rather than an account. The question is whether the signatory's relationship with the non-signatory makes it equitable to bind the non-signatory. Here, it does. Willis-Albrigo regularly uses the TV that displayed the TV Terms to which her spouse agreed. L.W.A. ¶¶3-4, 9. Thus, her "***spousal relationship*** … prevents [her] from avoiding the terms of the … TOU" that govern that very use. *Tice v. Amazon.com, Inc.*, 2020 WL 1625782, at *4 (C.D. Cal. Mar. 25, 2020), *rev'd and remanded on other grounds*, 845 F. App'x 535 (9th Cir. 2021).

Plaintiffs cannot avoid this result by arguing that Willis-Albrigo did not "derive any benefit from an LG agreement." Opp. 12. To the contrary: the Smart TV functionality she regularly uses ***requires*** agreement to and is governed by the TV Terms. Plaintiffs' cited cases concern different issues and are nonresponsive to LG's argument that Willis-Albrigo's spousal relationship prevents her from disclaiming the TV AA. Opp. 12; *see Comer v. Micor, Inc.*, 436 F.3d 1098, 1101-02 (9th Cir. 2006) (estoppel theory not contingent on pre-existing relationship but whether non-signatory "knowingly exploit[ed] the agreement … despite having never signed"); *In re Ring LLC Priv. Litig.*, 2021 WL 2621197, at *7 (C.D. Cal. June 24, 2021) (concluding that children plaintiffs' "passive[] expos[ure]" to a device did not make them "Authorized Users" bound directly to the terms and considering other estoppel bases not relevant here); *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1095 (9th Cir. 2020) (equitable estoppel not applicable where plaintiffs were not "relying on an agreement for one purpose while disavowing the arbitration clause of the agreement.").

### B. Plaintiffs Additionally Agreed To Arbitrate under The Product AA.

Plaintiffs rely on *Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279 (9th Cir. 2017) to argue they lacked notice of and did not assent to the Product AA. Opp. 5-6. *Norcia* does not support either position. LG's Product AA suffers from none of the notice defects at issue in *Norcia*. There, there was no notice of the agreement to arbitrate all disputes on the box—only in a 101-page "Product Safety & Warranty Information" brochure placed inside the box. 845

F.3d at 1282. On those facts, the court found that a reasonable person "would not be on notice that the brochure contained a freestanding obligation [to arbitrate] outside the scope of the warranty." *Id.* at 1289. That is not true here. In addition to the Product AA printed in the in-the-box Warranty, there was (1) an Arbitration Advisal on the outside of the box that expressly advised: "***By using this product***, you agree that ***all disputes*** between you and LG arising out of or relating in any way to ***this product*** (including but not limited to the warranty disputes) shall be resolved exclusively through binding arbitration[,]" D.D. ¶¶37, 39, 41, Exs. 4-7, ***and*** (2) an Owner's Manual in the box with the same language, D.D. ¶34, Exs. 4-8. The URL to the Product AA was in both. And unlike the brochure in *Norcia*, the Warranty here was only ***two pages*** and included the Product AA (with its broad applicability) in clear and conspicuous language. D.D. ¶¶48-49, Ex. 12, 13. These crucial distinctions render *Norcia* inapposite.

Plaintiffs also misapply *Norcia*'s assent analysis. There, the court held that the plaintiff's ***inaction*** was insufficient to show assent in part because he did not receive any benefit under the warranty by not opting out of the arbitration agreement; he could avail himself of the warranty whether or not he opted out. *See Norcia*, 845 F.3d at 1284-86. Here, users are expressly advised—on the box itself and in the Owner's Manual, not merely in the Warranty—that using the TV constitutes agreement to the Product AA, as discussed above. That product use (not warranty protections) is the benefit that binds, and all Plaintiffs received that benefit because they all used their TVs. L.C. ¶10, M.W. ¶9, L.W.A. ¶9. Thus, Plaintiffs' ***actions*** demonstrate their assent, not any inaction. "[T]hat difference … takes this case outside the silence-by-acceptance rubric utilized in *Norcia*." *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F.Supp.3d 1285, 1293 (N.D. Cal. 2018) ("[C]onduct is a valid means of assent under California law."); *see also Baird v. Charter Commc'ns, Inc.*, 2020 WL 11626081, at *5 (C.D. Cal. June 1, 2020) ("*Norcia* is not applicable; Plaintiffs are not entitled to continue using Defendant's services if they do not agree to the Terms."). Plaintiffs acknowledge that another court has already reached this conclusion in the context of LG's materials. Opp. 6; *Wheeler v. LG Elecs. USA, Inc.*, 2024 WL 51353 (E.D. Cal. Jan. 4, 2024). Although Plaintiffs argue the claims in *Wheeler* "concerned the warranty[,]" Opp. 10, the court's notice and assent analysis did not turn on that. *Wheeler*, 2024 WL 51353, at *10

(arbitration notice on box and owner's manual inside bound plaintiff who used the product).

Plaintiffs' remaining arguments are unavailing. As explained above, their failure to read the notice materials or Product AA, Opp. 7, does not defeat contract formation. *See supra* Part II.A, B. Nor can they dispute formation by arguing that Mr. Durgin did not review the specific "box that reached a Plaintiff." Opp. 7. LG located the materials applicable to Plaintiffs' TVs using the model numbers they provided. D.D. ¶¶34-35. Plaintiffs submit no evidence to the contrary.

**C. The TV AA and Product AA are Enforceable and Cover Plaintiffs' Claims.**

**1. The TV AA Delegates Questions of Enforceability and Scope.**

Plaintiffs argue that incorporation of the AAA Consumer Arbitration Rules ("Rules") into the TV AA does not support delegation. Opp. 12-13. They are wrong. Initially, they object that the Rules in the record took effect on May 1, 2025, after Plaintiffs set up three of their four TVs. Opp. 12; Dkt. 35-1 (RFJN, Ex. A (R-7. Jurisdiction)). But the prior version of the Rules (effective September 1, 2014) has the ***same*** delegation language. *See* Supp. RFJN, Ex. B (R-14. Jurisdiction). Nor can Plaintiffs resist delegation by asserting they are "unsophisticated." Opp. 13. The "majority view" is that "incorporation of the AAA rules constitutes clear and unmistakable evidence" of delegation "even if [a plaintiff] was an unsophisticated party." *Rendon v. T-Mobile USA, Inc.*, 747 F.Supp.3d 1314, 1320 (C.D. Cal. 2024). Regardless, Plaintiffs' threadbare assertions that they lack "legal training" are not "evidence concerning their sophistication or lack thereof." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) (rejecting delegation challenge). Opp. 13. Plaintiffs' other formation and unconscionability arguments against delegation lack merit, as discussed in Parts II.A and II.B.

In any event, the TV AA and Product AA are each enforceable and cover Plaintiffs' claims.

**2. The TV AA and Product AA are Enforceable.**

***No Procedural Unconscionability.*** Plaintiffs cannot (and do not) dispute that "a meaningful right to opt-out of [arbitration] … renders the [arbitration clause in an adhesion contract] … procedurally conscionable." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016). Plaintiffs did not exercise their opt-out rights under the TV AA and Product AA. D.D. ¶¶58-59; Exs. 12 at 3, 13 at 2, 14 at 4, 15 at 18. Plaintiffs argue that the right was "illusory" given that the

opt out period runs from purchase, such that a user might miss the window if the TV was a gift or bought second-hand. Opp. 16. These hypotheticals are irrelevant. Plaintiffs admit ***they*** bought their TVs. L.C. ¶¶3-4, M.W. ¶3, L.W.A. ¶3. There is ***no evidence*** they could not opt out in time. Courts do not hesitate to enforce similar opt out periods. *See*, *e.g.*, *Guaschino v. Hyundai Motor Am.*, 2023 WL 8126846, at *6 (C.D. Cal. Sep. 27, 2023) (no procedural unconscionability where plaintiff had "the ability to opt-out by email within 30 days of the Vehicle's ***purchase***").[2]

***No Substantive Unconscionability.*** Plaintiffs' arguments on substantive unconscionability miss the mark. They argue that (1) exceptions to arbitration that ***apply equally to all parties*** are one-sided, (2) a standard fee-shifting provision for frivolous claims, "not unlike the rules and statutes that permit the imposition of costs and fees in judicial proceedings[,]" *Assi v. Citibank Nat'l Ass'n*, 2015 WL 166919, at *3 (N.D. Cal. Jan. 13, 2015), is somehow anti-consumer, and (3) an opt-out running from the date of purchase is illusory. Opp. 16. ***None*** of these arguments show one-sidedness that "shocks the conscience." Mot. 15-16. Plaintiffs also fail to address any of LG's arguments about the many ways the TV AA and Product AA ***benefit*** consumers, Mot. 16, and their cases are distinguishable. *See Lhotka v. Geographic Expeditions, Inc.*, 181 Cal.App.4th 816, 825-26 (2010) (arbitration terms limited plaintiffs' recovery, required them to cover defense costs and attorney's fees but not vice versa, and required arbitration in San Francisco); *MacClelland v. Cellco P'ship*, 609 F.Supp.3d 1024, 1045-46 (N.D. Cal. 2022) (arbitration terms *inter alia*, barred claims after 6 months, barred punitive damages, waived public injunctive relief, and limited evidence).

***The Product AA does Not Implicate McGill***. Plaintiffs incorrectly argue that the Product AA is "unenforceable under *McGill*." Opp. 17. Not so. Under *McGill*, "a ***waiver*** of public injunctive relief … is 'unenforceable under California law.'" *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 827 (9th Cir. 2019) (quoting *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017)). But the Product AA ***does not waive*** any right to seek public injunctive relief; it just channels such relief to arbitration. Ex. 12 at 2; Ex. 13 at 2. Thus, *McGill* does not apply because the Product AA "does not prohibit public injunctive relief in all fora." *Patrick*, 93 F.4th at 478.

---

[2] Plaintiffs also rehash their notice arguments, Opp. 15, which fail, *see supra* Part II.A, and do not respond to LG's arguments showing lack of surprise, Mot. 15. Their discussion of Cazares's acceptance of updated terms in September 2026 on which "LG does not rely," Opp. 15, is irrelevant.

**3. Plaintiffs' Claims are Arbitrable under The TV AA and Product AA.**

***TV AA***. As discussed, arbitrability under the TV AA is a question for the arbitrator, and the Court need not reach it. *See supra* Part II.C.1; Mot. 13-14. Regardless, Plaintiffs' arguments that their claims fall outside the TV AA's scope fail. First, that the TV Terms refer to themselves as "***this*** EULA," Ex. 14 at 1-2; Ex. 15 at 16-17, does not undermine arbitrability, Opp. 14; it shows they are one and the same. The TV Terms concern LG's provision of Smart software services, including Smart TV functionality. Using a common concept of an end-user license is unremarkable. That users may enter ***separate*** EULAs with third-party application providers, as referenced in Exhibit A to the TV Terms, Opp. 14, does not alter that "***this*** EULA" concerns the TV Terms. Nor does the reference to "Section 12(a)" in subsection (b) of the TV AA (concerning exceptions to arbitration) create ambiguity as to scope. Opp. 14. That citation merely transposes "21(a)," the section immediately above that defines the TV AA's broad scope. A scrivener's error in this cross-reference does not undermine arbitrability. Finally, it is irrelevant that third-party apps or services may be subject to those third parties' terms. Opp. 14. Plaintiffs' claims concern ***LG's alleged use of ACR technology*** in providing the Smart TV functionality covered by the TV Terms.

***Product AA***. Plaintiffs' attempts to limit the Product AA's scope also fail. The Product AA governs "all disputes … relating ***in any way*** to … the product," where disputes concern the product's "sale, condition or performance." Ex. 12 at 2. Claims concerning the operation of technology allegedly incorporated into the TV fall within this broad scope. Further, the Product AA is unlike the terms in *Norcia*, and is not limited to warranty claims. Opp. 15; *supra* Part II.B.

Plaintiffs' additional arguments are meritless. First, it is immaterial that their claims purportedly "arise[] under" the Viewing Information Agreement. Opp. 14. The question is whether their claims "'touch matters' covered by the contract containing the arbitration clause." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). They do. Plaintiffs' claims plainly arise out of services offered under the TV Terms (TV AA) and relate to the TVs they bought (Product AA). Mot. 16-17. Second, Plaintiffs' position that their statutory claims are not arbitrable because they would exist absent a contract, Opp. 14-15, is illogical and beside the point. Plaintiffs have contracts requiring arbitration of ***all claims***, including statutory claims. Exs. 12 at 2, 13 at 2, 15 at 1.

**D. The Entire Action Should Be Stayed.**

Plaintiffs concede that all claims compelled to arbitration ***must*** be stayed. Opp. 17; Mot. 17. Any non-arbitrable claims must also be stayed. First, under the Product AA, ***all*** their claims against LG (including requests for injunctive relief, as Plaintiffs acknowledge, Opp. 17), are arbitrable and must be stayed. Second, any injunctive relief requests not arbitrable under the TV AA must also be stayed even if Plaintiffs contend the requests only "incidentally" benefit them and primarily serve the public. Opp. 17. Plaintiffs' ***claims*** have "the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated" by providing ***monetary remedies*** to a putative class of users and thus "do[] not constitute public injunctive relief." *McGill*, 2 Cal.5th at 955. Appending injunctive relief ***requests*** to ***arbitrable claims*** does not undermine the point that staying those requests is necessary to "avoid the hardship and inefficiency of dual-track litigation and arbitration[,]" *Turing Video Tech., Inc. v. AGI7 Inc.*, 2025 WL 579190, at *7 (N.D. Cal. Feb. 21, 2025) (Lee, J.). Nor does a stay cause prejudicial "delay[.]" Opp. 18; *see Lee v. Tesla, Inc.*, 2020 WL 10573281, at *10 (C.D. Cal. Oct. 1, 2020) (staying requests for injunctive relief); *Dornaus v. Best Buy Co.*, 2019 WL 632957, at *6 (N.D. Cal. Feb. 14, 2019) (staying injunctive relief where arbitrable claims "predominate"). Plaintiffs' argument regarding prejudice, Opp. 18, improperly assumes the merits of their unproven claims, which go to an arbitrator, not this Court. As to Alphonso, Plaintiffs bring the ***same claims***, seek the ***same relief***, and rely on the ***same allegations*** as against LG, including repeated allegations of concerted conduct. Mot. 18; *see also, e.g.*, Compl. ¶¶3, 192-202. This "substantial[] overlap," warrants a stay. *See Ambercroft Trading Ltd. v. Biddy*, 2020 WL 1820599, at *7 (N.D. Cal. Apr. 10, 2020). Alphonso's decision not to move to compel arbitration does not control—or change that it could have done so. *See Pandolfi v. Aviagames, Inc.*, 2024 WL 4951258, at *7 (N.D. Cal. Dec. 3, 2024) (staying claims against non-moving defendant and rejecting *California Crane Sch., Inc. v. Google LLC*, 621 F.Supp.3d 1024 (N.D. Cal. 2022) as "not persuasive"); *Goldman v. KPMG LLP*, 173 Cal.App.4th 209, 219, 221 (2009) (non-signatory can equitably compel arbitration).

## III. CONCLUSION

For the reasons above and in the Motion, the Court should grant LG's Motion in its entirety.

Dated: October 9, 2026

Respectfully submitted,

COOLEY LLP
MICHAEL A. ATTANASIO (151529)
AUDREY J. MOTT-SMITH (300550)
MARC SUSKIN*
ROBBY L.R. SALDAÑA (356226)

*/s/ Audrey J. Mott-Smith*

Attorneys for Defendant
LG Electronics U.S.A., Inc.