# EXHIBIT A

to Plaintiffs' Second Statement of Recent Decision

In re Sony Electronics Privacy Litigation, No. 3:26-cv-00297-H-JAC (S.D. Cal.)

Order of November 2, 2026 (Dkt. 43) and Exhibit A thereto (Dkt. 43-1)

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re Sony Electronics Privacy Litigation | Case No.: 26-cv-00297-H-JAC<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION; AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Doc. Nos. 32, 33.] |

On July 8, 2026, Plaintiffs filed a consolidated class action complaint against Defendant Sony Electronics Inc. ("Sony"). (Doc. No. 31, CCAC.) On August 7, 2026, Sony filed a motion to compel arbitration and a motion to dismiss for failure to state a claim. (Doc. Nos. 32, 33.) On September 4, 2026 and September 7, 2026, Plaintiffs opposed Sony's motion to compel arbitration and Sony's motion to dismiss, respectively. (Doc. Nos. 37, 38-1.) On September 14, 2026 and September 17, 2026, Sony replied in support of both motions. (Doc. Nos. 40, 41.) On September 1, 2026, the Court took the matters under submission. (Doc. No. 34.) For the reasons below, the Court denies Sony's

motion to compel arbitration and grants in part and denies in part Sony's motion to dismiss for failure to state a claim.

## Background

### I. Factual Background

The following background is taken from the allegations in Plaintiffs' consolidated class action complaint and Sony's motion to compel arbitration.

A. Sony's Smart TVs and Automatic Content Recognition Technology

Defendant Sony is a leading consumer electronics company that markets and sells various electronic products, including televisions. (Doc. No. 32-1, Wheeler Decl., ¶ 2.) Some Sony televisions are "Smart TVs," internet-connected devices capable of running streaming applications, connecting to external media devices, and interacting with other smart devices in a consumer's home. (Doc. No. 31, CCAC, ¶¶ 100-01.) Sony sells millions of Smart TVs in the United States each year. (Id. at ¶ 103.) Plaintiffs are individuals residing in Pennsylvania, Georgia, California, Washington, and Illinois, who purchased Sony Smart TVs between 2018 and 2025. (Id. at ¶¶ 12-79.) Each Plaintiff continues to own and use a Sony Smart TV to this day. (Id. at ¶ 79.)

Plaintiffs allege that Sony embedded automatic content recognition ("ACR") technology into Smart TVs and used it to collect and sell their viewing data without consent. ACR technology is designed to identify the media content displayed on a television. (Id. at ¶ 107.) It operates by continuously capturing fragments of audio and video output and converting those fragments into digital "fingerprints." (Id. at ¶ 108.) Once obtained, ACR data can be used to build "highly specific viewing-behavior databases" to be shared with third parties for targeted advertising and analytics purposes. (Id. at ¶¶ 107-110.)

Sony has used ACR technology in Smart TVs since at least 2017, through software and firmware operated by Sony and its ACR vendor, Samba TV, Inc. ("Samba"). (Id. at ¶¶ 111-12.) Sony's ACR system allows it to engage in profitable surveillance of Smart TV users by continuously capturing the video and audio content displayed on-screen,

fingerprinting it, matching the fingerprints against reference databases to identify the specific content viewed, and then transmitting that viewing record linked to persistent identifiers to Samba and others for advertising and identity resolution purposes. (Id. at ¶¶ 111-27, 148-52.)[1] The data collected through this system is alleged to reveal detailed information about each viewing session, including the specific content viewed and applications used, the timing and duration of each viewing session, and information about devices connected to the Smart TV. (Id. at ¶¶ 117-18.) Once obtained, the data is aggregated to create viewing profiles for targeted advertising and behavioral segmentation. (Id. at ¶¶ 119-23.) Sony also allegedly links these profiles to other devices belonging to the same individual or household, allowing Sony, Samba, and third parties to engage in more detailed "cross-device" consumer tracking. (Id. at ¶¶ 124-26.) Plaintiffs allege their viewing data is highly sensitive because it reveals information about, for example, their political preferences, religious beliefs, sexual orientations, health conditions and concerns, family compositions, age, and socioeconomic status. (Id. ¶¶ 121-22.)

Plaintiffs allege Sony failed to meaningfully disclose its ACR system. (Id. ¶¶ 170-80.) Sony presents the feature at device setup and in subsequent menus but uses "benign-sounding" labels and "dense, multi-screen setup flows," causing consumers to unknowingly enable the ACR feature. (Id. at ¶¶ 8, 113-15, 170-80.) For example, Sony labels the feature "'Performance and Analysis Data' or 'Smart TV Experience' / 'Use info from TV Inputs,'" but does not disclose that the ACR technology "continuous[ly] monitor[s]" consumers' viewing or that consumers' viewing data will be aggregated and shared. (Id. at ¶¶ 170-77.) Plaintiffs allege that if they knew the details of Sony's ACR system, they would not have purchased the Smart TVs or would have paid substantially less for them. (Id. at ¶¶ 12-78.)

---

[1] Sony's Smart TVs running Google TV are also configured to transmit certain information to Google, including the device's Google Advertising Identifier, account activity, application telemetry, and household and device identifiers. (Id. at ¶ 112.)

B. The Limited Warranty

Sony asserts that since at least 2018, each Sony television sold in the United States has come packaged with a limited warranty document (the "Limited Warranty," attached hereto as Exhibit A). (Doc. No. 32-1, Wheeler Decl., ¶ 3.) The Limited Warranty is a dense, single-page document with small but legible text. (See Ex. A.) The document is titled, "**LIMITED WARRANTY**" in large bold text. Underneath the title is a subtitle that reads "U.S. and Canada only – One (1) year." The last four paragraphs of the Limited Warranty relate to arbitration and read as follows:

> **For purchases made in the U.S.: READ THE FOLLOWING DISPUTE RESOLUTION/ARBITRATION PROVISION CAREFULLY. IT DETAILS YOUR RIGHTS AND INSTRUCTIONS SHOULD A DISPUTE RELATED TO THE PRODUCT ARISE.**
>
> **What Happens If We Have A Dispute:** Should a dispute or claim arise related to the product, Your purchase and/or use of the product, the terms of this Limited Warranty, or any service provided under the terms of this Limited Warranty (including any repair or replacement) ("Dispute""), You and Sony agree that the **Dispute shall be resolved exclusively through binding arbitration. YOU UNDERSTAND AND ACKNOWLEDGE THAT BY AGREEING TO ARBITRATION, YOU ARE GIVING UP THE RIGHT TO LITIGATE (OR PARTICIPATE IN AS A PARTY OR CLASS MEMBER) IN ANY DISPUTES IN COURT. You also agree that ANY DISPUTE RESOLUTION PROCEEDING WILL ONLY CONSIDER YOUR INDIVIDUAL CLAIMS, AND BOTH PARTIES AGREE NOT TO HAVE ANY DISPUTE HEARD AS A CLASS ACTION, REPRESENTATIVE ACTION, CONSOLIDATED ACTION, OR PRIVATE ATTORNEY GENERAL ACTION.** Despite the above, You have the right to litigate any Dispute on an individual basis in small claims court or other similar court of limited jurisdiction, to the extent the amount at issue does not exceed $15,000, and as long as such court has proper jurisdiction and all other requirements (including the amount in controversy) are satisfied.
>
> If any part of this arbitration provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.
>
> **Arbitration Instructions.** To begin Arbitration, either You or Sony must

make a written demand to the other for arbitration. The Arbitration will take place before a single arbitrator. The arbitration will be administered in keeping with the Expedited Procedures of the Commercial Arbitration Rules and the Supplementary Proceedings for Consumer-Related disputes ("Rules") of the American Arbitration Association ("AAA"), when applicable and in effect when the claim is filed. You may get a copy of AAA's Rules by contacting AAA at (800) 778-7879 or visitingwww.adr.org. The filing fees to begin and carry out arbitration will be shared between You and Sony, but in no event shall Your fees ever exceed the amount allowable by the special rules for Consumers Disputes provided for by AAA, at which point Sony will cover all additional administrative fees and expenses. This does not prohibit the Arbitrator from giving the winning party their fees and expenses of the arbitration when appropriate pursuant to the Rules. Unless You and Sony agree differently, the arbitration will take place in the county and state where You live, and applicable federal or state law shall govern the substance of any Dispute during the arbitration. However, the Federal Arbitration Act, 9 U.S.C. § 1, et seq., will govern the arbitration itself and not any state law on arbitration. The Arbitrator's decision will be binding and final, except for a limited right of appeal under the Federal Arbitration Act.

**Opt-Out Instructions. IF YOU DO NOT WISH TO BE BOUND BY THE BINDING ARBITRATION PROVISION, THEN:** (1) You must notify Sony in writing within 30 days of the date that You purchased the product; (2) Your written notification must be mailed to Sony Electronics Inc., 16535 Via Esprillo, MZ 1105, San Diego CA 92127, Attn: Legal Department; AND (3) Your written notification must include (a) Your NAME, (b) Your ADDRESS, (c) the DATE You purchased the product, and (d) a clear statement that "YOU DO NOT WISH TO RESOLVE DISPUTES WITH ANY SONY ELECTRONICS ENTITY THROUGH ARBITRATION AND/OR BE BOUND BY THE CLASS ACTION WAIVER." Opting out of this dispute resolution will not affect the coverage of the Limited Warranty in any way, and You will continue to enjoy the benefits of the Limited Warranty.

(Ex. A.) Sony maintains that Plaintiffs each received copies of the Limited Warranty inside the boxes with their Smart TVs and that none opted out of the arbitration agreement. (Doc. No. 32-1, Wheeler Decl., ¶¶ 3, 15-16.)

## II. Procedural History

On January 16, 2026, Plaintiffs Richard Carpe, Bobi Hinesman, Christine Dionne, Lisa Castello, Robin Shine, Carmen Rudnick, Willis Marzolf, and Debbie Garcia Debolt

filed a complaint against Sony in this Court, stemming from the use of ACR technology in Sony Smart TVs.[2] (Doc. No. 1, Compl.) On March 23, 2026, Plaintiff Joanna Semonious filed a separate but related action, Semonious v. Sony Electronics, Inc. et al, 3:26-cv-01833. On April 15, 2026, the Semonious case was transferred to this Court pursuant to the low number rule. The cases were consolidated and re-captioned In re Sony Electronics Privacy Litigation, 3:26-cv-00297. (Doc. No. 29.)

On July 8, 2026, Plaintiffs Rudnick, Hinesman, Debolt, Dionne, Shine, Castello, Carpe, Marzolf, Semonious, and newly added Plaintiffs Gariel Freund, Latisha Richmond, and Nancy Powell (together, "Plaintiffs") filed a consolidated class action complaint. (Doc. No. 31, CCAC.) The consolidated class action complaint alleges seventeen causes of action. (Id.) Plaintiffs assert claims for common law invasion of privacy (intrusion upon seclusion and public disclosure of private facts), negligence, unjust enrichment, and violations of the Video Privacy Protection Act ("VPPA"), the Electronic Communications Privacy Act ("ECPA"), and the California Invasion of Privacy Act ("CIPA"). Plaintiffs also assert various state law claims on behalf of the state-specific subclasses. (See id.)

By the present motions, Sony moves to compel arbitration or, in the alternative, dismiss Plaintiffs' consolidated class action complaint for failure to state a claim. (See Doc. Nos. 32, 33.) For the reasons below, the Court denies Sony's motion to compel arbitration and grants in part and denies in part Sony's motion to dismiss for failure to state a claim with leave to amend.

## Motion to Compel Arbitration

### I. Legal Standards

A party moving to compel arbitration must show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir.

---

[2] Sony Corporation of America was initially named as a defendant but was dismissed from the action on March 16, 2026, pursuant to a joint motion. (See Doc. No. 22.)

2015) (citation omitted); see also Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 564-65 (9th Cir. 2014). Fundamentally, "arbitration is a matter of contract." Rent-A-Center, West, Inc., v. Jackson, 561 U.S. 63, 67 (2010). Thus, courts apply state contract law to determine whether a valid arbitration agreement exists. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. Norcia v. Samsung Telecommunications Am., LLC, 845 F.3d 1279, 1283 (9th Cir. 2017); see also Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 742 (9th Cir. 2014) ("If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply.").

**II. Analysis**

To evaluate Sony's motion to compel arbitration, the Court must first determine whether a valid agreement to arbitrate exists. See Ashbey, 785 F.3d at 1323. In California, "the essential elements for a contract are (1) '[p]arties capable of contracting;' (2) '[t]heir consent;' (3) '[a] lawful object;' and (4) '[s]ufficient cause or consideration.'" United States ex rel. Oliver v. Parsons Co., 195 F.3d 457, 462 (9th Cir. 1999) (alterations in original) (quoting Cal. Civ. Code § 1550). The issue here is whether Plaintiffs consented to the purported arbitration agreement in the Limited Warranty.[3]

---

[3] Sony mentions in a footnote and in David Wheeler's first declaration in support of its motion to compel arbitration that its End User License Agreement ("EULA") contains an additional arbitration provision. (See Doc. No. 32 at 3 n.4; Doc. No. 32-1, Wheeler Decl., ¶¶ 6-13.) Sony asserts that all Sony TV users "can access the EULA[,]" but provides no specific details regarding how it is presented, stating only that "[i]n some models, for some years, the EULA is presented at set-up for acceptance[,]" and "[i]n other models, for other years, the EULA is available through the on-screen menu." (See Doc. No. 32-1, Wheeler Decl., ¶¶ 9-11.) Sony fails to provide enough information to allow for a meaningful analysis of the arbitration provision in its EULA. See Norcia, 845 F.3d at 1283; see also In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig., 298 F. Supp. 3d 1285, 1289 (N.D. Cal. 2018) ("[T]he analysis of assent hinges on what information was presented and how that information was presented to each individual Plaintiff[.]"). The

It is undisputed that no Plaintiff affirmatively accepted the arbitration agreement. Thus, the Court must decide whether Plaintiffs manifested assent some other way. Mutual assent may be inferred through conduct. See Cal. Com. Code § 2204(1); Knutson, 771 F.3d at 565 (9th Cir. 2014). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." Knutson, 771 F.3d at 565. Generally, "silence or inaction does not constitute acceptance of an offer." Golden Eagle Ins. Co. v. Foremost Ins. Co., 20 Cal. App. 4th 1372, 1385 (1993). But certain exceptions exist. Id. at 1386. For example, silence may be treated as consent when "the offeree has a duty to respond to an offer and fails to act in the face of this duty[,]" or where "the party retains the benefit offered." Norcia, 845 F.3d at 1284-85. Even where an exception applies, silence is not consent "when the offeree reasonably did not know that an offer had been made." Id. at 1285.

Sony argues Plaintiffs manifested assent to arbitration through silence, i.e., failing to opt out, and through continuing to use their Smart TVs. (Doc. No. 32 at 8-9.) Under either theory, the issue is whether Plaintiffs had notice of the arbitration agreement in Sony's Limited Warranty. See Norcia, 845 F.3d at 1285 ("Even if there is an applicable exception to the general rule that silence does not constitute acceptance, courts have rejected the argument that an offeree's silence constitutes consent to a contract when the offeree reasonably did not know that an offer had been made."); In re Samsung Galaxy Smartphone, 298 F. Supp. 3d at 1293 (explaining where use is claimed to demonstrate acceptance, the issue is "whether Plaintiffs were on notice of the arbitration clause").[4]

---

Court therefore focuses, as the parties do, on the arbitration provision in Sony's Limited Warranty.

[4] On reply, Sony argues that Plaintiffs' silence constitutes acceptance because the "retention of benefit" exception applies. (Doc. No. 40 at 5.) Sony argues Plaintiffs' failure to opt out of the arbitration agreement allowed them to retain the benefit of the arbitration agreement itself. (Id.) The Court doubts the merit of this argument, given the Ninth Circuit's conclusion of no retention of benefit on materially identical facts. See Norcia, 845 F.3d at 1286 (concluding that failing to opt out of arbitration agreement in warranty

This Court's notice inquiry is guided by the Ninth Circuit's decision in Norica v. Samsung. In Norica, the Ninth Circuit evaluated whether a consumer could be compelled to arbitrate non-warranty claims pursuant to an arbitration provision in a 101-page in-the-box brochure titled "Product Safety & Warranty Information." See 845 F.3d at 1282. Applying California contract law, the court found that Norcia could not be compelled to arbitrate because neither exception to the general rule against silence as acceptance applied. Id. at 1285-86. The court also recognized that California courts do not automatically enforce in-the-box contracts. Id. at 1289. Rather, "even if a customer may be bound by an in-the-box contract under certain circumstances, such a contract is ineffective where the customer does not receive adequate notice of its existence." Id. Applying this framework, the Ninth Circuit concluded that Norcia still was not bound by the arbitration provision because given the brochure's title, "[a] reasonable person … would not be on notice that [it] contained a freestanding obligation outside the scope of the warranty. … [or] that receiving the seller's warranty and failing to opt out of an arbitration provision contained [therein] . . . constituted assent to a provision requiring arbitration of all claims against the seller, including claims not involving the warranty." Id. at 1289-90. This is because "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." Id. at 1290 (quoting Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 993 (Ct. App. 1972)).

Plaintiffs argue that under Norcia, Sony cannot show Plaintiffs' assent to the arbitration clause in Sony's in-the-box warranty. (Doc. No. 37 at 9-14.) Sony fails to mention Norcia in its motion to compel arbitration. (See Doc. No. 32.) On reply, Sony insists Norcia is inapposite because Sony's arbitration clause is in a one-page warranty, as opposed to a multi-page pamphlet. (Doc. No. 40 at 3-5.) Plaintiffs have the better

---

did not satisfy "retention of benefit" exception where benefits of warranty applied regardless). In any case, the notice issue is determinative. See id. at 1285.

argument. Though Sony's arbitration agreement is more conspicuous than the agreement in Norcia, the Court concludes on these specific facts that a reasonable person receiving Sony's Limited Warranty would not be on notice that it contained an arbitration provision reaching beyond the scope of the warranty, or that using Sony's Smart TV without opting out of the arbitration provision constituted assent to its terms.

Here, nothing outside or on the box alerted Plaintiffs to additional terms and conditions, the arbitration provision itself was in a document titled "**LIMITED WARRANTY**," and nothing near the top of the Limited Warranty or elsewhere alerted consumers that the document contained bilateral terms and conditions that may be accepted by using the Smart TV. (See Ex. A.) The language relating to arbitration was bolded and separated by a heading, but other sections also had bold headings and the provision was in the same small print as the rest of the dense one-pager. See In re Samsung Galaxy Smartphone, 298 F. Supp. 3d at 1301 ("Although the arbitration provision appears in capital lettering and the opt-out procedures appear in bold, they do not stand out because multiple other provisions are written in the same formatting."). On these facts, a reasonable person receiving Sony's Limited Warranty had no fair notice that he should read the document for binding terms and conditions before using his Sony Smart TV, or that an arbitration provision contained therein would extend beyond the scope of the warranty. See id. at 1294-1301 (compelling arbitration for some plaintiffs, where, for example, the box alerted them to additional terms and conditions and in-the-box materials made clear on the cover that they contained terms and conditions accepted through use, but not for others, where in-the-box materials were insufficiently labeled such that their contractual nature was unapparent)[5]; Velasquez-Reyes v. Samsung Elecs. Am., Inc., No.

---

[5] In In re Samsung Galaxy Smartphone, the court compelled arbitration for plaintiffs where, for example, the in-the-box guidebooks were titled "Health & Safety and Warranty Guide" or "Product Safety and Warranty Information," but also contained the following language in bold on the front: "**Please read this manual before operating your device and keep it for future reference. This document contains important terms and**

EDCV161953DMGKKX, 2017 WL 4082419, at *7 (C.D. Cal. Sept. 13, 2017), aff'd, 777 F. App'x 241 (9th Cir. 2019) (denying motion to compel arbitration where arbitration clause appeared toward end of in-the-box warranty guide because even though its first page warned consumers that using product constituted acceptance of terms and conditions, guide's cover page indicated only that it contained health, safety, and warranty information).

As the Ninth Circuit explained, warranties "generally [do] not impose any independent obligation on the buyer outside of the context of enforcing the seller's promises." Norcia, 845 F.3d at 1288. Absent any additional primers alerting Plaintiffs to read the Limited Warranty, reasonable buyers in Plaintiffs' positions had no fair notice that the document included obligations outside the scope of the warranty itself. See id. at 1289 ("[N]o contract is formed 'when the writing does not appear to be a contract and the terms are not called to the attention of the recipient[.]'" (quoting Knutson, 771 F.3d at 567 (citation omitted))); see also In re Samsung Galaxy Smartphone, 298 F. Supp. 3d at 1298 ("Because [the arbitration] subsection appears within a section called 'Standard Limited Warranty Information,' the consumer can understand that arbitration also applies to non-warranty claims only by reading the provision.").

---

**conditions with respect to your device. By using this device, you accept those terms and conditions.**" See 298 F. Supp. 3d at 1294, 1299. The court reasoned that based on this language, plaintiffs had a "much weaker" argument that the arbitration provision was "contained in a document whose contractual nature is not obvious." Id. at 1294-95 ("The language '[b]y using this device, you accept' prompts consumers to read the guidebook and indicates that using the device would subject the consumer to contractual terms."). In contrast, the court declined to compel arbitration as to another plaintiff whose guidebook did not include similar language on the cover. See id. at 1298 ("Although opening the guidebook would have revealed the language that the consumer accepts the guidebook's terms by using the device, a reasonable person had no fair notice that he should read the 'Important Information' guidebook for binding terms and conditions before using the phone.").

In sum, the Court denies Sony's motion to compel arbitration.[6]

## Motion to Dismiss

### I. Legal Standards

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and authorizes dismissal of a complaint if it lacks "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see also Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal conclusions" as true. Iqbal, 556 U.S. at 678. Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated

---

[6] Because the Court dismisses Sony's motion to compel arbitration on this basis, it does not consider other issues raised including, for example, whether Sony met its evidentiary burden.

the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010). Dismissal without leave to amend is proper only if it is clear that the complaint could not be saved by amendment. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

## II. Analysis

### a. Statute of Limitations

Sony first argues that most of Plaintiffs' claims are time-barred. (Doc. No. 33 at 3-7.) Plaintiffs argue their claims are timely due to delayed discovery, fraudulent concealment, and continuous accrual. (Doc. No. 38-1 at 4-7.) Because Plaintiffs plead facts to support delayed discovery, the Court does not reach the issues of continuous accrual or fraudulent concealment.

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions in the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995). Because the statute of limitations is an affirmative defense, the "defendant has the burden of proving the action is time-barred." Grisham v. Philip Morris, Inc., 670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009) (citation omitted). Generally, the statute of limitations begins to run "when the cause of action is complete with all of its elements." Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999). Under California law, the discovery rule "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005). To plead delayed

discovery for an otherwise time-barred claim, a plaintiff must "plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." Id. at 808 (citation omitted).[7]

Here, Plaintiffs allege that they did not and could not with reasonable diligence discover Sony's ACR-related conduct until shortly before this action was filed. (Doc. No. 31, CCAC, ¶¶ 233-43.) Sony argues Plaintiffs must have been on inquiry notice earlier because (1) Sony made certain disclosures about its ACR feature during the Smart TV setup process and in marketing materials, (2) there is a "well-documented" record of warnings "regarding the 'ACR data-collection conduct' at issue in this case," and (3) Sony was sued in another lawsuit in 2017 over similar allegations. (Doc. No. 33 at 6-7.) Sony's arguments are better suited for a motion for summary judgment on a more complete record. On a motion to dismiss, the Court is required to "accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez, 666 F.3d at 636). The Court therefore declines to dismiss Plaintiffs' claims as untimely.[8]

**b. Privacy Claims (Counts I-III)**

Plaintiffs' first two claims, intrusion upon seclusion and public disclosure of private facts, arise under California common law. Plaintiffs' third claim is for invasion of privacy under the California Constitution. Sony argues each of these claims fails because Plaintiffs do not allege that Sony intruded on their communications, engaged in "highly offensive" conduct, or made a public disclosure. (Doc. No. 33 at 18.) The Court addresses Plaintiffs' intrusion upon seclusion and invasion of privacy claims together and then addresses Sony's disclosure argument.

---

[7] Both sides apply California's discovery rule. In subsequent submissions, the parties may further brief the applicability of California's discovery rule to non-California state law claims.

[8] The Court need not reach Sony's request for judicial notice because none of the proffered documents would impact the Court's conclusion. (See Doc. No. 33-1.)

i. <u>Intrusion Upon Seclusion and Invasion of Privacy (Counts I, III)</u>

To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead (1) intentional intrusion into a place, conversation, or matter to which plaintiff had a reasonable expectation of privacy (2) in a manner highly offensive to a reasonable person. <u>In re Facebook, Inc. Internet Tracking Litig.</u>, 956 F.3d 589, 601 (9th Cir. 2020) ("<u>In re Facebook Tracking</u>") (citing <u>Hernandez v. Hillsides, Inc.</u>, 47 Cal. 4th 272, 286 (2009)). A claim for invasion of privacy under the California Constitution similarly requires (1) a legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) an intrusion "so serious … as to constitute an egregious breach of [] social norms[.]" <u>Id.</u> (quoting <u>Hernandez</u>, 47 Cal. 4th at 287). Because the claims are similar, they are often considered together. <u>Id.</u>

Sony argues Plaintiffs fail to allege an actionable "intrusion" because Sony was a party to the relevant communications. (Doc. No. 33 at 18.) The Court agrees. Recent district courts applying California law dismiss intrusion upon seclusion claims "if the plaintiff intended for the defendant to receive the allegedly private information." <u>See</u> <u>E.H. v. Lifelong Adoptions, Inc.</u>, No. 1:25-CV-00441 JLT FJS, 2026 WL 2138062, at *4 (E.D. Cal. July 24, 2026); <u>Saedi v. SPD Swiss Precision Diagnostics GmbH</u>, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *8 (C.D. Cal. Feb. 27, 2025); <u>Camm v. Reach Fin.</u>, LLC, No. 25 CIV. 1921 (KPF), 2026 WL 861670, at *10 (S.D.N.Y. Mar. 30, 2026) (agreeing with <u>Saedi</u> when applying California law). This is because the intrusion itself is the wrongful act, and "one cannot logically intrude into communications to which they are a party[.]" <u>See</u> <u>Saedi</u>, 2025 WL 1141168 at *8.

Sony is repeatedly described as an expected participant in Plaintiffs' viewing experience. Plaintiffs allege that Sony marketed its Smart TVs as providing "a personalized viewing experience" through which users receive "tailor[ed] content suggestions," and that Sony labels its ACR feature, among other things, "Use Info from TV Inputs." (<u>See</u> Doc. No. 31, CCAC, ¶¶ 158-61, 172.) Plaintiffs also specifically plead that they communicated with their Sony Smart TVs. (<u>Id.</u> at ¶ 181 ("Plaintiffs … had a

reasonable expectation that their television-viewing activity, and the contents of their private communications with and through their Sony Smart TVs[] would remain private.").) In opposition, Plaintiffs argue that their Smart TVs are "conduits" through which they communicate with various content providers, not Sony. (Doc. No. 38-1 at 11.) But as pled, Plaintiffs' complaint more readily shows that Sony was an intended recipient of Plaintiffs' viewing behavior on their Sony Smart TVs.[9] Accordingly, the Court dismisses Plaintiffs' intrusion upon seclusion claim with leave to amend.[10]

Next, Sony argues its conduct was not "highly offensive." (Doc. No. 33 at 18-19.) "Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." In re Facebook Tracking, 956 F.3d at 606 (citing Hernandez, 47 Cal. 4th at 287). "[T]he highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." Id. Accordingly, "[w]hether the conduct was highly offensive can rarely

---

[9] Plaintiffs argue Sony's "party to the communication" argument is foreclosed by the Ninth Circuit's decision in In re Facebook Tracking. (Doc. No. 38-1 at 19.) The Court disagrees. In In re Facebook Tracking, Facebook used plug-ins to track logged-out users' browsing activities on third-party websites. See 956 F.3d at 596. Assessing Plaintiffs' claims under the Wiretap Act and CIPA Section 631, the Ninth Circuit concluded that "simultaneous, unknown duplication" of communications does "not exempt a defendant from liability under the party exception." Id. at 608. As pled, Plaintiffs' complaint shows Sony as an expected party to the relevant communications, not an "unseen auditor" as in In re Facebook Tracking.

[10] Both parties assume that Plaintiffs' intrusion upon seclusion and invasion of privacy claims rise and fall together. (See Doc. No. 33 at 18 n.16; Doc. No. 38-1 at 20.) It is not clear that Sony's party argument applies with equal force to Plaintiffs' constitutional privacy claim. See E.H., 2026 WL 2138062, at *4; see also In re Facebook Tracking, 956 F.3d at 601 (noting when the two claims are considered together, the relevant questions are whether (1) there is a reasonable expectation of privacy, and (2) the intrusion was highly offensive). The Court therefore declines to dismiss Plaintiffs' constitutional privacy claim on this basis. The parties may further brief this issue in subsequent filings.

be resolved at the pleading stage." Compare Esparza v. Kohl's, Inc., 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (dismissing claim where FAC did not "plead any facts to suggest [d]efendant collected intimate or sensitive personally identifiable information or otherwise disregarded [p]laintiff's privacy choices"), with In re Facebook Tracking, 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."), and Dellasala v. Samba TV, Inc., No. 3:25-CV-03470-JSC, 2026 WL 1138358, at *4 (N.D. Cal. Apr. 21, 2026) (sustaining invasion of privacy and intrusion upon seclusion claims against Samba because allegations "support[ed] an inference of a serious invasion of privacy").

Here, Plaintiffs allege Sony continuously monitored Plaintiffs' in-home viewing behavior, collected and aggregated sensitive information about Plaintiffs without permission, and sold that information to downstream partners. The collected data is alleged to reveal, for example, information relating to Plaintiffs' political and religious beliefs, sexual orientations, health conditions and concerns, family compositions, and other demographic characteristics, including age and socioeconomic status. (Doc. No. 31, CCAC, ¶¶ 121-22.) The Court declines to conclude that this amounts only to "routine commercial behavior" at this stage. See Dellasala, 2026 WL 1138358, at *4 ("Plaintiffs' allegations as to the breadth of the information Samba allegedly collects along with its dissemination are sufficient to support an inference of a serious invasion of privacy."). Sony's arguments relating to its "opt-in flow" are better suited for a motion for summary judgment. (See Doc. No. 41 at 5.) Accordingly, the Court denies Sony's motion to dismiss Plaintiffs' constitutional privacy claim.

ii. Public Disclosure of Private Facts (Count II)

A claim for public disclosure of private facts requires "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." Shulman v. Grp. W Prods., Inc., 18 Cal. 4th 200, 214 (1998) (citation omitted). "The disclosure must be 'widely published and not

confined to a few persons or limited circumstances.'" In re Google RTB Consumer Priv. Litig., 606 F. Supp. 3d 935, 947 (N.D. Cal. 2022) (quoting Hill v. Nat'l Collegiate Athletic Assn., 7 Cal. 4th 1, 27 (1994)). Sony moves to dismiss this claim, arguing Plaintiffs fail to allege the first and third prongs, a "public disclosure" that "would be offensive and objectionable to the reasonable person." (Doc. No. 33 at 19-20.)

Plaintiffs allege a "public disclosure." Based on the complaint, Sony sends Plaintiffs' data to corporate recipients, including Samba and Google, and through Samba's and Google's "downstream commercial pipelines, into the broader connected-television advertising ecosystem comprising numerous demand-side and supply side platforms, identity-resolution providers, data brokers, advertisers, agencies, and measurement and attribution providers." (Doc. No. 31, CCAC, ¶ 274.) Given the broad dissemination alleged, the Court concludes that Plaintiffs adequately plead disclosure. See In re Google RTB Consumer Priv. Litig., 606 F. Supp. 3d at 947. Sony's other argument, that Plaintiffs fail to allege a disclosure that would offend or be objectionable to the reasonable person, merely cites back to Sony's proffered reasons why Plaintiffs fail to allege "highly offensive" conduct. (Doc. No. 33 at 19.) For reasons already stated, this issue is better suited for a motion for summary judgment on a more fully developed record.

In sum, the Court dismisses Plaintiffs' intrusion upon seclusion claim with leave to amend. The Court denies Sony's motion to dismiss Plaintiffs' claims for public disclosure of private facts and invasion of privacy under the California Constitution.

**c. The Wiretap Act and CIPA Section 631(a) (Counts IV, VIII)**

Plaintiffs bring state and federal claims under the Wiretap Act and CIPA Section 631(a). (Doc. No. 31, CCAC, ¶¶ 321-61, 404-33.) "The Wiretap Act prohibits the unauthorized 'interception' of an 'electronic communication[,]'" as well as the intentional disclosure or use of such intercepted communications. See In re Facebook Tracking, 956 F.3d at 606-07 (quoting 18 U.S.C. §§ 2511(1)(a)-(e)). There is no private civil action against one who aids and abets a violation of the Wiretap Act. See 18 U.S.C. § 2520; see also Freeman v. DirecTV, Inc., 457 F.3d 1001, 1006 (9th Cir. 2006) (finding "no support

for the argument that secondary liability should be imposed" under the ECPA). In contrast, CIPA Section 631(a) "prohibits three classes of activity as well as aiding and abetting thereof." Jones v. Tonal Sys., Inc., 751 F. Supp. 3d 1025, 1032 (S.D. Cal. 2024). The Section penalizes:

> [1] Any person who … intentionally taps, or makes any unauthorized connection … with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, [2] or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being set from, or received at any place within this state; [3] or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, [4] or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this [S]ection.

Cal. Penal Code § 631(a) (subdivisions added for ease of reference). Sony moves to dismiss both claims for reasons that are largely overlapping. For reasons below, the Court dismisses both claims with leave to amend.

First, the Court dismisses both claims to the extent they allege direct interception by Sony. Sony argues it cannot be liable for Samba's alleged interception under the Wiretap Act because the ECPA does not recognize secondary liability. (Doc. No. 33 at 10-11.) Plaintiffs do not contest that there is no aiding and abetting liability under the ECPA. (Doc. No. 38-1 at 9.) Instead, they claim to adequately plead two theories. Plaintiffs argue that under the ECPA, they plead "Sony's own, direct interception," and that under CIPA, Sony is liable "both directly and as Samba's enabler." (Id.) On reply, Sony argues Plaintiffs' direct liability theories fail under both statutes "because all alleged interceptions are tied to Samba." (Doc. No. 41 at 8-9.)

The Court agrees that to the extent Plaintiffs allege "Sony's own, direct interception," the complaint "blur[s] the lines" between conduct that is attributed to Sony

versus Samba and, as a result, is vague and confusing. (Id. at 9.) Plaintiffs point to their allegation that Sony "through its Smart TVs and embedded ACR technology, itself intentionally intercepted and endeavored to intercept" Plaintiffs' communications, but the rest of the complaint does not support that theory. Plaintiffs allege that Samba "operates its own ACR pipeline on Sony Smart TVs" (Doc. No. 31, CCAC, ¶ 154), and though Plaintiffs do claim that the intercepted information is transmitted to "servers controlled by Defendant and/or Samba" (id. at ¶ 112), Plaintiffs' descriptions of how "Sony's" ACR technology works repeatedly reference actions taken by Samba, not Sony (id. at ¶¶ 128-46). Accordingly, to the extent Plaintiffs plead "Sony's own, direct interception" under either the Wiretap Act or CIPA, the Court dismisses those claims with leave to amend.

Sony also argues Plaintiffs fail to allege contemporaneous "interception" by Sony or Samba.[11] (Doc. No. 33 at 12-14; Doc. No. 41 at 9-10.) The Court already dismissed Plaintiffs' wiretap claims to the extent they allege interception by Sony. To the extent these claims turn on Samba's alleged interception, Plaintiffs are additionally instructed to amend their complaint to further plead how the alleged interception occurs while Plaintiffs' communications are in transit, not once they are in electronic storage. See, e.g., Dellasala, 2026 WL 1138358, at *6-7 (concluding allegations failed to support inference that Samba read or learned communications in transit, either because they were conclusory or described Samba processing data after it is stored on servers).

In sum, the Court grants Sony's motion to dismiss Plaintiffs' claims under the

[11] Plaintiffs intersperse allegations that Sony's Smart TVs running the Google TV operating system transmit certain information to Google "in real time and on a continuous basis during device use[.]" (See Doc. No. 31, CCAC, ¶¶ 147, 156.) The parties do not specifically address these allegations in briefing but the Court notes that to the extent Plaintiffs allege interception by Sony or Google on these grounds, Plaintiffs' allegations are conclusory and not sufficiently detailed to state a claim. See Iqbal, 556 U.S. at 678.

Wiretap Act and CIPA Section 631(a) with leave to amend.[12]

**d. CIPA Sections 632 and 638.51 (Counts V, VI)**

Plaintiffs bring two additional claims under CIPA. Count V alleges a violation of Section 632. (Doc. No. 31, CCAC, ¶¶ 345-61.) Count VI alleges a violation of Section 638.51. (Id. at ¶¶ 362-86.)

i. CIPA Section 632

To state a claim under Section 632, a plaintiff must allege (1) an electronic recording of or eavesdropping on (2) a "confidential communication" (3) to which all parties did not consent. Greenley v. Kochava, Inc., 684 F. Supp. 3d 1024, 1052 (S.D. Cal. 2023). Sony argues Plaintiffs fail to adequately plead the second element. (Doc. No. 33 at 14-16.) Because Plaintiffs fail to plead confidentiality, the Court does not also consider whether the information allegedly collected was a "communication" for purposes of Section 632.

CIPA Section 632 defines a "confidential communication" as one "carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto[.]" Cal. Penal. Code § 632(c). The Section expressly excludes "any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Id. The California Supreme Court has clarified that "a conversation is confidential under Section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." Flanagan v. Flanagan, 27 Cal. 4th 766, 776-77 (2002) (describing the statute as "prohibit[ing] unconsented-to eavesdropping or recording of conversations regardless of whether the party expects that the *content of the conversation* may later be conveyed to a third party").

Generally, "[i]nternet communications do not reasonably give rise to that

---

[12] Because Plaintiffs' wiretap claims are dismissed for reasons already stated, the Court does not also address whether the party exception applies or whether the alleged intercepted information was the "contents" of a communication. (Doc. No. 33 at 11-12, 16 n.15.)

expectation." See, e.g., Revitch v. New Moosejaw, LLC, No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) ("[I]n California, courts have developed a presumption that internet communications do not reasonably give rise to that expectation."); Rodriguez v. Google LLC, No. 20-CV-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) ("[P]laintiffs must plead unique, definite circumstances rebutting California's presumption against online confidentiality."); Greenley, 684 F. Supp. 3d at 1053 ("Moreover, the Ninth Circuit has noted in dicta, 'Analogously, e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information.'" (quoting United States v. Forrester, 512 F.3d 500, 510 (9th Cir. 2008)). In recent years, district courts have recognized a reasonable expectation of privacy for "certain internet communications," for example, where plaintiffs' browsing is recorded even in incognito mode, or where the online communications are health related. See M.G. v. Therapymatch, Inc., No. 23-CV-04422-AMO, 2024 WL 4219992, at *5 (N.D. Cal. Sept. 16, 2024) (collecting cases).

Here, Plaintiffs fail to plausibly demonstrate an objectively reasonable expectation that their internet-based viewing data would not be overheard or recorded. Plaintiffs may claim, subjectively, that they "had no idea Sony and Samba were recording." (Doc. No. 38-1 at 17.) But based on the allegations in Plaintiffs' complaint, including that Sony markets its Smart TVs as providing "personalized recommendations" and labels its ACR feature as, for example, "Use Info from TV Inputs," Plaintiffs fail to plausibly allege an objectively reasonable expectation of privacy. (Compare Doc. No. 31, CCAC, ¶ 159 ("Sony represents that features such as 'Smart TV Experience' or 'personalized recommendations' enhance the user experience by tailoring content suggestions to the viewer."), with id. at ¶ 352 ("Plaintiffs … reasonably expected that their viewing activity … would not be recorded or monitored by Sony.").) Moreover, Plaintiffs do not distinguish authority showing that internet communications are generally not "confidential" within the

meaning of Section 632. See, e.g., Revitch, 2019 WL 5485330, at *3. Accordingly, the Court dismisses Plaintiffs' Section 632 claim with leave to amend.

ii. CIPA Section 638.51

Plaintiffs also do not address Sony's argument that Plaintiffs' Section 638.51 claim contradicts their Section 632 claim. (Doc. No. 33 at 16-18.) CIPA Section 638.51 prohibits the "install[ation] or use [of] a pen register or a trap and trace device without first obtaining a court order[.]" Cal. Penal Code § 638.51. Both "pen register" and "trap and trace device" are defined to exclude devices that record or capture the contents of a communication. See id. at §§ 638.50(b)-(c). In contrast, Section 632 only applies to "eavesdropping on or recording the substance of 'confidential communication[s],' which excludes 'non-content-based conduct coincident to the communication.'" In re Apple Data Priv. Litig., 824 F. Supp. 3d 888, 898 (N.D. Cal. 2026) (quoting People v. Drennan, 84 Cal. App. 4th 1349, 1356 (2000)).

Notwithstanding, Plaintiffs allege the same ACR technology violates both provisions. (Doc. No. 31, CACC, ¶¶ 345-86.) Plaintiffs do not plead these claims in the alternative and in fact expressly incorporate their Section 632 allegations in their Section 638.51 claim. (See id. at ¶ 362.) "The Ninth Circuit has held that where inconsistent allegations are not pled in the alternative, but are expressly incorporated into each cause of action, an allegation must constitute a judicial admission by the plaintiff which allows dismissal of the complaint." U.S. Med. Instruments, Inc. v. CFS N. Am., Inc., No. 13-CV-349-BEN DHB, 2013 WL 6055387, at *9 (S.D. Cal. Nov. 13, 2013) (citing Maloney v. Scottsdale Ins. Co., 256 F. App'x 29, 31 (9th Cir. 2007)). As a result, the Court dismisses Plaintiffs' Section 638.51 claim with leave to amend, without addressing the parties' other arguments.[13]

---

[13] Because the Court dismisses each of Plaintiffs' CIPA claims with leave to amend, the Court does not also address whether Plaintiffs' CIPA claims fail specifically on behalf of non-California Plaintiffs. (Doc. No. 33 at 14; Doc. No. 38-1 at 10-11.) Should Plaintiffs

**e. Consumer Protection Claims and Negligence (Counts VII, X-XII, XIV-XVI)**

Each of Plaintiffs' claims under the CLRA, WCPA, UTPCPL, ICFA, and California UCL (fraud prong) is based on Sony's alleged concealment of its data collection and surveillance practices. (Doc. No. 31, CCAC, ¶¶ 492-526, 546-557.) Sony moves to dismiss these claims, arguing Plaintiffs fail to plead a fraudulent misrepresentation or omission with requisite particularity. (Doc. No. 33 at 20-22.) Sony also argues Plaintiffs do not allege a cognizable injury under these statutes, the CDAFA, or negligence. (Id. at 22-24.) For reasons below, the Court dismisses these claims with leave to amend.

i. Plaintiffs do not allege a fraudulent omission

Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). This standard requires plaintiffs to plead with particularity the "who, what, when, where, and how" of the alleged fraudulent conduct. See id. at 1124 (explaining that under Rule 9(b), allegations of fraud must be "specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong" (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted)). Sony argues Plaintiffs fail to adequately allege a misrepresentation or omission they relied on. (Doc. No. 33 at 21.)

Sony also argues Plaintiffs fail to allege a fraudulent omission, citing the two-part test derived from Hodsdon v. Mars, a Ninth Circuit case applying California consumer protection laws. See 891 F.3d 857 (2018). Under Hodsdon, a fraudulent omission must either be (1) "contrary to a representation actually made by the defendant," (a "partial omission"), or (2) "an omission of fact the defendant was obliged to disclose" (a "pure omission"). See id. at 861 (quoting Daugherty v. Am. Honda Motor Co., 144 Cal. App.

---

amend their complaint to re-allege claims arising under CIPA, the parties may further brief this issue.

4th 824, 835 (2006)). A defendant has a duty to disclose when either: (1) the defect relates to an unreasonable safety hazard, or (2) the defect is material, "central to the product's function," and the plaintiff alleges one of the four LiMandri factors. See Hammerling v. Google LLC, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) ("The LiMandri factors are: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." (citing LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (1997)); see also Barton v. Procter & Gamble Co., 766 F. Supp. 3d 1045, 1065-66 (S.D. Cal. 2025) (requiring LiMandri factors plus unreasonable safety hazard or materiality "[b]ecause the Ninth Circuit and a majority of district courts have applied [this] approach").[14]

Plaintiffs allege omissions. (See Doc. No. 38-1 at 21.) Under either a pure or partial theory, Plaintiffs fail to state a claim. To the extent Plaintiffs claim partial omissions, their allegations lack specificity. (See Doc. No. 31, CCAC, ¶¶ 158-69 (describing Sony's "marketing materials and user-facing disclosures" generally).) Moreover, and as Sony argues, Plaintiffs do not claim to have viewed these statements. See Doc. No. 41 at 4; see also Hammerling, 615 F. Supp. 3d at 1084 n.7; In re Vizio, Inc., Consumer Priv. Litig., 238 F. Supp. 3d 1204, 1229 (C.D. Cal. 2017). Nor do Plaintiffs adequately allege or argue that Sony withheld information in the face of a duty to disclose. See Hammerling, 615 F. Supp. 3d at 1086 (dismissing claims based on fraudulent omissions where plaintiffs failed to allege Google's data collection practices were central to the function of their smartphones and, as a result, failed to allege Google had a duty to disclose). Plaintiffs allege the LiMandri factors but do not allege facts for the other prongs of the test.

---

[14] Sony applies California law to the issue of whether Plaintiffs allege a fraudulent omission. (Doc. No. 33 at 21-22; Doc. No. 41 at 4-5.) Because Plaintiffs do not introduce any other states' laws on the issue, the Court applies California law as well. In subsequent submissions, the parties may further brief and apply other states' laws.

Plaintiffs cite In re Vizio, Inc., Consumer Privacy Litigation as the "template," but the allegations there were more specific (see 238 F. Supp. 3d at 1229 (noting plaintiffs "provide[d] a representative sample of Vizio Smart TV's product packaging that omits any mention of Vizio's Smart Interactivity software")) and the court did not specifically address the duty issue (see id.). Accordingly, the Court dismisses Plaintiffs' claims under the UCL (fraud prong), CLRA, WCPA, UTPCPL, and ICFA with leave to amend.

ii. Plaintiffs' monetization theory contradicts their privacy claims

Sony also moves to dismiss each consumer protection claim and Plaintiffs' CDAFA and negligence claims for failure to allege a cognizable injury. (Doc. No. 33 at 22-24; Doc No. 41 at 6.) The Court does not consider this argument with respect to claims already dismissed above. The Court addresses this argument only insofar as it relates to the CDAFA, Plaintiffs' remaining UCL claims, and negligence.

To state a private civil claim under the CDAFA, a plaintiff must plead that he suffered "damage or loss" due to the violation. Cal. Penal Code § 502(e). Here, Plaintiffs claim damage or loss based on Sony's "unauthorized use of their devices and data[,]" "misappropriation of valuable personal information[,]" and "loss of control over their data." (Doc. No. 31, CCAC, ¶ 399.) Specifically, Plaintiffs claim that they "intended to retain the option to monetize, license, or otherwise control the disposition of their viewing data and household-level identifiers," which there is an established market for, and that Sony's unauthorized use of that data "materially diminished" its value. (Id. at ¶ 401.)

Even if this is a valid damages theory, here, it completely contradicts Plaintiffs' privacy claims and the majority of their complaint. See Doe v. Tenet Healthcare Corp., 789 F. Supp. 3d 814, 845 (E.D. Cal. 2025) ("Where, as here, 'plaintiffs allege that their privacy has been invaded because of the disclosure of sensitive and private healthcare information—plaintiffs cannot base their CDAFA damages on a theory that they lost a benefit to sell that data themselves.'" (quoting Doe v. Cnty. of Santa Clara, No. 23-CV-04411-WHO, 2024 WL 3346257, at *9 n.7 (N.D. Cal. July 8, 2024)); Dellasala, 2026 WL 1138358, at *9 (noting disgorgement theory "would be inconsistent … in light of

[plaintiffs'] privacy claims").

Plaintiffs assert the inconsistency is mitigated by alternative pleading. (Doc. No. 38-1 at 24.) But despite pleading their damages theory in the alternative, Plaintiffs' CDAFA claim incorporates "all preceding paragraphs" including Plaintiffs' privacy claims. (See Doc. No. 31, CCAC, ¶ 387.) Plaintiffs "must be precise in pleading [] alternative claims." RBB2, LLC v. CSC ServiceWorks, Inc., No. 118CV00915LJOJLT, 2019 WL 1170484, at *11 (E.D. Cal. Mar. 13, 2019) (dismissing quasi-contract claim that incorporated allegations of express, enforceable agreement); Gerlinger v. Amazon.Com, Inc., 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (same). "[T]he facts pled to maintain the alternative claim must support that alternative." RBB2, 2019 WL 1170484, at *12. Accordingly, the Court dismisses Plaintiffs' CDAFA claim with leave to amend.

For the same reason, the Court dismisses Plaintiffs' UCL claim with leave to amend. Plaintiffs' privacy claims contradict their monetization theory (see Doc. No. 31, CCAC, ¶ 477 (incorporating by reference Plaintiffs' privacy claims)), and the price-premium theory fails because, for reasons stated, Plaintiffs have not "truthfully allege[d] they were deceived." See Kwikset Corp. v. Superior Ct., 51 Cal. 4th 310, 317 (2011).[15]

In sum, the Court dismisses Plaintiffs' CDAFA, UCL, CLRA, WCPA, UTPCPL, ICFA, and negligence claims with leave to amend.

**f. VPPA (Count IX)**

Plaintiffs' ninth claim is brought under the Video Privacy Protection Act ("VPPA"). (Doc. No. 31, CCAC, ¶¶ 434-58.) The VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person …". 18 U.S.C. § 2710(b). Sony moves to dismiss Plaintiffs' VPPA claim on grounds that it is not a "video tape service provider," that Plaintiffs are not "consumer[s]," and that Sony did not disclose "personally identifiable information." (Doc. No. 33 at 7-10.) Because Plaintiffs fail to

---

[15] For similar reasons, Plaintiffs' negligence claim is deficient.

plead "personally identifiable information," the Court does not address Sony's other arguments.

The VPPA defines personally identifiable information as "information which identifies a person as having requested or obtained specific video materials or services from a video tape services provider." 18 U.S.C. § 2710(a)(3). "The term 'personally identifiable information' covers some information that is 'capable of' identifying a person, as well as information that, standing alone, identifies a person." Eichenberger v. ESPN, Inc., 876 F.3d 979, 984 (9th Cir. 2017). To determine whether information is "capable of" identifying an individual as Congress intended under the VPPA, the Ninth Circuit applies the "ordinary person" test. Id. at 985.

Under the ordinary person test, information is personally identifiable only if it "would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" Id. (quoting In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 267 (3d Cir. 2016)). In adopting the ordinary person test, the Ninth Circuit emphasized the VPPA's "disclosing-party focus." See id. By asking whether information would readily permit an ordinary person to identify an individual, the inquiry remains properly focused on the video tape service provider's obligation not to disclose, rather than the recipient's potentially unique capabilities. See id. at 985-86 (concluding that Roku device serial number and names of videos plaintiff watched did not constitute personally identifiable information because, even if Adobe could identify individuals from that information, an ordinary person could not).

Here, Plaintiffs allege that Sony disclosed to Samba and others "the specific audiovisual content viewed by Plaintiffs … tied directly and inextricably to persistent identifiers (including IP address, MAC address, advertising identifier, household identifier, and Sony account identifier)." (Doc. No. 31, CCAC, ¶ 440.) Sony argues Plaintiffs do not plausibly allege an ordinary person could identify Plaintiffs and their video-watching behavior based on this information. (Doc. No. 33 at 9-10.) The Court agrees with Sony.

The complaint lacks detail as to how an ordinary person could use this information

to identify Plaintiffs. Indeed, the complaint and Plaintiffs' opposition to Sony's motion to dismiss reference unique capabilities of Samba and Google, not the ordinary person. (See Doc. No. 31, CCAC, ¶ 440 ("The combination of specific viewing-content identification + persistent personal identifiers 'readily permits an ordinary person to identify a particular individual as having watched certain videos'—indeed, that combination is precisely the basis on which Samba TV and Google construct identity-graph profiles, target consumers across devices, and measure advertising attribution at the household and individual level."); Doc. No. 38-1 at 8-9 ("Sony disclosed … a continuous viewing record bound to persistent identifiers—the SambaID, IP address, and MAC address—that exist for the purpose of determining the identities of individuals and households within Samba's and Google's identity-resolution systems.").) Samba's and Google's capabilities are immaterial under the ordinary person test. See D.B. v. Bellesa Enters. US, Inc., No. 2:25-CV-05099-JAK (MARX), 2026 WL 2058427, at *11 (C.D. Cal. July 14, 2026) ("PII does not include information that only a sophisticated technology company could use to identify a person." (internal quotation marks and citation omitted)). Moreover, the cases Plaintiffs cite are of limited value because each involved disclosure of Facebook IDs that are routinely found to constitute PII at the pleading stage. See id. at *10 (collecting cases). As a result, the Court dismisses Plaintiffs' VPPA claim with leave to amend.

**g. Unjust Enrichment (Count XIII)**

Plaintiffs' thirteenth claim is for unjust enrichment. (Doc. No. 31, CCAC, ¶¶ 527-45.) Sony is alleged to have received two benefits at Plaintiffs' expense: (1) the purchase price for the Sony Smart TVs Plaintiffs bought, and (2) the substantial commercial benefit of Plaintiffs' data. (Id. at ¶ 530.)

To state a claim for unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." ESG Cap. Partners, LP v. Stratos, 828 F.3d 1023, 1038 (9th Cir. 2016); see also Russell v. Walmart, Inc., 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) ("Absent qualifying mistake, fraud, coercion, or request … there is no injustice."). Plaintiffs argue their allegations of fraud "supply the

qualifying conduct here." (Doc. No. 38-1 at 25.) As explained, Plaintiffs do not adequately plead fraud. Accordingly, the Court dismisses Plaintiffs' unjust enrichment claim with leave to amend.

**h. Standing to Seek Injunctive Relief (Count XVII, *passim*)**

Plaintiffs seek injunctive relief as a form of relief under their UCL, CLRA, and California Constitution claims. (Doc. No. 31, CCAC, ¶ 559.) Sony argues Plaintiffs' claims for injunctive relief should be dismissed because Plaintiffs have not shown a threat of future harm. (Doc. No. 33 at 25.) The Court agrees.

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 967 (9th Cir. 2018) (citing Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 185 (2000)). Prospective injunctive relief requires a plaintiff to show a threat of future injury that is "actual and imminent, not conjectural or hypothetical." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013). "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling," only if the consumer sufficiently alleges "an imminent or actual threat of future harm," such as a desire to purchase the product again in the future. Davidson, 889 F.3d at 969-70. "To successfully assert a claim for injunctive relief, a plaintiff must contend that, despite knowledge of the asserted violative conduct, he or she may suffer an 'actual and imminent' threat of future harm." Mikulsky v. Bloomingdale's, LLC, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) (concluding plaintiff lacked standing for injunctive relief where alleged harm was being recorded without consent and "continued use of [d]efendants' website, now that Plaintiff has notice of [d]efendants' use of session replay code, would constitute consent to any recording").

Plaintiffs do not adequately allege a threat of future harm. The gravamen of Plaintiffs' allegations is that Sony monitored, collected, and disseminated Plaintiffs'

information without consent. (Doc. No. 31, CCAC, ¶ 1.) As pled, the complaint fails to show why, despite now knowing of Sony's embedded ACR system, Plaintiffs still face a credible threat of harm. See Mikulsky, 713 F. Supp. 3d at 846. Plaintiffs do not allege a desire to re-purchase Sony Smart TVs. Indeed, they repeatedly claim the opposite by stating that if they had known what they do now, they never would have purchased the Smart TVs or would have paid substantially less for them. (Doc. No. 31, CCAC, ¶ 16, *passim*.) Nor do Plaintiffs adequately explain why continued use of their Smart TVs does not constitute consent and creates an actual or imminent threat of harm, especially considering that the ACR feature can be disabled. (Id. at ¶ 178.) As a result, the Court dismisses Plaintiffs' claims for injunctive relief[16] with leave to amend.

## Conclusion

For the reasons above, the Court denies Defendant Sony's motion to compel arbitration and grants in part and denies in part Sony's motion to dismiss Plaintiffs' consolidated class action complaint for failure to state a claim. Specifically, the Court dismisses with leave to amend: (1) Plaintiffs' intrusion upon seclusion claim; (2) Plaintiffs' claim for violation of CIPA Section 631; (3) Plaintiffs' claim for violation of CIPA Section 632; (4) Plaintiffs' claim for violation of CIPA Section 638.51; (5) Plaintiffs' claim for violation of the CDAFA; (6) Plaintiffs' claim for violation of the federal Wiretap Act; (7) Plaintiffs' claim for violation of the VPPA; (8) Plaintiffs' negligence claim; (9) Plaintiffs' claim for violation of the California UCL; (10) Plaintiffs' claim for violation of the CLRA; (11) Plaintiffs' claim for unjust enrichment; (12) Plaintiffs' claim for violation of the WCPA; (13) Plaintiffs' claim for violation of the UTPCPL; (14) Plaintiffs' claim for violation of the ICFA; and (15) Plaintiffs' claims for injunctive relief. The Court declines

---

[16] Plaintiffs attempt to distinguish their claim for public injunctive relief but Plaintiffs must have standing just the same. See Stover v. Experian Holdings, Inc., 978 F.3d 1082, 1087 (9th Cir. 2020) ("Stover's complaint does not allege the threat of future harm that Davidson held is required for Article III standing in a case seeking public injunctive relief.").

to dismiss the remainder of the consolidated class action complaint. The Court grants Plaintiffs leave to amend their complaint to cure the deficiencies identified in this order if it is possible to do so within **thirty (30) days from the date this order is filed.**

**IT IS SO ORDERED.**

DATED: November 2, 2026

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

# Exhibit A

4-595-333-04

SONY®

# LIMITED WARRANTY

Television

## U.S. and Canada only – One (1) year

Sony Electronics Inc. solely for purchases made in the United States and Sony of Canada Ltd. solely for purchases made in Canada (collectively "Sony") warrants this product against defects in material or workmanship for the original owner and any subsequent end user owner(s) ("You" or "Your") for the time period set forth above as set forth herein. Pursuant to this Limited Warranty, Sony will, at its option, (i) repair the product using new or refurbished parts or (ii) replace the product with a new or recertified/refurbished product of the same (or similar) model. For purposes of this Limited Warranty, "recertified" or "refurbished" means a product or part that has been returned to its original specifications. **In the event of a defect, these are Your exclusive remedies.** Sony does not warrant that the operation of the product will be uninterrupted or error-free.

**Term:** For the time period set forth above from the original date of purchase of the product when purchased directly from Sony or Sony authorized dealer (To determine if a dealer is in the Sony authorized dealer network, please visit US: www.sony.com/retailers; Canada: https://dealerlocator.sony.ca/locator; or contact Sony directly), Sony will, at its option, repair or replace with a new, recertified or refurbished product or part, any product or part determined to be defective.

**This Limited Warranty covers** only the hardware components packaged with the product. It does not cover separate accessories, technical assistance for hardware or software usage and it does not cover any software products whether or not contained in the product, and other included content; any such software or other included content is provided "AS IS" unless expressly provided for in any enclosed software Limited Warranty or End User License Agreement. Please refer to the End User License Agreement(s) included with the product for Your rights and obligations with respect to the software or other included content. If You purchased an extended service plan, please refer to the service plan for the coverage, duration and terms of service. Extended service plans are not governed by this Limited Warranty.

**To obtain warranty service,** You must deliver the product, in either its original packaging or packaging affording an equal degree of protection to a Sony authorized service center together with a dated purchase receipt in order to obtain warranty service. Sony cannot guarantee that it will be able to repair any product under this warranty or make a product exchange without risk to or loss of software or data. **It is Your responsibility to remove or backup any removable media or parts, data, software or other materials You may have stored or preserved on Your product. It is likely that any media or parts, data, software, or other materials (like pictures, music, videos, etc.) will be lost or reformatted during service and Sony will not be responsible for any such damage or loss.** Contact the following for specific instructions on how to obtain warranty service for Your product:

**For purchases made in the UNITED STATES:**

Visit Sony's Website: **www.sony.com/support**
Or call the Customer Experience Center: 1-800-222-SONY (7669)
To register Your product or for contact information to purchase accessories or parts go to Sony's Website

**For purchases made in CANADA:**

Visit Sony's Website: **www.sony.ca/support**
Or call the Customer Experience Center: 1-877-899-SONY (7669)
To register Your product or for contact information to purchase accessories or parts go to Sony's Website
On-site service for televisions of certain dimensions may be available to a customer living within a 50km radius of an authorized Sony service facility, provided the residence can be accessed by an on-road service vehicle.

**Repair/Replacement Warranty:** This Limited Warranty shall apply to any repair, replacement part or replacement, recertified or refurbished product for the remainder of the original Limited Warranty period or for ninety (90) days, whichever is longer. Any parts or product replaced under this Limited Warranty will become the property of Sony. Any replacement, recertified or refurbished product provided under this Limited Warranty may, at Sony's option, vary in color and/or cosmetic design from the original product and may not include any original engraving or similar customization/personalization.

Sony is not responsible for, and this Limited Warranty does not cover, any damage arising from a failure to operate the product within its intended uses, or otherwise follow the owner's manual and safety instructions relating to the product's use and installation. This Limited Warranty only covers product issues caused by defects in material or workmanship during ordinary consumer use. This Limited Warranty does not cover products purchased from sources other than Sony or a Sony authorized dealer (including non-authorized online auctions), or issues due to: (i) outdoor exposure and other acts of nature; (ii) power surges; (iii) accidental damage; (iv) abuse; (v) limitations of technology; (vi) cosmetic damage; (vii) contact with liquid, heat, humidity or perspiration, sand, smoke, or foreign materials; (viii) damage, malfunction and/or failure to product resulting from use of parts or supplies not sold or authorized by Sony; (ix) damage, malfunction and/or failure to product resulting from servicing not authorized or performed by Sony or a Sony authorized service center; (x) computer or internet viruses, bugs, worms, or Trojan Horses; (xi) malfunctions due to peripherals/accessories; (xii) modifications of or to any part of the product, including "rooting" or other modifications to control the behavior of the product or any factory installed operating system; (xiii) consumable parts such as batteries; or (xiv) any product where the factory-applied serial number has been altered or removed from the product. Further, to the extent this product incorporates use of a display, please note that a display contains hundreds of thousands of individual pixels, and displays typically contain a small number of pixels that do not function properly. This Limited Warranty does not cover up to .01%pixel outages (small dot picture elements that are dark or incorrectly illuminated).

This Limited Warranty does not cover Sony products sold "AS IS" or "WITH ALL FAULTS" or consumables (such as fuses or disposable batteries). Sony will not replace missing components from any package purchased "Open Box" or "AS IS". This Limited Warranty is valid only in the United States and Canada (as applicable).

**LIMITATION ON DAMAGES:** SONY SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR BREACH OF ANY EXPRESS OR IMPLIED WARRANTY OR CONDITION ON THIS PRODUCT. NOR SHALL RECOVERY OF ANY KIND AGAINST SONY BE GREATER THAN THE ORIGINAL PURCHASE PRICE OF THE PRODUCT FROM SONY OR AN AUTHORIZED SONY DEALER.

**DURATION OF IMPLIED WARRANTIES OR CONDITIONS:** EXCEPT TO THE EXTENT PROHIBITED BY APPLICABLE LAW, ANY IMPLIED WARRANTY OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE ON THIS PRODUCT IS LIMITED IN DURATION TO THE DURATION OF THIS LIMITED WARRANTY.

Some jurisdictions do not allow the exclusion or limitation of incidental or consequential damages, or allow limitations on how long an implied warranty lasts, so the above limitations or exclusions may not apply to You. This Limited Warranty gives You specific legal rights and You may have other rights which vary from jurisdiction to jurisdiction.

**For purchases made in the U.S.: READ THE FOLLOWING DISPUTE RESOLUTION/ARBITRATION PROVISION CAREFULLY. IT DETAILS YOUR RIGHTS AND INSTRUCTIONS SHOULD A DISPUTE RELATED TO THE PRODUCT ARISE.**

**What Happens If We Have A Dispute:** Should a dispute or claim arise related to the product, Your purchase and/or use of the product, the terms of this Limited Warranty, or any service provided under the terms of this Limited Warranty (including any repair or replacement) ("Dispute"), You and Sony agree that the **Dispute shall be resolved exclusively through binding arbitration. YOU UNDERSTAND AND ACKNOWLEDGE THAT BY AGREEING TO ARBITRATION, YOU ARE GIVING UP THE RIGHT TO LITIGATE (OR PARTICIPATE IN AS A PARTY OR CLASS MEMBER) IN ANY DISPUTES IN COURT. You also agree that ANY DISPUTE RESOLUTION PROCEEDING WILL ONLY CONSIDER YOUR INDIVIDUAL CLAIMS, AND BOTH PARTIES AGREE NOT TO HAVE ANY DISPUTE HEARD AS A CLASS ACTION, REPRESENTATIVE ACTION, CONSOLIDATED ACTION, OR PRIVATE ATTORNEY GENERAL ACTION.** Despite the above, You have the right to litigate any Dispute on an individual basis in small claims court or other similar court of limited jurisdiction, to the extent the amount at issue does not exceed $15,000, and as long as such court has proper jurisdiction and all other requirements (including the amount in controversy) are satisfied.

If any part of this arbitration provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

**Arbitration Instructions.** To begin Arbitration, either You or Sony must make a written demand to the other for arbitration. The Arbitration will take place before a single arbitrator. The arbitration will be administered in keeping with the Expedited Procedures of the Commercial Arbitration Rules and the Supplementary Proceedings for Consumer-Related disputes ("Rules") of the American Arbitration Association ("AAA"), when applicable and in effect when the claim is filed. You may get a copy of AAA's Rules by contacting AAA at (800) 778-7879 or visiting www.adr.org. The filing fees to begin and carry out arbitration will be shared between You and Sony, but in no event shall Your fees ever exceed the amount allowable by the special rules for Consumers Disputes provided for by AAA, at which point Sony will cover all additional administrative fees and expenses. This does not prohibit the Arbitrator from giving the winning party their fees and expenses of the arbitration when appropriate pursuant to the Rules. Unless You and Sony agree differently, the arbitration will take place in the county and state where You live, and applicable federal or state law shall govern the substance of any Dispute during the arbitration. However, the Federal Arbitration Act, 9 U.S.C. § 1, et seq., will govern the arbitration itself and not any state law on arbitration. The Arbitrator's decision will be binding and final, except for a limited right of appeal under the Federal Arbitration Act.

**Opt-Out Instructions. IF YOU DO NOT WISH TO BE BOUND BY THE BINDING ARBITRATION PROVISION, THEN:** (1) You must notify Sony in writing within 30 days of the date that You purchased the product; (2) Your written notification must be mailed to Sony Electronics Inc., 16535 Via Esprillo, MZ 1105, San Diego CA 92127, Attn: Legal Department; AND (3) Your written notification must include (a) Your NAME, (b) Your ADDRESS, (c) the DATE You purchased the product, and (d) a clear statement that "YOU DO NOT WISH TO RESOLVE DISPUTES WITH ANY SONY ELECTRONICS ENTITY THROUGH ARBITRATION AND/OR BE BOUND BY THE CLASS ACTION WAIVER." Opting out of this dispute resolution will not affect the coverage of the Limited Warranty in any way, and You will continue to enjoy the benefits of the Limited Warranty.

Printed in USA

**SONY®**

# GARANTIE LIMITÉE

**Téléviseur**

## États-Unis et Canada uniquement – Un (1) an

Sony Electronics Inc. au titre des seuls achats effectués aux États-Unis et Sony of Canada Ltd. au titre des seuls achats effectués au Canada (collectivement « Sony ») garantissent ce produit contre les défauts de matériaux et de fabrication au propriétaire initial et à tout propriétaire utilisateur final subséquent (« vous » ou « votre, vos») pendant la période indiquée ci-dessus, comme précisé dans les présentes. En vertu de la présente Garantie limitée, Sony pourra, à sa discrétion, (i) réparer le produit à l'aide de pièces neuves ou remises à neuf ou (ii) remplacer le produit par un produit neuf, recertifié ou remis à neuf du même modèle (ou d'un modèle similaire). Aux fins de la présente Garantie limitée, les termes « recertifié » et « remis à neuf » renvoient à un produit ou à une pièce dont les spécifications d'origine ont été restaurées. **En cas de défaut, voici vos recours exclusifs.** Sony ne garantit pas que le fonctionnement du produit soit ininterrompu ou exempt d'erreur.

**Durée:** Pendant la période indiquée ci-dessus, à partir de la date d'achat initiale du produit, pourvu qu'il ait été acheté directement auprès de Sony ou d'un détaillant agréé Sony (pour déterminer si un détaillant fait partie du réseau de détaillants agréés Sony, si vous êtes aux États-Unis, veuillez visiter : www.sony.com/retailers; si vous êtes au Canada : https://dealerlocator.sony.ca/locator, ou communiquer directement avec Sony), Sony, à sa discrétion, réparera tout produit ou toute pièce qu'elle jugera défectueux ou remplacera tout produit ou toute pièce par un produit ou une pièce neufs, recertifiés ou remis à neuf.

**La présente Garantie limitée ne couvre** que les composants matériels fournis dans l'emballage du produit. Elle ne couvre pas les accessoires séparés, l'assistance technique pour l'utilisation du matériel ou des logiciels. Elle ne couvre pas non plus les produits logiciels, intégrés ou non au produit, ni les autres contenus inclus. Ces logiciels ou autres contenus intégrés sont fournis « EN L'ÉTAT », sauf si ceux-ci sont expressément prévus dans la Garantie limitée du logiciel ou le Contrat de licence de l'utilisateur final ci-joint. Veuillez consulter le ou les Contrats de licence de l'utilisateur final accompagnant le produit pour connaître vos droits et obligations en ce qui concerne le logiciel ou tout autre contenu intégré. Si vous avez conclu un contrat d'entretien prolongé, veuillez consulter ledit contrat d'entretien pour connaître la couverture, la durée et les conditions des services d'entretien ou de réparation. Les contrats d'entretien prolongé ne sont pas régis par la présente Garantie limitée.

**Pour bénéficier des services visés par la Garantie,** vous devez remettre le produit, dans son emballage d'origine ou dans un emballage offrant un degré de protection équivalent, à un centre de service agréé de Sony accompagné du reçu d'achat muni d'une date. Sony n'est pas en mesure de garantir qu'il lui sera possible de réparer un produit ou d'effectuer l'échange d'un produit en vertu de la présente Garantie sans aucun risque d'altération ou de perte des logiciels ou des données. **Il vous incombe de retirer tout support ou pièce amovible et de sauvegarder toute donnée, tout logiciel ou tout autre élément que vous avez stockés ou conservés sur votre produit. Il est probable que les supports ou pièces, données, logiciels ou autres éléments (comme les photos, la musique, les vidéos, etc.) seront perdus ou reformatés pendant l'intervention du service d'entretien ou de réparation, et Sony ne saurait être tenue responsable des dommages ou pertes.** Communiquez avec les services suivants pour obtenir des instructions spécifiques sur la façon de bénéficier des services d'entretien ou de réparation en vertu de la Garantie couvrant votre produit :

**Pour les achats effectués aux ÉTATS-UNIS :**

visitez le site Web de Sony à l'adresse : **www.sony.com/support**
ou appelez le Centre d'expérience client au : 1-800-222-SONY (7669)
Pour enregistrer votre produit ou obtenir les coordonnées des sites vendant des accessoires ou des pièces, visitez le site Web de Sony

**Pour les achats effectués au CANADA :**

visitez le site Web de Sony à l'adresse : **www.sony.ca/support**
ou appelez le Centre d'expérience client au : 1-877-899-SONY (7669)
Pour enregistrer votre produit ou obtenir les coordonnées des sites vendant des accessoires ou des pièces, visitez le site Web de Sony.
Un service sur place pour les téléviseurs de certaines dimensions peut être offert aux clients résidant dans un rayon de 50 km autour d'un centre de service Sony agréé, à condition que le véhicule du service d'entretien et de réparations puisse accéder à la résidence par la route

**Garantie de réparation et de remplacement :** La présente Garantie limitée s'appliquera à toute réparation, à toute pièce de rechange et à tout produit remplacé, recertifié ou remis à neuf au cours du reste de la période de garantie limitée initiale ou pendant quatre-vingt-dix (90) jours, selon la période la plus longue. Toute pièce ou tout produit remplacés en vertu de la présente garantie limitée deviendra la propriété de Sony. La couleur ou la conception esthétique de tout produit remplacé, recertifié ou remis à neuf, dans le cadre de la présente Garantie limitée, pourra varier de celle du produit original. De plus, les produits remplacés, recertifiés ou remis à neuf pourront ne pas être dotés des gravures originales ou de marques personnalisées similaires.

Sony ne saurait être tenue responsable des dommages découlant d'un manquement à faire fonctionner le produit dans les limites des utilisations prévues ou d'un manquement à suivre le manuel du propriétaire et les instructions de sécurité relatives à l'utilisation et à l'installation du produit, et lesdits dommages ne sont pas couverts par la présente Garantie. La présente Garantie limitée ne couvre que les problèmes liés à des défauts de matériaux ou de fabrication dans le cadre d'une utilisation normale par le consommateur. La présente Garantie limitée ne couvre pas les produits achetés auprès d'une source ou d'un détaillant non agréé par Sony (cette exclusion vise les ventes aux enchères en ligne non autorisées), ni les problèmes dus : (i) à l'exposition aux éléments extérieurs et à d'autres phénomènes de la nature; (ii) aux surtensions; (iii) aux dommages accidentels; (iv) à la mauvaise utilisation; (v) aux limites technologiques; (vi) aux dommages esthétiques; (vii) au contact avec un liquide, la chaleur, l'humidité ou la transpiration, le sable, la fumée ou des substances étrangères; (viii) à l'endommagement, au mauvais fonctionnement et/ou à la défaillance du produit découlant du recours à des pièces ou accessoires non vendus ou autorisés par Sony; (ix) à l'endommagement, au mauvais fonctionnement et/ou à la défaillance du produit résultant d'un entretien non autorisé ou non effectué par Sony ou un centre de service agréé de Sony; (x) aux virus informatiques ou provenant d'Internet, aux bogues, aux vers informatiques ou aux chevaux de Troie; (xi) aux défaillances des périphériques ou des accessoires; (xii) à la modification de la totalité ou d'une partie du produit, par exemple par le biais de la technique de « rooting » (racinement), ou à toute autre modification visant à contrôler le comportement du produit ou de tout système d'exploitation installé en usine; (xiii) aux pièces consommables comme les batteries; (xiv) à tout produit dont le numéro de série appliqué en usine a été modifié ou retiré du produit. En outre, dans la mesure où ce produit nécessite l'utilisation d'un écran, veuillez noter que les écrans contiennent des centaines de milliers de pixels individuels dont, en général, un petit nombre ne fonctionne pas correctement. La présente Garantie limitée ne couvre pas les pixels non fonctionnels à concurrence d'un pourcentage d'ordre de 0,01 % (éléments d'image formés de petits points sombres ou mal éclairés).

La présente Garantie limitée ne couvre pas les produits Sony vendus « EN L'ÉTAT » ou « TOUT DÉFAUT COMPRIS » ni les produits consommables (comme les fusibles ou les piles jetables). Sony ne remplacera pas les composants manquants d'un emballage acheté en tant que « Boîte ouverte » ou « EN L'ÉTAT ». La présente Garantie limitée est valide uniquement aux États-Unis et au Canada (selon le cas).

**LIMITATION DES DOMMAGES :** SONY NE SAURAIT ÊTRE TENUE RESPONSABLE DES DOMMAGES-INTÉRÊTS ACCESSOIRES OU CONSÉCUTIFS EN CAS D'INFRACTION À UNE GARANTIE OU À UNE MODALITÉ EXPRESSE OU IMPLICITE RELATIVE AU PRODUIT. TOUT RECOURS EXERCÉ À L'ENCONTRE DE SONY NE SAURAIT DÉPASSER LE PRIX D'ACHAT DU PRODUIT ORIGINAL PAYÉ À SONY OU AU REVENDEUR SONY AGRÉÉ.

**DURÉE DES GARANTIES OU CONDITIONS IMPLICITES :** SAUF SI LA LOI APPLICABLE L'INTERDIT, TOUTE GARANTIE IMPLICITE DE QUALITÉ MARCHANDE OU D'ADÉQUATION À UN USAGE PARTICULIER CONCERNANT CE PRODUIT EST LIMITÉE À LA DURÉE DE LA PRÉSENTE GARANTIE LIMITÉE.

Certains États, provinces ou territoires n'autorisent pas l'exclusion ou la limitation des dommages-intérêts accessoires ou indirects, ni la limitation de la durée d'une garantie implicite, de sorte que les limitations ou exclusions susmentionnées peuvent ne pas s'appliquer à votre cas. La présente Garantie limitée vous accorde des droits légaux spécifiques et vous pouvez jouir d'autres droits qui varient en fonction de votre État, province ou territoire.

**Concernant les achats effectués aux États-Unis : LIRE ATTENTIVEMENT LA DISPOSITION SUIVANTE RELATIVE AU RÈGLEMENT DES LITIGES ET À L'ARBITRAGE. ELLE ÉNONCE VOS DROITS ET LES CONSIGNES À RESPECTER EN CAS DE LITIGE LIÉ AU PRODUIT.**

**Que se passe-t-il en cas de litige :** Dans l'éventualité d'un litige ou d'une réclamation relativement au produit, à l'achat et/ou à l'utilisation du produit, aux modalités de la présente Garantie limitée ou à tout service offert en vertu des modalités de ladite Garantie limitée (y compris toute réparation ou tout remplacement) (ci-après « Litige »), vous et Sony convenez que le **Litige sera exclusivement résolu par l'entremise d'un arbitrage contraignant. VOUS COMPRENEZ ET CONVENEZ QU'EN ACCEPTANT L'ARBITRAGE, VOUS RENONCEZ AU DROIT DE PORTER LES LITIGES DEVANT UN TRIBUNAL (OU DE PARTICIPER À UNE PROCÉDURE COLLECTIVE OU EN TANT QUE MEMBRE D'UN GROUPE DE PLAIGNANTS). VOUS CONVENEZ ÉGALEMENT QU'UNE PROCÉDURE DE RÉSOLUTION DES LITIGES NE SAURAIT PORTER QUE SUR VOS RÉCLAMATIONS INDIVIDUELLES. EN OUTRE, LES DEUX PARTIES S'ENGAGENT À NE PAS PARTICIPER À UN RECOURS COLLECTIF, À UNE ACTION DÉRIVÉE, À UNE ACTION CONSOLIDÉE, NI À UNE ACTION OÙ ELLES AGISSENT À TITRE DE « PROCUREUR GÉNÉRAL PRIVÉ ».** Nonobstant ce qui précède, vous avez le droit de porter de manière individuelle tout Litige devant le tribunal des petites créances ou tout autre tribunal similaire à compétence limitée si le montant contentieux ne dépasse pas 15 000 $, à condition que ledit tribunal soit compétent pour juger de l'affaire et que tous les autres critères (eu égard notamment au montant contentieux) soient respectés.

Même si une partie de la présente disposition d'arbitrage, autre que les renonciations aux droits aux recours collectifs, est réputée ou jugée inapplicable pour quelque raison que ce soit, le reste de la disposition demeurera exécutoire.

**Consignes en matière d'arbitrage.** Pour amorcer l'arbitrage, vous ou Sony devez demander par écrit à l'autre partie de procéder à l'arbitrage. L'arbitrage aura lieu devant un seul et unique arbitre. L'arbitrage sera administré conformément aux Procédures accélérées des Règles d'arbitrage commercial et aux Procédures supplémentaires relativement aux Litiges liés aux consommateurs (les « Règles ») de l'*American Arbitration Association* (l'« AAA », Association américaine d'arbitrage), le cas échéant, en vigueur au moment de la réclamation. Vous pouvez obtenir une copie des Règles de l'AAA en appelant l'AAA au 800 778-7879 ou en visitant le site www.adr.org. Les frais d'enregistrement permettant d'amorcer et de mener à bien l'arbitrage seront répartis entre vous et Sony, mais en aucun cas les frais vous incombant ne sauraient dépasser le montant autorisé par les règles spéciales relatives aux Litiges impliquant les consommateurs et établies par l'AAA, et, le cas échéant, Sony couvrira tous les frais administratifs et dépenses supplémentaires. Ce qui précède n'interdira pas à l'arbitre d'accorder à la partie ayant gain de cause le remboursement de ses frais et dépenses d'arbitrage, le cas échéant, conformément aux Règles. À moins que Sony et vous n'en conveniez autrement, l'arbitrage aura lieu dans votre comté ou votre État de résidence, et les lois fédérales ou étatiques applicables régiront le fond de tout Litige au cours de l'arbitrage. Cependant, la *Federal Arbitration Act* (Loi fédérale sur l'arbitrage), 9 U.S.C. § 1 et suivants régira l'arbitrage en soi et non les lois de l'État en matière d'arbitrage. La décision de l'arbitre sera exécutoire et définitive sous réserve du droit d'appel limité prévu par la *Federal Arbitration Act*.

**Consignes en cas de refus de la clause d'arbitrage. SI VOUS NE SOUHAITEZ PAS ÊTRE LIÉ PAR LA CLAUSE D'ARBITRAGE CONTRAIGNANT, VEUILLEZ SUIVRE LES CONSIGNES SUIVANTES :** (1) vous devez en aviser Sony par écrit dans les 30 jours suivant la date à laquelle vous avez acheté le produit; (2) votre avis écrit doit être envoyé par la poste à Sony Electronics Inc., 16535 Via Esprillo, MZ 1105, San Diego CA 92127, Attn:
Legal Department, ET (3) votre avis écrit doit inclure (a) votre NOM, (b) votre ADRESSE, (c) la DATE À LAQUELLE vous avez acheté le produit et (d) une déclaration claire indiquant que « VOUS NE SOUHAITEZ PAS RÉSOUDRE LES LITIGES AVEC UNE QUELCONQUE ENTITÉ DE SONY ELECTRONICS PAR VOIE D'ARBITRAGE NI ÊTRE LIÉ PAR LA RENONCIATION AUX RECOURS COLLECTIFS ».
Votre refus de cette méthode de résolution des Litiges n'affectera aucunement la couverture de la Garantie limitée, et vous continuerez à profiter des avantages que vous confère la Garantie limitée.